JINA L. CHOI (N.Y. Bar No. 2699718)
MARC D. KATZ (Cal. Bar No. 189534)
 katzma@sec.gov
SUSAN F. LA MARCA (Cal. Bar No. 215231)
 lamarcas@sec.gov
JESSICA W. CHAN (Cal. Bar No. 247669)
 chanjes@sec.gov
RAHUL KOLHATKAR (Cal. Bar No. 261781)
 kolhatkarr@sec.gov
Attorneys for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
44 Montgomery Street, Suite 2800
San Francisco, CA 94104
(415) 705-2500


JEFFREY B. COOPERSMITH (Cal. Bar No. 252819)
 jeffcoopersmith@dwt.com
KELLY GORTON (Cal. Bar No. 300978)
 kellygorton@dwt.com
DAVIS WRIGHT TREMAINE LLP
505 Montgomery Street, Suite 800
San Francisco, California  94111
Telephone:    (415) 276-6500
Facsimile:    (415) 276-6599
Attorneys for Defendant
RAMESH BALWANI

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | Case No. 5:18-cv-01603-EJD |
| Plaintiff, | JOINT CASE MANAGEMENT STATEMENT & [PROPOSED] ORDER |
| vs. | |
| RAMESH "SUNNY" BALWANI, | Date:  August 2, 2018 Time:  10:00 a.m. |
| Defendant. | Courtroom:  4 Judge:  Edward J. Davila |

Pursuant to Civil Local Rule 16-9 and the Standing Order for All Judges of the Northern District of California, Plaintiff Securities and Exchange Commission ("the SEC") and Defendant Ramesh "Sunny" Balwani ("Balwani"), jointly submit this initial Joint Case Management Statement in anticipation of the initial Case Management Conference on August 2, 2018.

## 1.    Jurisdiction and Service

This Court has jurisdiction over the SEC's claims, all brought under federal securities laws, pursuant to Sections 20(b), 20(d)(1) and 22(a) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. §§ 77t(b), 77t(d)(1), and 77v(a), and Sections 21(d), 21(e) and 27 of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78u(d), 78u(e) and 78aa. No issues have been raised regarding personal jurisdiction or venue. Balwani has been served with the Complaint and has filed an Answer.

## 2.    Factual Summary

### The SEC's Complaint:

The following is the SEC's summary of the allegations in its complaint.  The SEC alleges Balwani engaged in the fraudulent offer and sale of securities issued by his former employer, Theranos, Inc. ("Theranos"), a California company. Balwani served as the President and Chief Operating Officer of Theranos, from 2009 until 2016. Balwani and Theranos' Chairman and Chief Executive Officer Elizabeth Holmes, pitched Theranos to investors, and others, as a company that would revolutionize the diagnostics industry. The SEC filed a separate action against Holmes and Theranos, in which judgments have been entered based on settlements.

Balwani, Holmes, and Theranos raised more than $700 million from late 2013 to 2015 while deceiving investors by making it appear as if Theranos had successfully developed a commercially-ready blood analyzer that could perform a range of laboratory tests from a small sample of blood. They engaged in various deceptions to create the false appearance of a revolutionary, commercially ready biotechnology company by, among other things, making false and misleading statements to the media, hosting misleading technology demonstrations, deceiving business partners, consumers, and oversight agencies, and fabricating or overstating Theranos' relationships with academic institutions, commercial partners, and government entities, many of whom they had also deceived.

Balwani also made false or misleading representations to investors about many aspects of Theranos' business, including its projected financial results. Balwani and Holmes and Theranos further misrepresented to investors, and to others who communicated with investors, the capabilities of Theranos' proprietary technology, its commercial relationships, its relationship with the Department of Defense ("DOD") and the U.S. military, its regulatory status with the U.S. Food and Drug Administration ("FDA"), and its financial condition.

