ERIN E. SCHNEIDER (Cal. Bar No. 216114)
MARC D. KATZ (Cal. Bar No. 189534)
  katzma@sec.gov
SUSAN F. LAMARCA (Cal. Bar No. 215231)
  lamarcas@sec.gov
JESSICA W. CHAN (Cal. Bar No. 247669)
  chanjes@sec.gov
RAHUL KOLHATKAR (Cal. Bar No. 261781)
  kolhatkarr@sec.gov
Attorneys for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
44 Montgomery Street, Suite 2800
San Francisco, CA 94104
(415) 705-2500

JEFFREY B. COOPERSMITH (Cal. Bar No. 252819)
    jeffcoopersmith@dwt.com
KELLY GORTON (Cal. Bar No. 300978)
    kellygorton@dwt.com
STEPHEN RUMMAGE (*admitted pro hac vice*)
    steverummage@dwt.com
STEPHEN A. CAZARES (Cal. State Bar No. 201864)
    stevecazares@dwt.com
BENJAMIN BYER (*admitted pro hac vice*)
    benbyer@dwt.com
AMANDA MCDOWELL (*admitted pro hac vice*)
    amandamcdowell@dwt.com
DAVIS WRIGHT TREMAINE LLP
505 Montgomery Street, Suite 800
San Francisco, California  94111
Telephone:    (415) 276-6500
Facsimile:    (415) 276-6599
Attorneys for Defendant
RAMESH BALWANI

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | Case No. 5:18-cv-01603-EJD |
| Plaintiff, | JOINT SUPPLEMENTAL CASE MANAGEMENT STATEMENT |
| vs. | Date:  April 22, 2019 |
| RAMESH "SUNNY" BALWANI, | Time:  1:30 p.m. |
| Defendant. | Courtroom:  4<br>Judge:  Edward J. Davila |

**Introduction to Joint Supplemental Statement**

Plaintiff Securities and Exchange Commission ("SEC") and Defendant Ramesh Balwani hereby submit their Joint Supplemental Settlement Conference Statement in anticipation of the Case Management Conference scheduled for April 22, 2019.

The Court held the Initial Case Management Conference in this matter on August 2, 2018, and supplemental status conferences on October 15, 2018, and January 14, 2019. This Joint Supplemental CMC Statement addresses only those matters that have occurred since the January 2019 hearing.

The most significant issues to be addressed at the April 22, 2019 Conference relate to case scheduling and the appropriate discovery cutoff, which are addressed under heading Nos. 8 and 17 below.

**5.      Amendment of Pleadings:[1]**

The time for joinder of additional parties or other amendment to the pleadings has passed and the parties did not seek any amendments.

**8.      Discovery**

**Stay of Discovery Due To Government Shutdown**

At the January 2019 Conference, the Court issued a stay of discovery due to the federal government shutdown. On January 18, 2019, pursuant to a stipulation, the Court issued an Order permitting certain limited third-party document discovery, notwithstanding the stay. (ECF Doc. 55.) On January 29, 2019, the SEC notified the Court and Defendant that, with the shutdown ended, the stay no longer needed to be in effect and discovery resumed in full. (ECF Doc. 56.).

During the January Conference, the SEC agreed it would be amenable to a reasonable discovery extension due to the shutdown.

**Supplemental Protective Order**

As referenced in the parties' January 7, 2019 Joint Statement (ECF Doc. 52), the Food and Drug Administration ("FDA") and the Centers for Medicare & Medicaid Services ("CMS") have

---

[1] For consistency, in this supplemental statement, the parties use the same topic numbers as those in their initial statements, which correspond to the numbers listed in the NDCA Standing Order-Content of Joint Case Management Statement.

been meeting and conferring with the defendant regarding a supplemental protective order for FDA and CMS documents. They have not yet resolved the issues relating to this supplemental order.

**Recent Discovery:**

Since January, the following discovery has occurred:

*Depositions*:

Mr. Balwani has taken five depositions to date, two in Michigan, two in Texas, and one in New York, and an additional two depositions have been noticed for May 2019, one in San Francisco and one in Houston.  The parties are currently working on scheduling additional depositions.

