

**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
**SAN FRANCISCO REGIONAL OFFICE**
**44 MONTGOMERY STREET**
**SUITE 2800**
**SAN FRANCISCO, CALIFORNIA 94104**

April 17, 2019

Re:  *SEC v. Balwani*, Case No. 5:18-cv-01603-EJD (NC)

Dear Judge Cousins:

The Securities and Exchange Commission ("SEC") hereby responds to the letter from non-party Fountain Hills Women's Health ("Fountain Hills") (Docket No. 58). The SEC's position—as it has informed Defendant Balwani in written and telephonic correspondence—is that Balwani's subpoena to Fountain Hills is improper and irrelevant because it seeks highly sensitive medical information that bears on no claim or defense in this case. Accordingly, the subpoena should be withdrawn.

### A.  Defendant's Subpoena and the Parties' Meet-and-Confer Efforts

Defendant served a subpoena to Fountain Hills demanding a broad array of highly sensitive documents, including:

- "All Documents and Communications reflecting, discussing, or relating to the complete medical patient records for [Patient One], including . . . the medical care, medications, testing, diagnosis, treatment, or services received by [Patient One]" and "all patient lab testing results received by [Patient One] …." (Request No. 3.)

- "For each patient of Fountain Hills Women's Health who received blood testing at Theranos, documents sufficient to show: a. The patient's name . . . c. The patient's lab test report(s) from Theranos . . . and d. The patient's lab test report(s) from any different lab . . . ." (Request No. 2.)

On March 29, 2019, the SEC asked Defendant to explain the relevance of the requests to any claim or defense in this case. Following meet and confer discussions, as a compromise, the SEC proposed that the parties enter a stipulation that no claim or defense in this civil action addresses the medical records sought by the subpoena.

### B.  The Subpoenas for Medical Records Fail Relevancy and Proportionality Tests

Under Rule 26, the propounding party must show that the information sought is relevant to a claim or defense and proportional to the needs of the case. Fed. R. Civ. Proc. 26.; s*ee Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 2019 WL 317597, at *2 (N.D. Cal. Jan. 24, 2019), *aff'd*, 2019 WL 495600 (N.D. Cal. Feb. 8, 2019) (citing Advisory Committee Notes to 2015 Amendments to Rule 26, Subdivision (b)(1)) ("[t]he parties and the court have a collective responsibility to consider the proportionality of all discovery" in resolving discovery disputes). Defendant cannot meet this standard. Nowhere in the SEC's Complaint, Defendant's Answer, in

either party's Initial Disclosures, or in any interrogatory response served in this case is Fountain Hills mentioned. Neither the healthcare provider nor its patients have been identified as witnesses in this case. There is no claim and no defense that will be proven by reference to any of the subpoenaed medical records. Indeed, Defendant has acknowledged as much, stating in the parties' Initial Case Management Statement: "The SEC does not allege that Mr. Balwani defrauded consumers . . . ." (Docket No. 32 at 2.)[1]

In arguing the relevance of the discovery, Defendant cited two paragraphs in the Complaint, which refer to Balwani's efforts to hide the true percentage of blood tests that Theranos performed on its proprietary "TSPU" device. Compl. (Docket No. 1) ¶¶ 3, 34. The discovery sought from Fountain Hills, however, would not disclose what tests Theranos performed on its proprietary TSPU, and Balwani has already admitted Theranos only performed a limited number of tests on the TSPU. *See* Answer (Docket No. 12) ¶ 5 ("Mr. Balwani admits that Theranos validated approximately 12 assays on a version of its proprietary analyzer in its clinical laboratory …"). Defendant further contends that the requests are justified by copies of a *Wall Street Journal* news article published in October 2015, and a lengthy Theranos press release in response, both of which were reproduced by Theranos and other persons to the SEC during its investigation. But the mere fact that such documents were produced to the SEC does not make them relevant to any claim or defense.

