ADAM A. REEVES (NYBN 2363877)
Attorney for the United States,
Acting Under Authority Conferred By 28 U.S.C. § 515

HALLIE HOFFMAN (CABN 210020)
Chief, Criminal Division

JEFF SCHENK (CABN 234355)
JOHN C. BOSTIC (CABN 264367)
ROBERT S. LEACH (CABN 196191)
Assistant United States Attorneys

    150 Almaden Boulevard, Suite 900
    San Jose, California 95113
    Telephone: (408) 535-5061
    Fax: (408) 535-5066
    robert.leach@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | CV-18-1603-EJD |
| Plaintiff, | UNITED STATES' MOTION TO INTERVENE AND STAY ACTION |
| v. | Date: June 10, 2019 |
| RAMESH "SUNNY" BALWANI, | Time: 10:00 a.m. |
| Defendant. | |

U.S.' MOT. TO INTERVENE & STAY
CV-18-1603 EJD

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on June 10, 2019, at 10:00 a.m., or as soon thereafter as counsel may be heard, in Courtroom 1, 5th Floor, of the United States District Court for the Northern District of California, Robert F. Peckham Federal Building & U.S. Courthouse, 280 South 1st Street, San Jose, California 95113, the United States of America will and hereby does move for (i) an order permitting the United States to intervene in this action for the purpose of obtaining an order staying the proceedings, and (ii) an order staying proceedings in the matter in light of pending criminal proceedings in *United States v. Elizabeth Holmes & Ramesh "Sunny" Balwani*, Case No. CR 18-258 EJD.

This motion is based upon the following Memorandum of Points and Authorities, the April 19, 2019 Declaration of Robert S. Leach and the attached exhibits attached, oral argument, the pleadings and exhibits on file, and any other evidence the Court may consider.

DATED: April 19, 2019

Respectfully submitted,

ADAM A. REEVES
Attorney for the United States,
Acting Under Authority Conferred By
28 U.S.C. § 515

/s/

_____

JEFF SCHENK
JOHN C. BOSTIC
ROBERT S. LEACH
Assistant United States Attorneys

U.S.' MOT. TO INTERVENE & STAY
CV-18-1603 EJD                    i

## TABLE OF CONTENTS

I.     SUMMARY OF ARGUMENT ...................................................................................1

II.    STATEMENT OF FACTS .......................................................................................1

       A.    The SEC's Complaint .................................................................................1

       B.    The Criminal Indictment.............................................................................2

       C.    Balwani's Discovery Demands in the SEC Civil Case.................................3

III.   ARGUMENT ..........................................................................................................5

       A.    The Court Should Permit the United States to Intervene for the Limited
             Purpose of Seeking a Stay..........................................................................5

       B.    The Court Should Stay the SEC Civil Case.................................................7

             1.    The SEC's Interests Do Not Weigh Against a Stay..............................8

             2.    The Burden on Balwani Is Minimal.....................................................9

             3.    The Convenience of the Court and the Efficient Use of Judicial
                   Resources Weigh in Favor of a Stay.................................................10

             4.    The Interests of Persons Not Parties to the Civil Litigation Weigh in
                   Favor of a Stay.................................................................................11

             5.    The Interest of the Public Weigh in Favor of a Stay...........................12

             6.    Balwani's Fifth Amendment Rights. ..................................................12

IV.    CONCLUSION......................................................................................................12

## TABLE OF AUTHORITIES

### Cases

*Bureerong v. Uvawas*, 167 F.R.D. 83 (C.D. Cal. 1996) ......................................................... 9

*Federal Sav. & Loan Ins. Corp. v. Molinaro*, 889 F.2d 899 (9th Cir. 1989) ........................... 7

*In re Grand Jury Proceedings*, 995 F.2d 1013 (11th Cir. 1993) ............................................ 9

*Keating v. Office of Thrift Supervision*, 45 F.3d 322 (9th Cir. 1995) ............................... passim

*Landis v. N. Am. Co.*, 299 U.S. 248 (1936) ......................................................................... 7

*New York v. Julius Nasso Concrete Corp.*, 202 F.3d 82 (2d Cir. 2000) ................................... 9

*SEC v. Beacon Hill Asset Mgmt.*, 2003 WL 554618 (S.D.N.Y. Feb. 27, 2003) ......................... 6

