# EXHIBIT D

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Northern District of California

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | ) |
| *Plaintiff* | ) |
| v. | )    Civil Action No.   5:18-cv-01603-BLF |
| RAMESH "SUNNY" BALWANI, | ) |
| *Defendant* | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:                                          Quest Diagnostics Clinical Laboratories

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:
    See Schedule A

| Place: Corr Cronin LLP<br>1001 Fourth Ave., Suite 3900<br>Seattle, WA 98154-1051 | Date and Time:<br>12/03/2018 10:00 am |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:     11/07/2018

*CLERK OF COURT*

OR

_____                    s/ Steven Fogg
*Signature of Clerk or Deputy Clerk*                    *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*    Ramesh Balwani
_____ , who issues or requests this subpoena, are:

Steven Fogg; sfogg@corrcronin.com; 1001 Fourth Ave., Suite 3900, Seattle, WA 98154-1051; (206) 625-8600.

## Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.  5:18-cv-01603-BLF

## PROOF OF SERVICE

### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

    ☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____    on *(date)* _____    ; or

    ☐ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____0.00_____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
    **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
    **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
      **(i)** is a party or a party's officer; or
      **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2)** *For Other Discovery.* A subpoena may command:
    **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
    **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  **(2)** *Command to Produce Materials or Permit Inspection.*
    **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
    **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3)** *Quashing or Modifying a Subpoena.*
    **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
      **(i)** fails to allow a reasonable time to comply;
      **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
      **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      **(iv)** subjects a person to undue burden.
    **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
      **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

      **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
    **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
    **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
    **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
    **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
    **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  **(2)** *Claiming Privilege or Protection.*
    **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      **(i)** expressly make the claim; and
      **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
    **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## SCHEDULE A

### I.    INSTRUCTIONS AND DEFINITIONS

1. "YOU," "YOUR," and "YOURS" means Quest Diagnostics Clinical Laboratories ("QUEST DIAGNOSTICS"), and its agents, affiliates, subsidiaries, parents, servants, employees, officers, attorneys, successors, licensees, partners, contractors, and assigns, and all persons acting in concert or participation with each or any of them.

2. "SONORA QUEST" means Sonora Quest Laboratories LLC and its agents, affiliates, subsidiaries, parents, servants, employees, officers, attorneys, successors, licensees, partners, contractors, and assigns, and all persons acting in concert or participation with each or any of them.

3. "PERSON" or "PERSONS" shall mean and include all natural persons, partnerships, joint ventures, and every other form of legally recognized entity, including but not limited to corporations.

4. "DOCUMENTS" and "DOCUMENTS" shall be construed in their broadest permissible sense to refer to any and all printed, typed, and/or recorded matter subject to discovery under the Federal Rules of Civil Procedure, whether maintained in paper or electronic form, including all drafts, and any metadata, attachments, or appendices thereto. If more than one copy of any DOCUMENT exists, and if as a result of handwritten additions and notations, or for any other reason, the copies are not identical, each non-identical copy is a separate DOCUMENT and should be separately identified and produced.

5. "COMMUNICATION" and "COMMUNICATIONS" mean any oral or written expression, disclosure, transfer, transmission, or exchange of information or any nonverbal conduct of a person intended by that person to be a substitute for an oral or written expression, disclosure, transfer, transmission, or exchange of information, in whatever form, by whatever means, including, but not limited to, oral, written, face-to-face, telephone, facsimile, electronic, text messages, voicemail, postal mail, personal delivery, or otherwise.

6. "BALWANI" means Ramesh "Sunny" Balwani.

7. "HOLMES" means Elizabeth Holmes.

8. "THERANOS" means Theranos, Inc. and any of its predecessors, successors, divisions, parents, affiliates, subsidiaries, or current or former officers, directors, employees, independent contractors, agents, attorneys, and anyone acting or purporting to act on its behalf.

9. "THERANOS DEVICES" means any and all of, including any iteration or version of, THERANOS's proprietary technology, chemistries, and devices, including but not limited to the Nanotainer, the Capillary Tubes and Nanotainer Tubes (the "CTN"), the Theranos Sample Collection Device (the "TSCD"), the Theranos Sample Processing Unit (the "TSPU" or also referred to in the media as the "Edison" or "Minilab"), the Theranos Laboratory Automation System (the "TLAS"), and THERANOS's assays.

1

10. "NEWARK FACILITY" means the THERANOS facility formerly located at 7333 Gateway Blvd., Newark, CA 94560, or any other THERANOS facility operating in Newark, California.