**Mr. Balwani's Answer:**

Mr. Balwani denies the allegations in the Complaint, and the allegations as set forth by the SEC above.   Mr. Balwani did not defraud or deceive investors, government agencies, or business partners, who were exceptionally sophisticated and conducted, and had the ability to conduct, extensive due diligence regarding Theranos. The SEC does not allege that Mr. Balwani defrauded consumers and he did not do so.  Mr. Balwani was instrumental in assembling a team of highly qualified scientists, a vast number with Ph.D. and M.D. degrees, and during the time he served as an officer of Theranos had every confidence in the technologies developed and operational oversight provided by the various scientific, medical and engineering teams.  Mr. Balwani believed at all times that he was accurately and appropriately representing Theranos and its technology. He believed and had every reason to believe that Theranos would revolutionize the diagnostics industry in many respects, and worked tirelessly toward that end.

Mr. Balwani spent almost seven years and millions of dollars of his own money trying to make Theranos a success. He believed in the company's potential to make healthcare more accessible and affordable through innovations it was developing in the design and manufacturing of diagnostic devices, in laboratory and patient-service software, and with a business model for empowering patients to take control of their own healthcare decisions. Before joining the company, Mr. Balwani personally guaranteed a line of credit of $12 million to Theranos, and used millions of dollars of his own money to purchase of Theranos common stock. Mr. Balwani never sold any of his Theranos stock despite having opportunities to do so. When Mr. Balwani started working for Theranos, he requested a salary of only $1 and received only a modest salary, and he worked tirelessly in an effort to build the company so that it could achieve its long-term vision and create stockholder value. While

Theranos did not achieve all of its goals, a failure to successfully execute a business plan is not securities fraud. Mr. Balwani neither committed securities fraud nor aided and abetted any other individuals or entities in doing so.

### 3.    Legal Issues

The SEC alleges that Mr. Balwani directly or indirectly, as a primary violator or as an aider and abettor, violated Section 17(a) of the Securities Act, 15 U.S.C. § 77q(a), and Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5. Mr. Balwani denies these allegations.  At this time the parties have not identified any novel legal issues or threshold legal issues to bring to the Court's attention.

### 4.    Motions

On May 7, 2018, Mr. Balwani filed an unopposed motion for extension of time to file jury demand and for jury trial (Doc. No. 20), which was granted the same day (Doc. No. 21).

### 5.    Amendment of Pleadings

The parties do not expect to seek to add or dismiss parties. The parties propose that the deadline for joinder of any additional parties be sixty (60) days after the Court's entry of the Case Management Order. Any other amendment to the pleadings (the addition of any claims or defenses) should conform to Federal Rule of Civil Procedure 15.

### 6.    Evidence Preservation

The parties have reviewed the NDCA Guidelines Relating to Electronically Stored Information and have met and conferred regarding reasonable and proportionate steps taken to preserve evidence relevant to the issues reasonably relevant in this action.

As noted below, the SEC has preserved and already produced to Balwani electronically the over 1.5 million documents referenced in its Initial Disclosures. In addition, the SEC has instituted its procedures for preserving other records that could be requested, even if they are privileged or otherwise not likely to become evidence in this case.

According to Mr. Balwani, he fully cooperated with the SEC's investigation prior to filing suit, and as part of that investigation produced over 6,000 pages of documents in response to the

SEC's requests.  To the extent that Mr. Balwani has additional records to be preserved, his counsel has taken measures to ensure appropriate preservation.

**7.     Disclosures**

The parties served their Rule 26 Initial Disclosures on May 17, 2018.  The parties reserved the right to supplement those disclosures. The SEC has also copied and produced via a hard drive the over 1.5 million documents referenced in its disclosures.

**8.     Discovery**

**Discovery to Date:**

Prior to the Rule 26(f) Conference, the SEC provided to Mr. Balwani (i) the transcripts of testimony obtained by the SEC during its investigation that preceded the filing of this case (in both pdf and ascii formats), (ii) the exhibits used in the investigative testimony, and (iii) the videos of the three days of Mr. Balwani's investigative testimony. Further, as noted in the paragraph above, the SEC produced over 1.5 million documents described in its Initial Disclosures.

On May 4, 2018, Mr. Balwani served his: (1) First Set of Requests for Admission; (2) First Set of Interrogatories; and (3) First Set of Requests for Production of Documents. The SEC responded and objected to these three sets of discovery requests on June 4, 2018.

On June 22, 2018, June 26, 2018, and June 28, 2018 Mr. Balwani also served Notices of Rule 45 Subpoenas to Produce Documents on a total of 15 individuals and entities.