*Defendant's Rule 45 Document Subpoenas:*

Since the January 14, 2019 Conference, Mr. Balwani has served Rule 45 document subpoenas on the following third-parties:

- California Department of Public Health
- U.S. Food and Drug Administration (re-issued subpoena)
- Centers for Medicare & Medicaid Services (re-issued subpoena)
- Arizona Health Care Provider #1[2]
- Arizona Health Care Provider #2

**Current Discovery Disagreements:**

**SEC's Position:** The SEC has relayed to the defense its view that some of Mr. Balwani's recent Rule 45 subpoenas and deposition questioning fall outside the bounds of permissible discovery for this civil case. We are currently meeting and conferring about these issues, but the SEC wanted to inform the Court of these matters because they relate to broader issue of the proper boundaries of this civil action.

As the SEC has informed Mr. Balwani, it is the SEC's position that the two recent subpoenas to Arizona healthcare providers are impermissible, in that they call for highly sensitive and irrelevant information the production of which is also disproportionate to the issues in this case—including

---

[2] The names of the two health care providers have not been disclosed publicly, and the parties do not see a reason to do so in this filing.

highly private material, such as "the name of each patient," "all documents . . . relating to the medical records for each patient," "the patient's lab test report(s) from Theranos," and "the patient's lab test reports from any different lab." The SEC alleges Mr. Balwani perpetrated a fraud on investors; the SEC does not advance claims arising from patient harm. Mr. Balwani seemed to acknowledge this. In the original Joint Case Management Conference Statement, he wrote: "The SEC does not allege that Mr. Balwani defrauded consumers . . . ." (ECF Doc. 31 at 3:10-11.) Accordingly, it appears to the SEC, that Mr. Balwani's patient-focused discovery is not aimed at claims or defenses in this civil securities action.[3] The SEC has asked Defendant to withdraw these subpoenas to the two healthcare providers. The SEC has also urged Mr. Balwani to consider language for a stipulation to give the defense comfort that the patient information he currently seeks in discovery will play no part in this civil case.

Similarly, Mr. Balwani's current discovery disagreement with FDA and CMS seems to be rooted in the appropriate boundaries of this civil case. CMS is not mentioned in the SEC's complaint, nor in Mr. Balwani's Answer. As part of Mr. Balwani's purported justification for seeking additional documents from CMS, Mr. Balwani cited an allegedly large cache of documents produced by CMS *to the Department of* Justice. The discovery in the criminal case against Mr. Balwani is—and should be kept—distinct from this civil litigation; there may be different issues in the criminal case than in this civil, securities enforcement action.

Lastly, recent depositions have also raised questions of the appropriateness of Mr. Balwani's discovery approach. In two depositions in March, Mr. Balwani's counsel inquired about grand jury testimony. In one of the depositions, Mr. Balwani's counsel purported to read from an FBI Report of Interview (a "302 Report"), asking questions and making statements about the purported 302 Report (all without showing the alleged document to the witness): "[A]ccording to the FBI agent, you reported to the FBI . . ."; "[D]id the FBI agent get this wrong, or did you get it wrong . . . ."; "Is there any reason you would have told the FBI agent something that wasn't true . . . ." The SEC objected at

---

[3] In addition to the irrelevance of the material, given its sensitive personal and healthcare nature, it is the SEC's position that the current Protective Order is insufficient to ensure HIPAA compliance (*see* 45 C.F.R. Part 164).

the deposition and believes that this line of inquiry is improper, as it does not appear aimed at claims or defenses in this civil case.

If by the date of the upcoming Conference, the parties have not resolved their disagreement about the proper parameters of discovery for this civil case, the SEC will seek the Court's guidance on how the Court would like the parties to present the issues for consideration, as the dispute entails both broad case management issues and specific discovery demands.

The SEC disagrees with Mr. Balwani's representations about relevance and his characterizations about discovery in his seven pages below. The SEC will be prepared to correct the record and address any of the Court's questions at the April 22, 2019 hearing.

**Mr. Balwani's Position:**  The SEC has raised issues regarding certain discovery to two health care providers and to government agencies CMS and FDA.  One of the health care providers filed a letter with Magistrate Judge Cousins and Mr. Balwani will respond to that letter as directed by April 17, 2019.  Mr. Balwani is currently working with a DOJ attorney at the U.S. Attorney's Office on San Jose who is counsel for CMS and FDA to frame the dispute about those subpoenas for Magistrate Judge Cousins.