Defendant's subpoena also fails Rule 26's proportionality requirement. One key factor under Rule 26 is whether the burden or expense of the proposed discovery outweighs its likely benefit. The burden here is great; the subpoenas implicate two types of constitutional privacy rights: an individual's interest in avoiding disclosure of personal matters, and the interest in independence in making certain kinds of important decisions. *See Whalen v. Roe*, 429 U.S. 589, 599 (1977); *Doe v. Attorney General of the United States*, 941 F.2d 780, 795-96 (9th Cir. 1991); *see also Planned Parenthood Federation of Am., Inc. v. Ashcroft*, 2004 WL 432222 (N.D. Cal. Mar. 5, 2004).

Other Rule 26 factors also weigh against the subpoena, including the parties' relative access to relevant information, and the importance of the discovery in resolving the issues. Balwani already has access to much *more* relevant information regarding how Theranos conducted tests on patients. Theranos itself produced many such documents that Defendant has long possessed. Indeed, Balwani, who was Theranos's President and Chief Operating Officer, in charge of its laboratory operations, knew well which of its "assays" could be performed on its proprietary analyzer. And, as described above, these private medical records will not help resolve any contested issues.[2]

Accordingly, when the lack of probity of the information sought by Defendant's subpoena is weighed against the unnecessary burdens to personal and patient privacy imposed, the subpoena fails to meet the requirements under Rule 26.

---

[1]  Defendant is named as a defendant in other litigation in which the SEC is not a party, and harm to patients may be at issue. The cases are:  the related criminal action filed here, *United States v. Elizabeth Holmes and Ramesh Balwani*, No. 5:18-cr-00258-EJD (N.D. Cal.), and the consolidated class action alleging fraud on consumers in the marketing and sale of blood testing services by Theranos in Arizona, entitled *In re: Arizona Theranos, Inc. Litig.*, No. 2:16-cv-02138-HRH (D. Ariz.).

[2]  By merely reviewing the documents already produced by Theranos, Defendant would likely find all or most of the information he has now requested from Fountain Hills. The Theranos documents are voluminous and include those the company produced to the SEC in its broader investigation that predated this case, as well as documents that Theranos produced in other litigation. The breadth of the document productions to date, however, does not weigh in favor of obtaining even more, private and personal medical information about patients from non-parties.

### C. A Stipulation Should Obviate Any Claimed Need for the Medical Records

The SEC has repeatedly told the defense that the subpoenaed medical records play no part in the SEC's case. As a compromise, the SEC proposed that the parties enter into a stipulation. The following language would be appropriate:

The SEC's claims against the defendant are based on allegations that the defendant violated the federal securities laws through alleged misrepresentations, omissions, and deceptions, and that he aided and abetted violations of the federal securities laws by Elizabeth Holmes and Theranos. The SEC's claims do not address potential medical harm to patients whose blood was tested by Theranos, and patient medical harm is not an element of any claim in this case.

### D. There Is No HIPAA-Compliant Protective Order in Place

Under the HIPAA privacy regulations, a healthcare provider is permitted to produce medical records pursuant to a subpoena only after notice to the patient or after "reasonable efforts have been made by such party to secure a qualified protective order." *Deitch v. City of Olympia*, 2007 WL 1813852, at *3 (W.D. Wash. June 21, 2007) (citing 45 C.F.R. § 164.512(e)(1)(ii)(A) and (B)). To comply with these regulations, "[t]he protective order must prohibit using or disclosing the protected health information for any purpose other than the litigation, and require the return to the health care provider or destruction of the protected health information at the end of the litigation or proceeding." *Id.* (citing 45 C.F.R. § 164.512(e)(1)(v)). The protective order in this case does not do so. (Docket No. 40.) Thus, to the extent Fountain Health is required to respond to the subpoena, the parties must first propose a supplemental protective order.

Respectfully submitted,

/s/ *Susan F. LaMarca*
Susan F. LaMarca
Attorney for Plaintiff
SECURITIES AND EXCHANGE COMMISSION

CERTIFICATE OF SERVICE

I, Susan F. LaMarca, am a citizen of the United States, over 18 years of age, and am not a party in this action. I hereby certify that on April 17, 2019, I caused the above document to be served via U.S. mail, postage pre-paid, on the following non-party:

Fountain Hills Women's Health
c/o Dr. Nicole Sundene
16425 E. Palisades Blvd., Suite 105
Fountain Hills, AZ 85268

/s/ *Susan F. LaMarca*
Susan F. LaMarca