*SEC v. Chestman*, 861 F.2d 49 (2d Cir. 1988) ................................................................. 6, 8

*SEC v. Cioffi*, 2008 WL 4693320 (E.D.N.Y. Oct. 23, 2008) ................................................... 8

*SEC v. Downe*, 1993 WL 22126 (S.D.N.Y. Jan. 26, 1993) .................................................. 6, 8

*SEC v. Dresser Indus.*, 628 F.2d 1368 (D.C. Cir. 1980) ....................................................... 7

*SEC v. HealthSouth Corp.*, 261 F. Supp. 2d 1298 (N.D. Ala. 2003) ....................................... 6

*SEC v. Kanodia*, 153 F. Supp. 3d 478 (D. Mass. 2015) ....................................................... 8

*SEC v. Mersky*, 1994 WL 22305 (E.D. Pa. Jan. 25, 1994) ................................................... 8

*SEC v. Nicholas*, 569 F. Supp. 2d 1065 (C.D. Cal. 2008) ............................................. passim

*SEC v. Oakford Corp.*, 181 F.R.D. 269 (S.D.N.Y. 1998) ...................................................... 8

*SEC v. Offill*, 2008 WL 958072 (N.D. Tex. Apr. 9, 2008) ...................................................... 6

*SEC v. Saad*, 229 F.R.D. 90 (S.D.N.Y. 2005) ...................................................................... 8

*Trustees of the Plumbers Pension Fund v. Transworld Mech., Inc.*, 886 F. Supp. 1134 (S.D.N.Y. 1995) 9

*Twenty First Century Corp. v. LaBianca*, 801 F. Supp. 1007 (E.D.N.Y. 1992) ......................... 8

*United States v. Mellon Bank, N.A.*, 545 F.2d 869 (3d Cir. 1976) ....................................... 8, 9

*Volmar Distributors, Inc. v. New York Post Co.*, 152 F.R.D. 36 (S.D.N.Y. 1993) ....................... 8

### Statutes

15 U.S.C. § 77q ................................................................................................................. 2

15 U.S.C. § 78j(b) ............................................................................................................. 2

18 U.S.C. § 1343 .............................................................................................................. 3

U.S.' MOT. TO INTERVENE & STAY
CV-18-1603 EJD                                   iii

18 U.S.C. § 1349..............................................................................................2, 3

**Rules**

Fed. R. Civ. P. 24...........................................................................................5, 6

Fed. R. Civ. P. 26...........................................................................................3,4

**Regulations**

17 C.F.R. § 240.10b-5.....................................................................................2, 8

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   SUMMARY OF ARGUMENT

The United States respectfully moves to intervene and stay proceedings in this civil enforcement action by the Securities and Exchange Commission against former Theranos, Inc. executive Ramesh "Sunny" Balwani. Balwani also faces criminal charges related to some of the same underlying conduct in *United States v. Elizabeth Holmes & Ramesh "Sunny" Balwani*, Case No. CR 18-258 EJD. A district court has discretion to stay a civil action in favor of parallel criminal proceedings in the interest of justice. *See Keating v. Office of Thrift Supervision*, 45 F.3d 322, 324 (9th Cir. 1995). A stay is appropriate here on at least two grounds: the public interest favors staying discovery to prevent Balwani from impermissibly using civil discovery to his benefit in the criminal case; and the parties and the Court should not be burdened further by civil discovery matters during the pendency of the criminal case. The other factors set forth in the Ninth Circuit's decision in *Keating* also weigh heavily in favor of a stay. For the reasons set forth below, the government respectfully requests that the Court grant its motion to intervene and stay proceedings in this matter.

### II.   STATEMENT OF FACTS

#### A.   The SEC's Complaint

On March 14, 2018, the SEC filed a civil complaint against Balwani, the former COO of Theranos. The SEC complaint alleges that Balwani, along Theranos' CEO Elizabeth Holmes, "raised more than $700 million from late 2013 to 2015 while deceiving investors by making it appear as if Theranos had successfully developed a commercially-ready portable blood analyzer that could perform a full range of laboratory tests from a small sample of blood." ECF No. 1, ¶ 2. Balwani, the SEC alleges, "deceived investors by, among other things, making false and misleading statements to the media, hosting misleading technology demonstrations, and overstating the extent of Theranos' relationships with commercial partners and government entities, to whom they had also made misrepresentations." *Id.* The SEC further alleges that Balwani "made false or misleading statements to investors about many aspects of Theranos' business, including the capabilities of its proprietary analyzers, its commercial relationships, its relationship with the Department of Defense ("DOD"), its regulatory status with the U.S. Food and Drug Administration ("FDA"), and its financial condition." *Id.* ¶ 3.