11. "PALO ALTO FACILITIES" means the THERANOS facilities formerly located at 1701 Page Mill Road, Palo Alto, CA 94304, and the THERANOS facilities that were formerly located at 1601 S. California Ave., Palo Alto, CA 94304, 3200 Hillview Ave., Palo Alto, CA 94304, and 1001 E. Meadow Cir. Palo Alto, CA 94303, or any other THERANOS facility operating in Palo Alto, California.

12. "ARIZONA FACILITY" means the THERANOS facility formerly located at 1365 North Scottsdale Road, Scottsdale, AZ 85257 at the SkySong office complex, or any other THERANOS facility operating in Scottsdale, Arizona.

13. "PENNSYLVANIA FACILITY" means the THERANOS facility currently or formerly located at 1250 Camp Hill Bypass Lemoyne, Harrisburg Pennsylvania 17043 or 1250 Camp Hill Bypass Camp Hill, PA 17011, or any other THERANOS facility operating in Pennsylvania.

14. "THERANOS CLINICAL LAB SERVICES" refers to any and all clinical laboratory services provided by all laboratories owned and operated by Theranos, including but not limited to the NEWARK FACILITY, the PALO ALTO FACILITIES, the ARIZONA FACILITY, and the PENNSYLVANIA FACILITY.

15. "FDA" means the U.S. Food and Drug Administration, and the FDA's agents, affiliates, subsidiaries, parents, servants, employees, officers, attorneys, successors, licensees, partners, contractors, and assigns, and all persons or agencies acting in concert or participation with each or any of them.

16. "CMS" means the Centers for Medicare & Medicaid Services and its agents, affiliates, subsidiaries, parents, servants, employees, officers, attorneys, successors, licensees, partners, contractors, and assigns, and all persons or state agencies acting in concert or participation with each or any of them.

17. "MEDIA" refers to all natural persons, partnerships, joint ventures, and every other form of legally recognized entity that transmits news, entertainment, education data, or promotional messages.

18. "LAB OR LAB ASSOCIATION" means any for-profit or not-for profit clinical laboratory, industry or trade association or affiliation, and healthcare and diagnostic trade associations, including but not limited to Quest Diagnostics, Sonora Quest Laboratories LLC, AMA Laboratories Inc., American Association of Clinical Chemistry ("AACC"), the American Society for Clinical Laboratory Science ("ASCLS"), College of American Pathologists ("CAP"), National Independent Laboratory Association ("NILA"), Association for Molecular Pathology, California Clinical Laboratory Association ("CCLA"), Commission on Office Laboratory Accreditation ("COLA"), Advanced Medical Technology Association "(AdvaMed"), and including any LAB OR LAB ASSOCIATION's agents, affiliates, subsidiaries, parents, servants, employees, officers,

2

attorneys, successors, licensees, partners, members, contractors, and assigns, and all persons acting under contract, in concert, or in participation with each or any of them.

19. "HEALTH CARE INDUSTRY" means the collection of sectors within the economic health care system or medical industry that includes the health insurance market and any entities, individuals, hospitals, scientists, professionals, medical doctors, medical device manufacturers, pharmaceutical company, researchers, associations, or affiliations that offer goods, services, and other support to provide preventive, curative, rehabilitative, and palliative care and includes medical and scientific research and development of medical equipment, drugs, procedures, and tests, including but not limited to the American Medical Association Inc., Blue Cross Blue Shield Association, United Health Group Inc., Humana Inc., Cigna Health and Life Insurance Company, and Aetna Inc., and includes the HEALTH CARE INDUSTRY's agents, affiliates, subsidiaries, parents, servants, current or former employees, officers, attorneys, successors, licensees, partners, members, contractors, and assigns, and all and all persons acting under contract, in concert, or in participation with each or any of them.

20. "DIAGNOSTIC MANUFACTURER" means any manufacturer of diagnostic medical devices used in the HEALTH CARE INDUSTRY, including but not limited to Roche Diagnostics Corporation, Siemens Corporation, Abbott Laboratories, Becton, Dickinson, and Company, and Beckman Coulter, Inc., and includes the DIAGNOSTIC MANUFACTURER's agents, affiliates, subsidiaries, parents, servants, current or former employees, officers, attorneys, successors, licensees, partners, members, contractors, and assigns, and all and all persons acting under contract, in concert, or in participation with each or any of them.

21. "CONSULTANT" means any individual, professional, strategic or consulting firm that provides expert advice, and also includes the CONSULTANT's agents, affiliates, subsidiaries, parents, servants, current or former employees, officers, attorneys, successors, licensees, partners, members, contractors, and assigns, and all and all persons acting under contract, in concert, or in participation with each or any of them.