On July 6, 2018, the SEC served its First Request for Production of Documents.

**Depositions:**

After extensive meet-and-confer discussions, the parties do not agree as to the appropriate number of depositions for this case:

***The SEC's Position Re: Depositions:***

The SEC proposes that the presumptive limitation of 10 depositions apply, with the following additional flexibility:

- If a deposition lasts 4 hours or less, it shall be counted as one-half of a deposition, so that each party may conduct up to 20 half-day depositions without further Court approval; and

- Any deposition that is not completed within 4 hours would be counted as a full-day deposition.

In addition, the SEC proposes that if a party has exhausted these limits and would like additional depositions, the parties must first meet and confer to propose a joint plan to the Court to accommodate further depositions; if agreement cannot be reached the parties will expeditiously present their respective positions to the Court.

The SEC believes that Balwani's proposal of 80 deposition days per side, for a total of 160 (or 320 half day) deposition days, is not proportional to the needs of the case. The Federal Rules anticipate that parties who do wish to conduct discovery beyond the presumptive limits explain their need to the Court.

### *Mr. Balwani's Position Re: Deposition:*

Mr. Balwani agrees with the Commission's proposal to allow depositions lasting four hours or less to be counted as half of a deposition.

Mr. Balwani requests that the Court permit 80 deposition days per side, although Mr. Balwani believes it likely that the bulk of the depositions will be taken by his counsel in view of the fact that the SEC has already investigated this case for about two and a half years and had the authority to take investigative testimony. Although the SEC had the authority to take investigative testimony without Mr. Balwani's participation or knowledge, the SEC took investigative testimony from only 12 witnesses (including Mr. Balwani and Ms. Holmes), but undersigned counsel believes that the SEC interviewed scores of additional witnesses. The SEC refuses to disclose the witnesses it contacted, and will not make any information about these witnesses' statements available to defense counsel. This will require defense counsel to take depositions to learn about the testimony of scores of witnesses. Further, the SEC listed over 120 individuals and entities on its initial disclosures, and collected documents from over 80 individuals and entities. This case is highly complex, and involves an unusually large number of knowledgeable parties, including (1) former Theranos employees, (2) employees of Theranos's former and potential business partners, (3) staff of multiple government regulatory agencies, and (4) dozens or hundreds of actual or potential investors. The investors, business partners, and government agencies involved in this matter are made up of many

decision-makers and others who interacted with Mr. Balwani over a span of almost seven years that Mr. Balwani worked at the Company, which will necessitate multiple depositions of particular entities in many cases.  For example, the entities the SEC describes as "Pharmacy A" and "Grocery A" are large, publicly-held national retailers with sophisticated business operations and multiple levels of decision-makers and personnel with knowledge who changed over the time Mr. Balwani worked for Theranos.  The same is obviously true for the government agencies and professional investor entities.   In order to conduct a reasonable defense,  Mr. Balwani needs to be able to depose a broad cross-section of individuals and entities from all of these categories.

Mr. Balwani does not agree with the SEC's suggestion that his proposal will lead to 160 full-day or 320 half-day depositions.  Based on the Rule 26(a) disclosures exchanged by the parties, it appears that the individuals who the parties believe have relevant knowledge will substantially, and perhaps even fully, overlap.  As is customary in civil litigation, Mr. Balwani and his counsel plan to work cooperatively with the SEC to schedule depositions and allocate time during seven-hour deposition days for witnesses who both sides wish to examine.  The SEC has already interviewed and/or taken testimony from many witnesses, and identified approximately 120 individuals and entities on its initial disclosures.  Mr. Balwani therefore believes that the SEC's suggestion that it would take 80 full-day, or 160 half-day, depositions separate and apart from the depositions noticed by Mr. Balwani is unrealistic.

**Interrogatories:**

The parties also do not agree regarding the permissible number of interrogatories without prior Court approval. The SEC believes that the presumptive limit of 25 interrogatories should apply, with the right under the rules to request further such discovery upon a proper showing.

For the same reasons identified above, including the SEC's approximately 2.5 year investigation, Mr. Balwani requests that the Court permit 50 interrogatories without prior Court approval.  Again, this is an unusually complex case, requiring evidence on a wide range of independent topics, including laboratory practices, marketing, financial projections, and communications with various investors, each of which require separate factual investigations.