However, since SEC has decided to raise the issue in this status report, Mr. Balwani responds that he has carefully crafted his Rule 45 subpoenas to target only information directly relevant to his defense of the SEC's claims.  The SEC's Complaint alleges that Mr. Balwani misrepresented to investors the accuracy, capabilities, and regulatory oversight of Theranos's laboratory services and diagnostic testing devices.  It alleges as misrepresentations, for example:

- "According to Balwani and Holmes, Theranos' technology could provide blood testing that was faster, cheaper, and *more accurate* than existing blood testing *laboratories*…" (ECF Doc. 1 at ¶ 4, emphasis added); CMS was the primary regulator of Theranos's laboratories.

- "Balwani and Holmes represented to business partners and investors that *FDA approval* was not necessary because *they believed that Theranos' tests were laboratory developed tests* ('LDTs'), or tests developed and used inside a clinical laboratory… " (ECF Doc. 1 at ¶ 74, emphasis added). CMS was the primary regulator for LDTs used in clinical laboratories, *and in its inspections of Theranos's laboratories it did not question that the proprietary tests*

*Theranos was running were LDTs subject to CMS regulatory jurisdiction. In fact, it surveyed the validation, performance and other characteristics of these LDTs.*

- "Balwani and Holmes represented to investors that Theranos' miniLab was capable of processing a full range of laboratory tests… " (ECF Doc. 1 at ¶ 49);

- "Balwani, Holmes, and Theranos … made false or misleading statements to investors about many aspects of Theranos's business, *including the capabilities of its proprietary analyzers*…" (ECF Doc. 1 at ¶ 3, emphasis added).

- "[T]here was *no technological problem with the analyzers* and that the TSPU was capable of performing 90 percent of the blood tests typically requested by doctors for their patients." (ECF Doc. 1 at ¶ 34, emphasis added).

The SEC's discovery responses confirm that the accuracy and capabilities of Theranos's laboratory and devices is relevant to their case:

- The SEC claims that Mr. Balwani made false and misleading representations that "the large percentage of Theranos tests conducted through venipuncture were the result of unexpected orders for esoteric tests" and questioned the accuracy of Theranos's fingerstick testing. (SEC's Suppl. Response to 2d Rogs at 10, 16, emphasis added);

- The SEC has produced over 50 copies of a document titled "Theranos Facts," which it obtained from various third-party investors, partners, and board members. This document discusses the accuracy and reliability of Theranos's tests and patient satisfaction issues. Notably, the document specifically addressed the allegations made to the media by one of the recipients of the medical provider subpoenas (defined by the SEC as "Arizona Health Care Provider #1"). (SEC-THERANOS-007748349/RDV005705);

- The SEC has also produced a document titled "Same Patient, Different Results" that shows the lab results for Arizona Health Care Provider #1 and one of this provider's patients. (SEC-THERANOS-007847754).

- In interrogatory responses, the SEC confirmed it alleges "false and misleading claims to investors and potential investors that Theranos's miniLab and tests did not need FDA approval, but that Theranos was applying for FDA approval voluntarily; false and misleading

claims to investors and potential investors that Theranos was filing submissions with the FDA for approval of its miniLab and tests because FDA approval was the highest standard, and omissions about FDA's repeated warnings to Theranos that FDA approval was actually required."  SEC Resp., Rog. 2.

- The SEC alleges in the Complaint that Mr. Balwani made misrepresentations to investors regarding Theranos's "regulatory status with the U.S. Food and Drug Administration ("FDA")." ECF Doc. 1 at ¶ 3.

In response to these allegations and discovery responses, Mr. Balwani issued Rule 45 subpoenas to the California Department of Public Health (CDPH), U.S. Food and Drug Administration (FDA), Centers for Medicare & Medicaid Services (CMS).  The subpoenas seek (1) evidence about the accuracy of Theranos's laboratory and diagnostic testing devices from those agencies (CMS, FDA, and CDPH) responsible for determining their accuracy and capabilities; (2) evidence from the FDA and CMS, who both regularly engaged with Theranos regarding its regulatory strategy, regarding Theranos's decision to operate using LDTs (a form of lab testing under CMS's jurisdiction) while voluntarily pursuing FDA clearance; and (3) corroborative evidence regarding information Theranos disclosed to public agencies and patients regarding the capabilities of its proprietary devices and use of third-party analyzers.