In four claims for relief, the SEC alleges that Balwani directly violated, or aided and abetted violations of, Section 17(a) of the Securities Act, Section 10(b) of the Securities Exchange Act, and SEC Rule 10b-5. *See* 15 U.S.C. §§ 77q & 78j(b) & 17 C.F.R. § 240.10b-5; ECF No. 1, ¶¶ 87-98. The SEC seeks an injunction against future violations, a fine, and an order barring Balwani from serving as an officer or director of a public company. *Id.* at 22-23.

Other than noting Balwani settled a lawsuit with an investor in 2017, the SEC complaint does not identify any single investor. *Id.* ¶ 86. Moreover, the SEC's complaint is necessarily limited to civil securities fraud allegations; it does not allege that Balwani criminally defrauded doctors or patients. As Balwani himself noted, "[t]he SEC does not allege that Mr. Balwani defrauded consumers." ECF No. 32 at 3.

On April 20, 2018, Balwani filed an answer to the complaint, generally denying liability and asserting 11 affirmative defenses. ECF No. 12.

The SEC civil case followed at least three separate civil proceedings in which Balwani was a named defendant with access to broad civil discovery:

- *Partner Investments, L.P. v. Theranos, Inc.*, No. 12816-VCL (Del. Ct. Ch. Oct. 10, 2016), a fraud action by a Theranos investor alleging claims substantially similar to those brought by the SEC.

- *Colman v. Theranos, Inc.*, No. CV 16-6822 NC (N.D. Cal. Nov. 28, 2016), ECF No. 1, another fraud action by an investor in a Theranos fund alleging claims substantially similar to those brought by the SEC. *See also id.* ECF No. 154 at 5-7 (describing discovery by Balwani and others).

- *In re Arizona Theranos, Inc. Litig.*, No. CV 16-2138 HRH (D. Ariz. June 29, 2016), ECF Nos. 1 & 157, an action alleging fraud, battery, breach of contract, and other claims by Arizona customers of Theranos. *See also id.* ECF No. 130 (describing discovery by Balwani and others).

**B.    The Criminal Indictment**

On June 14, 2018, the Grand Jury returned an indictment charging Balwani and Holmes with one count of conspiracy to commit wire fraud against Theranos investors, in violation of 18 U.S.C. § 1349;

one count of conspiracy to commit wire fraud against doctors and Theranos patients, in violation of 18 U.S.C. § 1349; six counts of wire fraud relating to the scheme to defraud Theranos investors, in violation of 18 U.S.C. § 1343; and three counts of wire fraud relating the scheme to defraud doctors and Theranos patients, in violation of 18 U.S.C. § 1343. *See* Indictment, *United States v. Holmes*, No. CR 18-258 EJD (N.D. Cal. June 14, 2018), ECF No. 1. On September 6, 2018, the Grand Jury returned a superseding indictment alleging similar counts. *Id.*, ECF No. 39.

Thus, unlike the SEC civil case, the superseding indictment alleges that Holmes and Balwani defrauded doctors and patients by making false claims concerning Theranos's ability to provide accurate, fast, reliable, and cheap blood tests and test results, and through omissions concerning the limits of and problems with Theranos's technologies. *Id.* ¶¶ 14-15. The superseding indictment alleges defendants knew Theranos was not capable of consistently producing accurate and reliable results for certain blood tests, including the tests for calcium, chloride, potassium, bicarbonate, HIV, Hba1C, hCG, and sodium. *Id.* ¶ 17. The defendants nevertheless used interstate electronic wires to purchase advertisements intended to induce individuals to purchase Theranos blood tests at Walgreens stores in California and Arizona. *Id.* ¶ 16. Through these advertisements, the defendants explicitly represented to individuals that Theranos's blood tests were cheaper than blood tests from conventional laboratories to induce individuals to purchase Theranos's blood tests. *Id.* ¶ 17.