22. "PROJECTION" means any analysis, valuation, financial modeling, forecast, report, estimate, or appraisal conducted by any PERSON regarding assets, profits, securities, or actual or potential investments.

23. "DOD" means the United States Department of Defense and its agents, affiliates, subsidiaries, parents, servants, employees, officers, attorneys, successors, licensees, partners, contractors, and assigns, and all persons or agencies acting in concert or participation with each or any of them.

24. "DOJ" means the United States Department of Justice and its agents, affiliates, subsidiaries, parents, servants, employees, officers, attorneys, successors, licensees, partners, contractors, and assigns, and all persons or agencies acting in concert or participation with each or any of them.

25. "SEC" means the United States Securities and Exchange Commission and its agents, affiliates, subsidiaries, parents, servants, employees, officers, attorneys, successors,

3

licensees, partners, contractors, and assigns, and all persons or agencies acting in concert or participation with each or any of them.

26. "NY DEPT OF HEALTH" means the New York State Department of Health and its agents, affiliates, subsidiaries, parents, servants, employees, officers, attorneys, successors, licensees, partners, and assigns, and all persons or agencies acting in concert or participation with each or any of them.

27. "CA. DEPT OF PUBLIC HEALTH" means the California Department of Public Health, including the Laboratory Field Services (LFS) branch, and its agents, affiliates, subsidiaries, parents, servants, employees, officers, attorneys, successors, licensees, partners, and assigns, and all persons or agencies acting in concert or participation with each or any of them.

28. "AZ. DEPT OF HEALTH SERVICES" means the Arizona Department of Health Services, including the Bureau of State Laboratory Services, and its agents, affiliates, subsidiaries, parents, servants, employees, officers, attorneys, successors, licensees, partners, and assigns, and all persons or agencies acting in concert or participation with each or any of them.

29. "PA DEPT OF HEALTH" means the Pennsylvania Department of Health, including the Bureau of Laboratories, and its agents, affiliates, subsidiaries, parents, servants, employees, officers, attorneys, successors, licensees, partners, and assigns, and all persons or agencies acting in concert or participation with each or any of them.

30. "CLIA" means the Clinical Laboratory Improvement Amendments.

31. "WALGREENS" refers to Walgreens Boots Alliance, Inc. and any of its predecessors, successors, divisions, parents, affiliates, subsidiaries, or current or former officers, directors, employees, independent contractors, agents, attorneys, and anyone acting or purporting to act on its behalf.

32. "SAFEWAY" refers to Safeway Inc. and any of its predecessors, successors, divisions, parents, affiliates, subsidiaries, or current or former officers, directors, employees, independent contractors, agents, attorneys, and anyone acting or purporting to act on its behalf.

33. Each of these requests should be construed to elicit all information discoverable within the broadest scope of these requests. This includes, without limitation, the following. "And/or," "and," and "or" are to be read in the conjunctive and disjunctive, and a request for information which would be responsive under a conjunctive reading shall be a request for all information which would be responsive under a disjunctive reading. "Each," "any" and "all" include "each" and "every." The present tense shall be construed to include the past tense, and the past tense shall be construed to include the present tense. The singular shall be construed to include the plural, and the plural shall be construed to include the singular.

34. If you contend that it would be unreasonably burdensome to produce all the documents

4

called for in response to any request, you should (a) produce all documents that are available without unreasonable burden; and (b) describe with particularity the reasons why production of the remaining documents would be unreasonably burdensome.

35. In the event that any responsive document cannot be produced in its entirety, you are requested to produce the document to the fullest extent possible, specifying the reasons for your inability to produce the remainder and describing to the fullest extent possible the contents of the portion not produced.

36. With respect to your responses to the following requests for production, if any document or any portion of any document is withheld because of a claim of privilege, please state the basis for your claim of privilege with respect to such document or portion of any document and the specific ground(s) on which the claim of privilege rests, and including, with respect to documents: the date appearing on the document, or if no date appears, the date on which the document was prepared; the name of the person(s) to whom the document was addressed; the name of each person, other than addressee(s), to whom the document, or a copy thereof, was sent or with whom the document was discussed; the name of the person(s) who signed the document, or if not signed, the name of the person(s) who prepared it; the name of each person making any contribution to the authorship of the document; and the general nature or description of the document and the number of pages of which it consists.