**Rule 45 Subpoenas for Production of Documents**

The parties agree to produce to each other, without additional document requests, an exact duplicate copy of all documents received pursuant to each party's Rule 45 Subpoenas for Documents. The parties agree to provide the material expeditiously, within two weeks after receiving the subpoenaed material unless such timing proves unfeasible. The parties further agree that the non-subpoenaing party will cover, by prearrangement, incidental costs for the copying of the material, including through the provision of media for storing electronic information.

**9.     Class Actions:**

N/A.

**10.     Related Cases:**

On June 25, 2018, the Court issued an Order in *SEC v. Holmes, et al.,* Case No. 18-cv-1602-EJD (Doc. No. 13), finding that case related to the recently filed criminal case of *United States v. Holmes*, Case No. 18-cr-00258. On July 2, 2018, the Court issued an Order finding this case related to *SEC v. Holmes* (Doc. No. 27), and the case was transferred to this Court on July 2, 2018 (Doc. No. 28).

**11.     Relief:**

The SEC does not seek damages. Instead, the SEC seeks equitable relief including injunctions against Mr. Balwani. The SEC also seeks an order prohibiting Mr. Balwani from serving as an officer or director of a company that files reports with the SEC, or has a class of securities registered with the SEC, pursuant to Section 20(e) of the Securities Act, 15 U.S.C. § 77t(e), and Section 21(d)(2) of the Exchange Act, 15 U.S.C. § 78u(d)(2). In addition, the SEC seeks civil monetary penalties, pursuant to Section 20(d) of the Securities Act, 15 U.S.C. § 77t(d), and Section 21(d) of the Exchange Act, 15 U.S.C. § 78u(d)(3).   Mr. Balwani denies that the Commission is entitled to any relief.

**12.     Settlement and ADR:**

The parties proposed as the ADR plan for this case a settlement conference before a Magistrate Judge. The parties participated in an ADR Phone Conference on July 5, 2018 (Doc. No. 30).

**13.  Consent to a Magistrate Judge for All Purposes:**

The parties have not consented to a magistrate judge for all purposes.

**14.  Other Reference:**

No other reference appears suitable at this time.

**15.  Narrowing of Issues:**

The parties will continue to meet and confer concerning the potential narrowing of issues for trial.

**16.  Expedited Trial Procedure:**

The parties agree that this case should not be handled under the Expedited Trial Procedures.

**17.  Scheduling:**

The parties respectfully propose the following schedule:

| EVENT | DATE OR DEADLINE |
| --- | --- |
| Last Day to Amend Pleadings or Add Parties | 60 Days from Case Management Order |
| Trial Setting Conference[1] | 5/30/19 at 11 a.m. |
| Fact Discovery Cutoff | 6/28/19 |
| Initial Expert Reports and Disclosures | 7/12/19 |
| Rebuttal Expert Report | 7/26/18 |
| Expert Discovery Cutoff | 9/9/19 |
| Last Day to Hear Dispositive Motions | 12/12/19 at 9:00 a.m. |

To the extent that unforeseen difficulties with discovery arise, the parties may seek reasonable adjustments to the schedule.

**18.  Trial:**

A demand for jury trial has been filed.  The SEC estimates a trial would take approximately 14-20 court days.   Mr. Balwani estimates that a trial would take approximately 30-45 court days.

[1] The parties recognize that per the Court's Standing Order, the Court schedules final pretrial and trial dates and deadlines at the Trial Setting Conference. The parties therefore have not included proposed dates for these final events.

**19.    Disclosure of Non-party Interested Entities or Persons:**

N/A

**20.    Professional Conduct:**

The attorneys of record for the parties have reviewed the Guidelines for Professional Conduct for the Northern District of California.

Dated: July 23, 2018                          Respectfully submitted,


/s/ *Marc Katz*
Marc Katz
Attorney for Plaintiff
SECURITIES AND EXCHANGE COMMISSION


/s/ *Jeffrey B. Coopersmith*
Jeffrey B. Coopersmith
DAVIS WRIGHT TREMAINE LLP
Attorney for Defendant
Ramesh "Sunny" Balwani