The SEC's own investigation demonstrates the relevance of this discovery, where the SEC collected more than 16,000 pages of documents from the FDA and CMS.  In fact, the SEC specifically requested documents from both CMS and FDA during its investigation.  The SEC also participated in at least eight interviews of FDA and CMS witnesses during its joint investigation with the U.S. Department of Justice (DOJ).  These interviews specifically addressed the accuracy and reliability of Theranos's laboratory and devices, among other topics.  The SEC also participated in many more witness interviews of former Theranos employees who worked in Theranos's R&D and clinical laboratories.

The DOJ's document productions are likewise squarely relevant.  As the Court recognized, "there might be some overlapping issues involving those two cases." (ECF Doc. 42).  Indeed, the two cases are tightly intertwined and share many of the same claims—both cases focus on investor

representations and allege misrepresentations related to the capabilities of Theranos's technology. Although the criminal cases also expressly includes consumer fraud claims, the SEC centers its case on whether Theranos accurately represented to investors its technological and business capabilities and performance.  Mr. Balwani's counsel cannot ignore documents produced in the DOJ case and assume they have no relevance to the SEC case, as the SEC suggests, particularly given the broad nature of the alleged misrepresentations outlined in the SEC's Complaint (and given that it appears the SEC has chosen not to produce all those DOJ documents in this matter).  Mr. Balwani's counsel has a duty to examine witnesses using any and all relevant documents at its disposal, irrespective of the source, unless such use is specifically prohibited.  It is also entirely appropriate to examine a witness using his/her prior statements regarding the same subject matter (such as statements reflected in an FBI-302 memorandum.), especially when the SEC participated in the FBI interview.

The instance involving an FBI 302 the SEC claims was improper involved the deposition of a witness who was an investor in Theranos.  The witness had given an interview under penalty of 18 U.S.C. § 1001 to personnel from SEC **and** DOJ acting jointly, and that interview was reflected in an FBI 302 interview memorandum. The SEC and DOJ had interviewed another related investor witness jointly just days before the deposition to prepare for the deposition.  The suggestion by SEC that it is somehow improper to examine a witness regarding statements the witness made in an interview jointly conducted by SEC and DOJ, as reflected in an FBI 302, is baseless..

Additionally, in response to allegations that he misrepresented to investors the capabilities and accuracy of Theranos technology, Mr. Balwani seeks discovery of information related to actual testing services ordered by medical providers, including documentation that provides the appropriate context for such services and any resulting complaints from these providers about Theranos's testing accuracy or capabilities.  One of the health care providers directly evaluated the accuracy and performance of Theranos's testing services, and the subpoena to that provider seeks information about that.  HIPAA does not present a barrier to this discovery because it permits disclosure of patient information where a qualified protective order is in place.  45 C.F.R. 164.512(e).  The parties have such an order in place.  (ECF Doc. 40)  One of the medical providers filed a letter with the Court, to which Mr. Balwani will respond by April 17, 2019 as ordered by Magistrate Judge Cousins.

In the meantime, Mr. Balwani, through counsel, is working with the SEC to determine whether an agreement can be reached to narrow the scope of the SEC's case to avoid the discovery directed to the two health care providers in this case.

**17.  Scheduling and Extension of the Discovery Cutoff Date**

**SEC's Position:** At the January 14, 2019 hearing, the SEC informed the Court and Mr. Balwani that the SEC would be amenable to a discovery extension to account for delay occasioned by the shutdown. On April 4, 2019, Mr. Balwani proposed a twelve-month discovery extension. In addition to the shutdown, Mr. Balwani cited the *criminal case discovery* as a reason for the proposed 1-year delay:

> As you know, we are also obtaining documents in discovery from the criminal case, and we need to review these documents as well to select additional witnesses to depose and prepare for those — there is no restriction on our use of the vast bulk of these documents in connection with the civil case and responsible defense lawyering requires that we review and consider these documents as well. Just on March15, 2019, we received an additional 3,061,279 pages of documents from the DOJ.

The SEC does not believe that an additional year of civil discovery is appropriate. The SEC also does not believe that the quantity of criminal-case documents should dictate the allotment of time for civil discovery; nor should depositions hinge on the criminal discovery. And as noted above, the SEC is concerned about Mr. Balwani's discovery approach.