The superseding indictment alleges further that based on the defendants' misrepresentations and omissions, many hundreds of patients paid, or caused their medical insurance companies to pay, Theranos, or Walgreens acting on behalf of Theranos, for blood tests and test results, sometimes following referrals from their defrauded doctors. *Id.* ¶ 15. In addition, the defendants delivered to doctors and patients blood results that were inaccurate, unreliable, and improperly validated. *Id.* ¶ 17. The defendants also delivered to doctors and patients blood test results from which critical results were improperly removed. *Id.*

**C. Balwani's Discovery Demands in the SEC Civil Case**

Rule 26(a)(1)(A) of the Federal Rules of Civil Procedure obligates a party, like Balwani, to identify the name and address of individuals likely to have discoverable information that the disclosing party may use to support its claims or defenses. On May 17, 2018, Balwani served Rule 26 initial

disclosures identifying 12 individuals likely to have discoverable information. *See* Declaration of Robert S. Leach dated April 19, 2019 ("Leach Decl.") ¶ 2, Ex. A at 2-6. None of the identified witnesses were outside physicians or patients. *Id.* Balwani subsequently served supplemental Rule 26 initial disclosures, identifying 93 individuals with information relating to his claims and defenses. *Id.* ¶ 3, Ex. B at 2-6. None of the identified witnesses were outside physicians or patients.

On August 2, 2018, following an initial status conference, the Court issued a Case Management Order, allotting 25 depositions and 35 interrogatories per side. ECF No. 34. The Court set a trial setting conference for May 30, 2019, and a discovery cut-off on June 28, 2019. *Id.* The Court conducted additional status conferences on October 15, 2018, and January 14, 2019, and is scheduled to conduct its fourth status conference on April 22, 2019. ECF Nos. 47, 53.

Although Balwani once acknowledged that the scheme to defraud doctors and patients is irrelevant to the SEC civil case, he has persistently sought information irrelevant to the SEC's allegations but directly relevant to the criminal indictment's allegations that he defrauded doctors and Theranos patients. For example:

- On October 19, 2018, Balwani issued a subpoena to LabCorp – which competed with Theranos before its demise – for eight years of documents showing "any invalidation or withdrawal of patient testing results by [LabCorp], including but not limited to any amended, revised, or corrected patient reports that [LabCorp] issued as required by CLIA" and LabCorp's contracts with Walgreens. *See* Leach Decl. ¶ 4, Ex. C at 7.

- On November 7, 2018, Balwani issued a subpoena to Quest Diagnostics – another Theranos competitor – for eight years of documents showing "any invalidation or withdrawal of patient testing results by [Quest], including but not limited to any amended, revised, or corrected patient reports that [Quest] issued as required by CLIA" and Quest's contracts with Safeway. *See id.* ¶ 5, Ex. D at 7.

- On March 26, 2019, Balwani issued a subpoena to Southwest Contemporary Women's Care, P.C. for, among other things, medical records of patients who took Theranos blood tests, communications among doctors relating to the accuracy and reliability of the tests, and the firms' communications with any third-party – including, presumably, the United States – about Theranos. *See id.* ¶ 6, Ex. E at 4.

U.S.' MOT. TO INTERVENE & STAY
CV-18-1603 EJD                                    4

- On March 26, 2019, Balwani issued a subpoena to Fountain Hills Women's Health for, among other things, all communications with Theranos, medical records of patients who took Theranos blood tests, communications relating to a specific patient, and communications relating to the medical provider's financial arrangements. *See id.* ¶ 7, Ex. F at 4-5.

- On March 29, 2019, Balwani issued a subpoena to the Arizona Department of Health Services for, among other things, all documents relating to Theranos, all documents discussing any audit, inspection, or analysis by the department of Theranos' blood testing services, and all communications with patients about Theranos. *See id.* ¶ 8, Ex. G at 4.

The subpoenas to Southwest Contemporary Women's Care and Fountain Hills are particularly notable because they appear nowhere in the SEC's complaint, Balwani's answer, or the initial disclosures. Rather, they are associated with physicians and patients interviewed by the FBI, FDA-CI, and the United States in the criminal investigation.[1] On April 11, 2019, the Court filed on the public docket a letter from one of the subpoena recipients, Fountain Hills, complaining about the subpoena. ECF No. 58.