37. In the event that any documents or things that would have been responsive to these requests have been destroyed, discarded or lost, please identify each such document or thing, including: the nature of the document or thing; the author(s) and addressee(s) of any document; any indicated or blind copies of any document; the document's subject matter, number of pages and attachments or appendices; all persons to whom the document was distributed or persons who have seen the thing; the date of destruction, discard or loss; and, if destroyed or discarded, the reasons therefore and the identity of the person(s) authorizing or carrying out any such destruction or discard.

38. Electronically stored information (ESI) shall be produced in reasonably useable form, including specifically any ability to search or perform calculations with the information in the form it is maintained.

39. Information responsive to these requests should be produced electronically via email or file-transfer link. If any documents cannot be produced electronically, please notify undersigned counsel promptly.

## II.    RELEVANT TIME PERIOD

The below topics refer to the period from January 2010 through June 2018 ("Relevant Time Period"), unless otherwise indicated, and include all information that relates to this period, even if prepared outside of the Relevant Time Period.

## III.    DOCUMENTS REQUESTED

1. All COMMUNICATIONS with, to, or from any federal agency referring or relating to THERANOS, HOLMES, BALWANI, THERANOS DEVICES, or THERANOS

CLINICAL LAB SERVICES, including but not limited to YOUR COMMUNICATIONS with the FDA, CMS, DOD, DOJ, and SEC, and including but not limited to COMMUNICATIONS relating to THERANOS's laboratory testing results.

2. All COMMUNICATIONS with, to, or from any state agency referring or relating to THERANOS, HOLMES, BALWANI, THERANOS DEVICES, or THERANOS CLINICAL LAB SERVICES, including but not limited to YOUR COMMUNICATIONS with the NY DEPT OF HEALTH, CA. DEPT OF PUBLIC HEALTH, AZ. DEPT OF HEALTH SERVICES, PA DEPT OF HEALTH.

3. All COMMUNICATIONS with, to, or from any member of the MEDIA referring or relating to THERANOS, HOLMES, BALWANI, THERANOS DEVICES, or THERANOS CLINICAL LAB SERVICES, including but not limited to any of YOUR COMMUNICATIONS with John Carreyrou, and/or any reporters, board members, employees, or editors from the Wall Street Journal.

4. All COMMUNICATIONS with, to, or from any LAB OR LAB ASSOCIATION referring or relating to THERANOS, HOLMES, BALWANI, THERANOS DEVICES, or THERANOS CLINICAL LAB SERVICES, including but not limited to YOUR COMMUNICATIONS with current or former employees of Quest Diagnostics Incorporated and Sonora Quest Laboratories LLC.

5. All COMMUNICATIONS with, to, or from any third-party from the HEALTH CARE INDUSTRY referring or relating to THERANOS, HOLMES, BALWANI, THERANOS DEVICES, or THERANOS CLINICAL LAB SERVICES, including but not limited to YOUR COMMUNICATIONS with current or former employees of the American Medical Association, and including but not limited to COMMUNICATIONS relating to THERANOS's laboratory testing results.

6. All COMMUNICATIONS with, to, or from any DIAGNOSTIC MANUFACTURER referring or relating to THERANOS, HOLMES, BALWANI, THERANOS DEVICES, or THERANOS CLINICAL LAB SERVICES, including but not limited to YOUR COMMUNICATIONS with current or former employees of Roche Diagnostics Corporation, Siemens Corporation, Abbott Laboratories, and Beckman Coulter, Inc.

7. All COMMUNICATIONS with, to, or from any current or former THERANOS employee or any third-party referring or relating to complaints about THERANOS's laboratory testing, THERANOS DEVICES, THERANOS CLINICAL LAB SERVICES, BALWANI, or HOLMES.

8. All DOCUMENTS and COMMUNICATIONS relating in any way to work performed by a CONSULTANT that YOU hired, retained, paid, or asked to perform work or give advice that was related in any way to THERANOS, THERANOS CLINICAL LAB SERVICES, or THERANOS DEVICES.

9. All DOCUMENTS related to or constituting PROJECTIONS relating to your collaboration with SAFEWAY to open QUEST DIAGNOSTICS or SONORA QUEST patient service centers at SAFEWAY stores over the next four years, including but not limited to documents referencing or comparing any PROJECTIONS relating to or made by THERANOS or SAFEWAY with respect to THERANOS.

10. DOCUMENTS constituting any contracts entered into by YOU relating to your collaboration with SAFEWAY to open QUEST DIAGNOSTICS or SONORA QUEST patient service centers at SAFEWAY stores.

11. DOCUMENTS sufficient to show any invalidation or withdrawal of patient testing results by YOU, including but not limited to any amended, revised, or corrected patient reports that YOU issued as required by CLIA.

7