The shutdown lasted approximately one month. Defendant suggested during the January Conference that the delay caused by the shutdown could exceed the exact number of days of the shutdown, when considering "ramp-up" time and scheduling conflicts. The SEC did not dispute this logic. But even a very generous extension should not extend the civil discovery period by more than 90 days, or three times the length of the shutdown.

**Mr. Balwani's Position:**  Mr. Balwani seeks a 12-month extension of the discovery cutoff for five reasons.  First, and most simply, this is an extremely complex case involving dozens of witnesses and millions of documents, many of which have yet to be produced.  Mr. Balwani is still in the process of identifying and gathering evidence from the appropriate witnesses – something the SEC has been doing since 2015.

Second, the SEC bears responsibility for ongoing discovery delays in this case. As just a few examples: (1) the SEC did not timely produce relevant and responsive documents long-held in its possession. The SEC, for example, collected documents from the FDA and CMS as early as 2015 and 2016, but did not produce them until October 2018, and did not disclose those documents in its initial disclosures until February 2019; (2) the SEC has refused to confirm that it has produced all responsive materials in its possession, despite multiple defense requests for such confirmation following instances coming to light where the SEC failed to timely produce or disclose that it had relevant and responsive documents; and (3) the SEC did not provide complete interrogatory responses with regard to the misrepresentations and omissions it claims were made in this case, instead providing only a few "examples" of the conduct it alleges in the Complaint. The SEC's incomplete responses. which the SEC did not provide until February 22, 2019 – (more than 11 months after it filed the complaint against Mr. Balwani) - notwithstanding the interrogatory being served on October 31, 2018, have prevented Mr. Balwani from identifying all witnesses and sources of information he will need to defend against the SEC's claims.

Third, instead of timely and fully responding to Mr. Balwani's discovery requests, the SEC has focused its efforts on interfering with Mr. Balwani's discovery, including by claiming that discovery from CMS and FDA was not relevant for the first time about seven months after receiving notice of subpoenas to those agencies and failing to raise any such objection to similar subpoenas to state agencies, and by suggesting to medical providers that they need not respond on relevance grounds and providing inaccurate information to those providers about how HIPAA might allow them to avoid producing documents. Counsel for the SEC also made improper speaking objections during a recent deposition of an important investor witness in an apparent attempt to interfere with testimony from that witness about having lied to the FBI during an earlier interview that SEC participated in.

Fourth, lack of cooperation from third parties has significantly impeded and delayed Mr. Balwani's discovery. At least three witnesses have refused to produce documents or engaged in protracted negotiations about what they would produce, requiring Mr. Balwani to commence the lengthy process to compel discovery. A number of government agencies have taken months to

produce documents in response to subpoenas; Mr. Balwani is still awaiting productions from six government agencies.  Mr. Balwani has also been forced to engage in extensive negotiation of protective orders pertaining to individual witnesses.  Mr. Balwani has encountered obstacles every step of the way in this discovery processes and needs additional time not only to resolve these discovery disputes but also to review the discovery, take depositions, and conduct follow up discovery.

Fifth, Mr. Balwani must analyze the material the DOJ has produced to identify information relevant to the SEC's complaint.  Indeed, given the substantial overlap between the two cases, the vast majority of the DOJ's production bears directly on the SEC's allegations.  Mr. Balwani cannot, as the SEC would like, turn a blind eye to this highly relevant information.  Not surprisingly, Mr. Balwani has learned of additional witnesses and evidence relevant to the SEC lawsuit through the discovery he has obtained from the DOJ.  Nothing precludes Mr. Balwani from using this information to inform his discovery in this matter, and it would be irresponsible for his counsel not to do so. Indeed, as explained above, the SEC has itself not only relied on the DOJ's investigation, it participated in 57 joint interviews and has received assistance from the DOJ in conducting its discovery.

Dated: April 15, 2019                    Respectfully submitted,


                                         /s/ *Susan F. LaMarca*
                                         Susan F. LaMarca
                                         Attorney for Plaintiff
                                         SECURITIES AND EXCHANGE COMMISSION


                                         /s/ *Jeffrey B. Coopersmith*
                                         Jeffrey B. Coopersmith
                                         DAVIS WRIGHT TREMAINE LLP
                                         Attorney for Defendant
                                         Ramesh "Sunny" Balwani