As the government learns of documents obtained by the SEC in the course of civil discovery, it has obtained them and produced them to Holmes, who is not a party to the SEC civil case, but who contends that the SEC is part of the government's prosecution team and therefore the government's Rule 16, *Brady*, and *Giglio* obligations extend to the SEC. Leach Decl. ¶ 10; ECF No. 66 at 2 (noting that since January 14, 2019, the government has obtained 1.8 million of pages from the SEC, the bulk of which were collected by the SEC following the filing of its litigation against Balwani).

## III.   ARGUMENT

### A.   The Court Should Permit the United States to Intervene for the Limited Purpose of Seeking a Stay.

Under Rule 24(a), a party may intervene as a matter of right, upon a timely motion, if it "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that

---

[1] Similarly, to date, Balwani has deposed five individuals – all of whom are representatives of investors referenced in the superseding indictment. Of the 32 investors and potential investors identified by the SEC in its initial disclosures, Balwani to date has elected to depose only those referenced in the superseding indictment. Leach Decl. ¶ 11.

U.S.' MOT. TO INTERVENE & STAY
CV-18-1603 EJD                                      5

disposing of the action may as a practical matter impair or impede the [party's] ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2). The Court also may permit intervention when a party "has a claim or defense that shares with the main action a common question of law or fact." *Id.* Rule 24(b)(1)(B). In exercising its discretion to permit intervention, the Court "must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." *Id.* Rule 24(b)(3).

Numerous courts have allowed the United States to intervene in a civil case for the purpose of moving to stay discovery and other proceedings until the resolution of a related criminal case. *See, e.g., SEC v. Chestman*, 861 F.2d 49, 50 (2d Cir. 1988) (per curiam); *SEC v. Nicholas*, 569 F. Supp. 2d 1065, 1069 (C.D. Cal. 2008); *SEC v. Offill*, 2008 WL 958072, at *5 (N.D. Tex. Apr. 9, 2008); *SEC v. HealthSouth Corp.*, 261 F. Supp. 2d 1298, 1330 (N.D. Ala. 2003); *SEC v. Beacon Hill Asset Mgmt.*, 2003 WL 554618, at *2 (S.D.N.Y. Feb. 27, 2003); *SEC v. Downe*, 1993 WL 22126, at *11 (S.D.N.Y. Jan. 26, 1993) ("It is well established that the United States Attorney may intervene in a federal civil action to seek a stay of discovery when there is a parallel criminal proceeding, which is anticipated or already underway, that involves common questions of law or fact.").

Rule 24's standards are satisfied here. Because it is prosecuting a parallel criminal action, the United States has an interest in the transactions that are the subject of the SEC civil case, and is so situated that disposing of the action may as a practical matter impair or impede its ability to enforce Title 18. Thus, the government should be permitted to intervene as a matter of right. Likewise, "permissive" intervention is appropriate because the United States unquestionably "has a claim or defense that shares with the main action a common question of law or fact." Rule 24(b)(1)(B). Intervention by itself will not unduly delay or prejudice the adjudication of the original parties' rights. Moreover, because the SEC is an independent civil agency responsible only for civil enforcement of the securities laws, with its own litigating authority, it cannot adequately represent the interest of the criminal authorities. Finally, the United States has brought this motion timely, after learning that Balwani had subpoenaed third-party medical providers who are irrelevant to the SEC civil case but directly relevant to specific counts in the superseding indictment.

U.S.' MOT. TO INTERVENE & STAY
CV-18-1603 EJD                                    6

For these reasons, the Court should permit the United States to intervene for the limited purpose of seeking a stay of proceedings.

**B.    The Court Should Stay the SEC Civil Case**

A district court has discretion to stay a civil action in favor of parallel criminal proceedings in the interest of justice. *See Keating v. Office of Thrift Supervision*, 45 F.3d 322, 324 (9th Cir. 1995) (citing *SEC v. Dresser Indus.*, 628 F.2d 1368, 1375 (D.C. Cir. 1980)); *see also Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936) ("[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its own docket with economy of time and effort for itself, for counsel, and for litigants."). In assessing whether a stay is warranted, the Court should consider: "(1) the interest of the plaintiffs in proceeding expeditiously with [the] litigation or any particular aspect of it, and the potential prejudice to plaintiffs of a delay; (2) the burden which any particular aspect of the proceedings may impose on defendants; (3) the convenience of the court in the management of its cases, and the efficient use of judicial resources; (4) the interests of persons not parties to the civil litigation; and (5) the interest of the public in the pending civil and criminal litigation." *Keating*, 45 F.3d at 324-25. The Court also should consider "'the extent to which the defendant's [F]ifth [A]mendment rights are implicated.'" *Id.* (quoting *Federal Sav. & Loan Ins. Corp. v. Molinaro*, 889 F.2d 899, 902 (9th Cir. 1989)).

For example, in *SEC v. Nicholas*, 569 F. Supp. 2d 1065 (C.D. Cal. 2008), the district court granted a motion to stay discovery in an SEC civil case while a parallel criminal fraud case was proceeding. *Id.* at 1067. Having noted the overlap between the SEC civil case and the criminal proceeding, the Court observed: "The criminal case is of paramount importance not only to the criminal defendants, but to the public and the Court. Allowing for competing civil and criminal cases to proceed simultaneously would undermine the public's right to fair and efficient prosecution of its criminal laws, distract the Defendants and the USAO from fully preparing their respective cases, and divert the Court's attention with burdensome discovery litigation and duplicative law and motion." *Id.*; *see also id.* at 1070 ("[T]he civil and criminal cases are inextricably intertwined and cannot reasonably proceed independent of each other."). The Court further "note[d] a number of problems with litigating the civil case at the same time as the criminal case. First, the volume of discovery in the civil case is massive; its

U.S.' MOT. TO INTERVENE & STAY
CV-18-1603 EJD                                    7

breadth and complexity is almost certain to cause delay in the criminal case. . . . Civil discovery will thus require the devotion of substantial resources both by the parties, in reviewing documents, propounding and responding to discovery, and taking and defending depositions, and by the Court in resolving the myriad of disputes that are likely to arise." *Id.* at 1069. Applying the *Keating* factors, the court concluded a complete stay was appropriate, emphasizing "the foremost concern of the Court is for the parties to devote their time, energy and resources toward preparing for the criminal trial." *Id.* at 1072. Other courts have stayed civil proceedings in light of pending criminal proceedings. *See Chestman*, 861 F.2d at 49; *United States v. Mellon Bank, N.A.*, 545 F.2d 869, 874 (3d Cir. 1976); *SEC v. Mersky*, 1994 WL 22305, at *6 (E.D. Pa. Jan. 25, 1994); *Downe*, 1993 WL 22126 at *14. *But see SEC v. Kanodia*, 153 F. Supp. 3d 478 (D. Mass. 2015); *SEC v. Cioffi*, 2008 WL 4693320 (E.D.N.Y. Oct. 23, 2008); *SEC v. Saad*, 229 F.R.D. 90, 91 (S.D.N.Y. 2005); *SEC v. Oakford Corp.*, 181 F.R.D. 269, 272-73 (S.D.N.Y. 1998).

Here, for the following reasons, the factors identified in *Keating* weigh in favor of a stay:

### 1.    The SEC's Interests Do Not Weigh Against a Stay

*Keating* directs courts to consider: "the interest of the plaintiffs in proceeding expeditiously with [the] litigation or any particular aspect of it, and the potential prejudice to plaintiffs of a delay . . . ." 45 F.3d at 325.

Here, the SEC will not be prejudiced. Indeed, the SEC supports a stay of proceedings. The SEC will not be prejudiced because the SEC's allegations that Balwani engaged in a scheme to defraud investors in violation of Section 10(b) and Rule 10b-5 overlap substantially with the superseding indictment's allegations in Count One and Counts Three through Eight. When the criminal case proceeds expeditiously to trial, the SEC – and Balwani – will benefit from a fully developed record that will obviate or limit the need for discovery. *See Volmar Distributors, Inc. v. New York Post Co.*, 152 F.R.D. 36, 41 (S.D.N.Y. 1993) ("[T]he availability of transcripts and other evidence from the criminal trial may eliminate altogether the need for certain depositions."); *Twenty First Century Corp. v. LaBianca*, 801 F. Supp. 1007, 1011 (E.D.N.Y. 1992) (noting that stay "may streamline later discovery since transcripts from the criminal case will be available to the civil parties").

In addition, a judgment in the criminal case will streamline, if not eliminate, the issues for resolution in the civil case. If Balwani is convicted of Count One or one of Counts Three through Eight, he likely will be precluded from re-litigating in the SEC civil case facts relating to his scheme to defraud investors. *See New York v. Julius Nasso Concrete Corp.*, 202 F.3d 82, 86-87 (2d Cir. 2000). In any event, the criminal case should limit the issues before the Court in the civil case. "[C]ommon factual questions may be conclusively determined in the criminal action [that] would pare down the issues to be determined in the civil case, and serve the interests of judicial economy by narrowing the focus of the action to the benefit of the litigants." *Bureerong v. Uvawas*, 167 F.R.D. 83, 87 (C.D. Cal. 1996); *see also In re Grand Jury Proceedings*, 995 F.2d 1013, 1018 n.11 (11th Cir. 1993) ("Although stays delay civil proceedings, they may prove useful as the criminal process may determine and narrow the remaining civil issues."); *Mellon Bank*, 545 F.2d at 872 ("[I]t might well have been that resolution of the criminal case would moot, clarify, or otherwise affect various contentions in the civil case."). Indeed, a conviction would significantly increase the chances of a settlement in the civil case. *See Trustees of the Plumbers Pension Fund v. Transworld Mech., Inc.*, 886 F. Supp. 1134, 1140 (S.D.N.Y. 1995) ("[R]esolution of the criminal case may increase the possibility of settlement of the civil case due to the high standard of proof required in the criminal prosecution.").

Finally, in the absence of a stay, the SEC is prejudiced because, as a practical matter, it is unable to take discovery of Holmes, who may assert her Fifth Amendment rights and be unavailable as a witness in the SEC civil case.

### 2.    The Burden on Balwani Is Minimal.

*Keating* also directs courts to consider "the burden which any particular aspect of the proceedings may impose on defendants." 45 F.3d at 325. The government anticipates Balwani will argue he is "burdened" in at least two ways. First, he will claim that he is unable to "clear" his name if resolution of the SEC case is deferred. Second, he will claim that is unable to take discovery he is otherwise entitled to take. Neither withstands scrutiny.

First, as Balwani recognizes, "when [the SEC trial date] is set the trial will be scheduled after the criminal trial." *See* Leach Decl. ¶ 9, Ex. H. In other words, Balwani himself assumes that the criminal case will be resolved first. More fundamentally, the superseding indictment alleges claims for wire

fraud and conspiracy to commit wire fraud against doctors and Theranos patients that are not alleged in the SEC civil case and will not be resolved in the civil case. Until the criminal case is resolved there is no meaningful prejudice to Balwani's ability to "clear" his name.

Balwani's claim that he will be denied discovery is likewise unavailing. To the extent the criminal case does not streamline the need for discovery or resolution of issues, Balwani will be entitled to take whatever discovery the civil rules permit after resolution of the criminal case. The discovery that he has taken to date suggests he is doing so for the primary – if not the exclusive purpose – of preparing against the charges in the superseding indictment. The SEC has identified 32 relevant investors and 84 overall witnesses and Balwani has identified at least 93 – yet Balwani has targeted his first five depositions to representatives of victims of the wire fraud counts in the superseding indictment and has served Rule 45 subpoenas targeting doctors and Theranos patients, competitors, and a state regulatory agency who are irrelevant to the SEC case but directly relevant to counts in the superseding indictment.

Finally, it bears emphasis that, to date, Balwani has had extraordinary access to civil discovery to mount a defense. He was a party to *Partner Investments, L.P. v. Theranos, Inc.*, No. 12816-VCL (Del. Ct. Ch. Oct. 10, 2016), in which he deposed representatives of the victim of one of the wire fraud counts here. He was a defendant in *Colman v. Theranos, Inc.*, No. CV 16-6822 NC (N.D. Cal. Nov. 28, 2016), in which he was charged with fraud and misrepresentation claims similar to those asserted in the SEC and criminal cases. And he is currently a party in *In re Arizona Theranos Inc. Litigation*, Case No. CV 16-2138 HRH (D. Ariz. June 29, 2016), where he has deposed at least one Theranos insider about its testing practices. In light of the voluminous discovery Balwani has received and the opportunities to conduct discovery that he has had, any claim of burden falls flat.

### 3. The Convenience of the Court and the Efficient Use of Judicial Resources Weigh in Favor of a Stay.

The third *Keating* factor is "the convenience of the court in the management of its cases, and the efficient use of judicial resources." 45 F.3d at 325. For the reasons discussed above, a stay will best serve the efficient use of judicial resources. As the court in *Nicholas* observed, "[m]anaging a competing civil case, and the burdensome discovery disputes and law and motion that would go along with it, can only distract the Court from devoting its attention to the criminal case." 569 F. Supp. 2d at

1072. It added: "Given the high degree of overlap and interrelatedness of the cases, dual litigation does not serve the interests of efficiency or judicial economy." *Id.* at 1070.

In addition, as described above, the criminal trial will streamline the issues and discovery disputes in the civil case, and very possibly yield a settlement of the civil case. If Balwani is convicted in the criminal case, the judgment will preclude re-litigation of certain issues. If he is acquitted, experience suggests there will be a quick disposition of the SEC's claims.

### 4. The Interests of Persons Not Parties to the Civil Litigation Weigh in Favor of a Stay.

The Court also should consider "the interests of persons not parties to the civil litigation." 45 F.3d at 325. Here, the interests of witnesses and third parties weigh strongly in favor of a stay. Balwani's voluminous discovery requests are subjecting witnesses to numerous discovery demands. Witnesses interviewed by the government in the underlying investigation and deposed and/or interviewed in parallel litigation in Delaware, Arizona, and here, are now being asked to prepare for and sit for deposition testimony in the SEC civil case – all with the prospect that they must prepare further to testify in the criminal trial. Such preparation entails no small expenditure of time and resources by the witness, the SEC, and the government. In addition, witnesses with no meaningful relationship to the SEC civil case – LabCorp, Quest, the medical providers, and state regulatory agencies, to name a few – are forced to scour their records for information that has little prospect of ever being presented in court. Finally, as the government learns of documents obtained by the SEC in the course of civil discovery, it has undertaken efforts to obtain them, review them, and ultimately produce them to Holmes, who is not a party to the SEC civil case. All of this necessarily distracts from the parties' ability to prepare for the criminal trial.

The recent letter submitted by Fountain Hills – which is proceeding pro se – underscores these concerns. Many witnesses may be unmindful of the differences between regulatory, civil, and criminal investigation and proceedings. Many witnesses may be deterred from contributing when they are the subject of innumerable demands for information. Permitting Balwani to continue to scorch the earth in civil discovery places real costs on witnesses needed in both the criminal and the civil proceedings.

### 5.    The Interest of the Public Weigh in Favor of a Stay.

The fifth *Keating* factor is "the interest of the public in the pending civil and criminal litigation." 45 F.3d at 325. This factor too weighs heavily in favor of a stay. As the court in *Nicholas* observed: "The criminal case is of primary importance to the public, the Defendants, and the Court. . . . The public has a vital interest in the integrity of public markets, efficient punishment of wrongdoers, and deterrence of similar conduct by other corporate officers. That interest is best served by resolving the criminal case in the most expeditious manner possible. The criminal case is also of greater relative importance to the named Defendants." 569 F. Supp. 2d at 1072 (citation omitted). The same is as true, if not more so, here. Holmes and Balwani's fraud has garnered substantial attention in the financial and popular media. It has been over three years since initial allegations that Holmes and Balwani were defrauding investors and others arose. The public interest is best served by an expeditious resolution of this important matter, and the only vehicle that permits that is the criminal proceeding.

### 6.    Balwani's Fifth Amendment Rights.

Finally, *Keating* directs that the Court to consider the defendant's Fifth Amendment rights. It is unknown whether Balwani will ultimately elect to invoke the Fifth Amendment when he sits for deposition testimony in the SEC civil case.

## IV.    CONCLUSION

For these reasons, the Court should grant the government's motion to intervene and stay these proceedings.

DATED:  April 19, 2019

Respectfully submitted,

ADAM A. REEVES
Attorney for the United States,
Acting Under Authority Conferred By
28 U.S.C. § 515

/s/

_____

JEFF SCHENK
JOHN C. BOSTIC
ROBERT S. LEACH
Assistant United States Attorneys