JEFFREY B. COOPERSMITH (CA State Bar No. 252819)
STEPHEN A. CAZARES (CA State Bar No. 201864)
KELLY M. GORTON (CA State Bar No. 300978)
AMANDA M. MCDOWELL (Admitted *Pro Hac Vice*)
MAX B. HENSLEY (Admitted *Pro Hac Vice*)
DAVIS WRIGHT TREMAINE LLP
505 Montgomery Street, Suite 800
San Francisco, California  94111
Telephone:  (415) 276-6500 │Facsimile:  (415) 276-6599
Email: jeffcoopersmith@dwt.com; stevecazares@dwt.com
         kellygorton@dwt.com; amandamcdowell@dwt.com
         maxhensley@dwt.com

Attorneys for Defendant RAMESH BALWANI

# IN THE UNITED STATES DISTRICT COURT

## THE NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | Case No. 5:18-cv-01603 EJD |
| Plaintiff, | **DEFENDANT RAMESH BALWANI'S OPPOSITION TO UNITED STATES' MOTION TO INTERVENE AND STAY ACTION** |
| v. | |
| RAMESH "SUNNY" BALWANI, | **Date:  June 10, 2019** |
| Defendant. | **Time:  10:00 a.m.** |

DAVIS WRIGHT TREMAINE LLP

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION .................................................................................................... 1

II.  FACTUAL BACKGROUND ................................................................................... 1

    A.  The SEC and DOJ Conducted a Joint Investigation and Filed Two Separate Cases Against Mr. Balwani. .................................................................... 1

    B.  Both the SEC and Mr. Balwani Have Been Actively Engaged in Discovery for Almost a Year. ........................................................................................... 3

    C.  The DOJ Unreasonably Delayed Bringing a Stay Motion. ..................................... 6

III.  ARGUMENT ........................................................................................................... 7

    A.  The Government's Motion to Intervene Is Untimely and Should be Denied. ........ 8

        1.  Substantial Water Has Flowed Under This Litigation Bridge. ................... 9

        2.  The Government's Delay Has Prejudiced Mr. Balwani. ........................... 10

        3.  The Government Has No Justifiable Reason for Delay. ........................... 11

    B.  The Government Has Not Met Its Burden to Show a Stay Is Justified. ................ 13

        1.  The Government Chose to Bring Parallel Proceedings and Must Now Live with the Consequences. ..................................................................... 13

        2.  Mr. Balwani's Fifth Amendment Rights Cut Against a Stay. ................... 15

        3.  The SEC Does Not Need a Stay of Civil Discovery. ............................... 15

        4.  Mr. Balwani Would Be Prejudiced by a Stay. ......................................... 17

        5.  A Stay Would Impose Additional Burdens on the Court. ........................ 18

        6.  Third Parties Have No Interest in a Stay. ................................................. 20

            a.  Civil Discovery Does Not Impose Any Undue Burden on Witnesses. ...................................................................................... 20

            b.  The DOJ's Desire for Tactical Advantage in the Criminal Trial Cannot Justify a Stay. .............................................................. 21

        7.  The Public Interest Favors Prompt and Fair Resolution of the SEC Case. ......................................................................................................... 22

IV.  CONCLUSION ...................................................................................................... 23

DAVIS WRIGHT TREMAINE LLP

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*In re Ariz. Theranos Inc. Litig.*,
  Case No. CV 16-2138 HRH (D. Ariz. June 29, 2016) ..................................................... 7, 9, 10

*Butler, Fitzgerald & Potter v. Sequa Corp.*,
  250 F.3d 171 (2d Cir. 2001) ........................................................................................ 9

*In re CFS-Related Sec. Fraud Litig.*,
  256 F. Supp. 2d 1227 (N.D. Okla. 2003) .................................................................... 19

*Colman v. Theranos, Inc.*,
  No. CV 16-6822 NC (N.D. Cal. Nov. 28, 2016) ................................................ *passim*

*In re Commonwealth Oil Ref. Co.*,
  461 F. Supp. 284 (W.D. Tex. 1978) ............................................................................ 9

*Digital Equip. Corp. v. Currie Enters.*,
  142 F.R.D. 8 (D. Mass. 1991) .................................................................................... 19

*Donnelly v. Glickman*,
  159 F.3d 405 (9th Cir. 1998) ...................................................................................... 8

*EEOC v. Glob. Horizons, Inc.*,
  2011 WL 5325747 (D. Haw. Nov. 2, 2011) .............................................................. 22

*ESG Capital Partners LP v. Stratos*,
  22 F. Supp. 3d 1042 (C.D. Cal. 2014) ...................................................................... 18

*Fahmy v. Jay-Z*,
  261 F.R.D. 180 (C.D. Cal. 2009) .............................................................................. 12

*Fed. Sav. & Loan Ins. Corp. v. Molinaro*,
  889 F.2d 899 (9th Cir. 1989) .................................................................................... 18

*Floyd v. City of New York*,
  302 F.R.D. 69 (S.D.N.Y. 2014), *aff'd in relevant part*, 770 F.3d 1051 (2d Cir. 2014) .......... 12

*Hymes v. Bliss*,
  2018 WL 6079443 (N.D. Cal. Nov. 21, 2018) .......................................................... 22

*Keating v. Office of Thrift Supervision*,
  45 F.3d 322 (9th Cir. 1995) ...................................................................... 13, 18, 22

*Kukui Gardens Corp. v. Holco Capital Grp., Inc.*,
  261 F.R.D. 523 (D. Haw. 2009) ................................................................................ 9

ii

DAVIS WRIGHT TREMAINE LLP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DAVIS WRIGHT TREMAINE LLP

*League of United Latin Am. Citizens v. Wilson*,
   131 F.3d 1297 (9th Cir. 1997) ........................................................................ 8, 9

*R & G Mortg. Corp. v. Fed. Home Loan Mortg. Corp.*,
   584 F.3d 1 (1st Cir. 2009) ................................................................................. 9

*Sanrio, Inc. v. Ronnie Home Textile Inc.*,
   2015 WL 1062035 (C.D. Cal. Mar. 10, 2015) ................................................. 9

*SEC v. Alexander*,
   No. 10-cv-4535-LHK (N.D. Cal. Nov. 30, 2010) .............................. 16, 17, 23

*SEC v. Callahan*,
   193 F. Supp. 3d 177 (E.D.N.Y. 2016) ........................................................... 12

*SEC v. Chakrapani*,
   2010 WL 2605819 (S.D.N.Y. June 29, 2010) ................................................ 22

*SEC v. Chestman*,
   861 F.2d 49 (2d Cir. 1988) .............................................................................. 8

*SEC v. Cioffi*,
   2008 WL 4693320 (E.D.N.Y. Oct. 23, 2008) ............................................... 21

*SEC v. Downe*,
   1993 WL 22126 (S.D.N.Y. Jan. 26, 1993) ..................................................... 8

*SEC v. Dresser Indus., Inc.*,
   628 F.2d 1368 (D.C. Cir. 1980) ............................................................... 15, 22

*SEC v. Fraser*,
   2009 WL 1531854 (D. Ariz. Jun. 1, 2009) .............................................. 14, 17

*SEC v. K2 Unlimited*,
   15 F. Supp. 3d 158 (D. Mass. 2014) .............................................................. 16

*SEC v. Kanodia*,
   153 F. Supp. 3d 478 (D. Mass. 2015) ....................................................... 20, 21

*SEC v. Kelly*,
   2006 WL 8437214 (N.D. Tex. Mar. 9, 2006) .......................................... 22, 23

*SEC v. Kelly*,
   No. 3:04-CV-2098-M (N.D. Tex. Mar. 9, 2006) ...................................... 16, 17

*SEC v. Mazzo*,
   2013 WL 812503 (C.D. Cal. Feb. 25, 2013) ................................................. 14

*SEC v. Nicholas*,
   569 F. Supp. 2d 1065 (C.D. Cal. 2008) ..................................................... 8, 13

iii

*SEC v. O'Neill*,
    98 F. Supp. 3d 219 (D. Mass. 2015) ............................................................... 1, 14

*SEC v. Oakford Corp.*,
    181 F.R.D. 269 (S.D.N.Y. 1998)..................................................................... 20, 21

*SEC v. Offill*,
    2008 WL 958072 (N.D. Tex. Apr. 9, 2008) ........................................................ 8

*SEC v. Saad*,
    229 F.R.D. 90 (S.D.N.Y. 2005).......................................................................... 14

*SEC v. Sandifur*,
    2006 WL 3692611 (W.D. Wash. Dec. 11, 2006) ............................................... 14

*Skellerup Indus. Ltd. v. City of Los Angeles*,
    163 F.R.D. 598 (C.D. Cal. 1995) ....................................................................... 13

*U.S. Bank Nat. Ass'n v. State Farm Fire & Cas. Co.*,
    765 F.3d 867 (8th Cir. 2014) ............................................................................. 11

*United States v. Alisal Water Corp.*,
    370 F.3d 915 (9th Cir. 2004).......................................................................... 8, 9

*United States v. Holmes*,
    No. 5:18-cr-00258-EJD ........................................................................... 2, 6, 17

*United States v. Oregon*,
    913 F.2d 576 (9th Cir. 1990) ............................................................................. 12

*United States v. Private Sanitation Indus. Ass'n of Nassau/Suffolk, Inc.*,
    811 F. Supp. 802 (E.D.N.Y. 1992)..................................................................... 19

*United States v. Reyes*,
    No. CR-06-0556 CRB (N.D. Cal. Oct. 4, 2006) ................................................ 14

*United States v. Washington*,
    86 F.3d 1499 (9th Cir. 1996) ............................................................................. 12

**State Cases**

*Partner Investments, L.P. v. Theranos, Inc.*,
    C.A. No. 12816-VCL (Del. Ch. Oct. 16, 2016) ......................................... 7, 9, 10

**Federal Statutes**

18 U.S.C. § 1001 ............................................................................................................ 5

iv

DAVIS WRIGHT TREMAINE LLP

**Rules**

Fed. R. Civ. P. 24 ...................................................................................................... 8

Fed. R. Civ. P. 26 ...................................................................................................... 3

Fed. R. Crim. P. 6 ...................................................................................................... 6

**Other Authorities**

Securities & Exchange Commission, *Theranos, CEO Holmes and Former
    President Balwani Charged with Massive Fraud* (Mar. 14, 2018),
    https://www.sec.gov/news/press-release/2018-41 ................................................. 2

BALWANI'S OPPOSITION TO MOTION
TO INTERVENE AND STAY
Case No. 5:18-cv-01603 EJD

DAVIS WRIGHT TREMAINE LLP

# I.   INTRODUCTION

More than a year after Plaintiff Securities and Exchange Commission ("SEC") filed the Complaint in this case, and more than three years since the Department of Justice ("DOJ") began its joint investigation with the SEC, the DOJ now seeks to stay discovery.  The DOJ's motion misses the standard for intervention by a wide margin because it is so untimely.  But even if the DOJ is permitted to intervene, none of the factors applied by the courts remotely justify a stay. The trend of case law recognizes that "[i]f the government and the SEC choose to bring parallel civil and criminal cases close in time to each other, then each entity must be prepared to go ahead with its case on a usual schedule."  *SEC v. O'Neill*, 98 F. Supp. 3d 219, 223-24 (D. Mass. 2015).  The Court should deny the DOJ's motion.

# II.   FACTUAL BACKGROUND

## A.   The SEC and DOJ Conducted a Joint Investigation and Filed Two Separate Cases Against Mr. Balwani.

The SEC and DOJ jointly investigated the Theranos matter for years.  The SEC began investigating in the fall of 2015, and the DOJ joined the investigation a few months later, in early 2016.  During the joint investigation, the two agencies worked hand-in-glove, sharing documents and conducting sixty-five joint witness interviews known to the defense.  Coopersmith Decl. ¶ 2. For example, the SEC and DOJ both requested documents from many individuals and entities, including the Centers for Medicare and Medicaid ("CMS") and the Food and Drug Administration ("FDA"), collectively obtaining over 323,000 pages of documents from these agencies.  *Id.* ¶ 3.  The SEC and DOJ also jointly interviewed seventeen witnesses from those Department of Health and Human Services ("DHHS") agencies over the span of three years.  *Id.* During the joint investigation, the SEC took three days of videotaped testimony of Mr. Balwani, during which he answered every question posed to him, and the SEC shared the videotape and transcript with the DOJ for use in the criminal prosecution.  *Id.* ¶ 4.

The government ultimately decided to bring two cases against Mr. Balwani, the SEC with a civil lawsuit, and the DOJ with a criminal case.  This was obviously ***not*** Mr. Balwani's decision, and he is exercising his right to defend both matters.  The SEC's Complaint, filed on

1

DAVIS WRIGHT TREMAINE LLP

March 14, 2018 and announced by the SEC with much fanfare,[1] alleges that Mr. Balwani defrauded investors by making misrepresentations about a number of aspects of Theranos's business.  Most relevant to the DOJ's motion for a stay are the SEC's claims of misrepresentations concerning the accuracy and technological abilities of Theranos's blood testing analyzer.  Dkt. 1.  For instance, the SEC alleges that Mr. Balwani misrepresented the "capabilities of its proprietary analyzers."  *Id.* ¶ 3.  The SEC also asserts that Mr. Balwani and Ms. Holmes failed to tell Theranos's business partners, including Walgreens and Safeway, about its "technological challenges" and falsely assured them "that there was no technological problem with the analyzers."  *See id.* ¶ 34.  The SEC further alleges that Mr. Balwani misrepresented to investors that "Theranos' technology could provide blood testing that was faster, cheaper, and ***more accurate*** than existing blood testing laboratories."  *Id.* ¶ 4 (emphasis added).  The SEC has thus placed the accuracy and capabilities of Theranos's proprietary technology squarely at issue in this case, and its claims to the contrary (Dkt. 76) may be convenient for its stay argument but are inconsistent with the Complaint and its refusal to accept Mr. Balwani's proposed stipulation.[2]

The DOJ obtained an indictment against Mr. Balwani and Elizabeth Holmes on June 14, 2018, and a superseding indictment on September 6, 2018.  Like the SEC, the DOJ alleges in the Superseding Indictment that Mr. Balwani defrauded investors by misrepresenting "the technological and operational capabilities" of its devices.  *United States v. Holmes*, No. 5:18-cr-00258-EJD, Dkt. 39 ¶ 7.  The DOJ also alleges, in sync with the SEC, that Mr. Balwani and Ms. Holmes made misrepresentations that Theranos's proprietary technology was capable of

---

[1] Securities & Exchange Commission, *Theranos, CEO Holmes and Former President Balwani Charged with Massive Fraud* (Mar. 14, 2018), https://www.sec.gov/news/press-release/2018-41.

[2] On April 14, 2019, before the DOJ notified Mr. Balwani's counsel that it intended to seek a stay, Mr. Balwani proposed to the SEC a stipulation to remove both laboratory accuracy and patient harm issues from the SEC case.  Dkt. 64-1.  The SEC did not agree to the portion of the proposed stipulation removing laboratory accuracy issues, *see* Dkt. 62, confirming that such issues are a part of the SEC's case against Mr. Balwani.  Also contrary to the SEC's claims, Judge Cousins quashed a subpoena based on a Rule 26 relative burden analysis, but did not rule that the subpoena to health care provider called entirely for irrelevant information, as evidenced by his ruling that a narrower subpoena to that health care provider "might be appropriate" in the future. Dkt. 74; *see also* Dkt. 60 (containing arguments from SEC and Mr. Balwani regarding relevance issues).

2

DAVIS WRIGHT TREMAINE LLP

"performing the full range of clinical tests," and failed to disclose the technology's "accuracy and reliability problems." *Id.* ¶ 12(A).  Both the DOJ and SEC cases allege that Mr. Balwani defrauded investors through misrepresentations and omissions concerning many other aspects of Theranos's business as well.

On July 2, 2018, the Court recognized that the cases were similar, and determined that the cases should be heard in parallel.  Dkt. 27.  The Court held case management and status conferences on August 2, 2018, October 15, 2018, January 14, 2019, and April 22, 2019.  At none of these conferences, and indeed at no time prior to April 17, 2019, when the DOJ first informed Mr. Balwani's counsel that it intended to file the instant motion, did the DOJ ever mention that it wanted a stay of the SEC case.

**B.    Both the SEC and Mr. Balwani Have Been Actively Engaged in Discovery for Almost a Year.**

Discovery in the SEC case has been ongoing for almost a year, without any objection from the DOJ.  Discovery has not been a one-way street in favor of Mr. Balwani.  In addition to taking three days of testimony from Mr. Balwani and obtaining documents by subpoena from him before the Complaint, the SEC issued twelve document requests and six interrogatories to Mr. Balwani after the Complaint.  Coopersmith Decl. ¶¶ 4-5.  In fact, the SEC renewed a request for documents from Mr. Balwani on April 18, 2019, just ***one day*** after the DOJ announced that it wished to seek a stay of discovery, and Mr. Balwani produced those documents.  *Id.* ¶ 6 & Ex. A. Mr. Balwani responded to the SEC's interrogatories and verified his responses under oath as required by the rules.  *Id.* ¶ 5.  In addition, Mr. Balwani produced over 12,000 pages of documents in response to the SEC's discovery requests, and provided the SEC with his Rule 26 disclosures.  *Id.* ¶ 7.  Mr. Balwani has also produced to the SEC thousands of pages of documents obtained from third parties pursuant to subpoenas, which the SEC then sent to the DOJ.  *Id.*  Mr. Balwani also answered the Complaint.  Dkt. 12.

Mr. Balwani has also sought discovery to defend against the SEC's allegations, including document subpoenas to Theranos investors, third parties involved with Theranos's business and retail partnerships with Walgreens and Safeway, and to DHHS and state agencies regarding their

3

BALWANI'S OPPOSITION TO MOTION
TO INTERVENE AND STAY
Case No. 5:18-cv-01603 EJD

evaluation of the accuracy and capabilities of Theranos's technology.  Coopersmith Decl. ¶ 8.

These include document subpoenas served in November 2018 on LabCorp, Quest, and

SonoraQuest,[3] the largest names in the lab testing industry, seeking among other things,

documents relating to communications with the government about Theranos and their new

business partnerships with Theranos's former retail partners Walgreens and Safeway.  *Id.* ¶ 9.[4]

The SEC lodged no objections to these subpoenas.

As noted, Mr. Balwani issued subpoenas to the federal and state agencies responsible for

regulating and evaluating Theranos's blood testing technology, including FDA, CMS, Arizona

Department of Public Health, the New York Department of Health, and the California

Department of Health.  *Id.* ¶ 11.  The first of these was served on September 14, 2018.  *Id.*  So

far, the FDA has made three productions to Mr. Balwani on October 15, 2018, October 18, 2018,

and November 8, 2018; CMS has made one production to Mr. Balwani on January 4, 2019; the

New York Department of Health has made four productions to Mr. Balwani on March 19, 2019,

April 2, 2019, April 12, 2019, and April 15, 2019; the Arizona Department of Public Health has

made a document production to Mr. Balwani on April 10, 2019; and the California Department

of Public Health has made a document production to Mr. Balwani on April 29, 2019.[5]  *Id.* ¶ 12.

Notably, an Assistant United States Attorney in the civil division of the same United States

Attorney's office as the prosecution team in this case represents the FDA and CMS regarding the

civil subpoenas to those DHHS agencies.  *Id.*  The SEC raised no relevancy or other objections

when these subpoenas were issued, and only did so over six months after the subpoenas were

issued.  Nor did the DOJ take action to stay discovery after these subpoenas were issued in the

fall of 2018.  *Id.* ¶ 11.  Mr. Balwani promptly provided the documents he received from all of

---

[3] SonoraQuest produced documents to Mr. Balwani in response to his subpoena, and neither the SEC nor the DOJ objected.  Coopersmith Decl. ¶ 10.  Nor does the DOJ make any mention of SonoraQuest in its motion.

[4] Neither LabCorp nor Quest searched for or produced documents in response to the subpoena. *Id.* ¶ 10.

[5] While the DOJ's motion seems to take issue with the subpoena to the Arizona Department of Public Health, the DOJ does not reference the subpoenas served on any of these other agencies.

DAVIS WRIGHT TREMAINE LLP

these subpoenas to the SEC, which the defense understands the SEC provided to the DOJ. *Id.* ¶ 7.

More recently, based on the challenges made in the SEC's Complaint to the accuracy and capabilities of Theranos's blood tests, Mr. Balwani issued two subpoenas to health care providers, both of which claimed to have done comparative studies of Theranos's tests with other laboratories.[6] Coopersmith Decl. ¶ 13. There are multitudes of health care providers who used Theranos's laboratory services, but Mr. Balwani only issued subpoenas to two who claimed to have conducted comparative studies to assess the accuracy of Theranos's testing. One of these health care providers treated a patient who is the subject of one of the counts of the indictment and the other health care provider is not related to any count of the indictment. The subpoena to one of these medical providers was quashed after motion practice and a hearing conducted pursuant to routine civil practice before this Court, and the other has been withdrawn in recognition of Magistrate Judge Cousins' ruling on the first one. Dkt. 73; Coopersmith Decl. ¶ 15 & Ex. C. Mr. Balwani did not "scorch the earth," as the government claims, Mot. at 11, with subpoenas to any other of at least hundreds of health care providers that had a relationship with Theranos.

Depositions of investors taken by Mr. Balwani in this matter have uncovered the likely existence of *Brady* material so far undisclosed by the government. On March 25 and 26, 2019, Mr. Balwani took the depositions of two witnesses from one of the entities that invested in Theranos. Coopersmith Decl. ¶ 16. At these depositions, it emerged that the head of this investor entity provided inaccurate information during an interview conducted jointly by the SEC and the FBI, in violation of 18 U.S.C. § 1001.[7] Within a few days, Mr. Balwani requested constitutionally required *Brady* material related to this incident. Coopersmith Decl. Ex. D. On

---

[6] One of these health care providers has falsely accused Mr. Balwani's process server of serving the subpoena in a "harassing manner." Dkt. 58. These accusations were unfounded and the process server's conduct at the clinic was "professional and courteous at all times." Coopersmith Decl. Ex. B ¶ 16.

[7] On the face of the interview memorandum that the DOJ produced, only the SEC and the FBI were present for the interview of this investor.

5

DAVIS WRIGHT TREMAINE LLP

April 10, 2019, Mr. Balwani took the deposition of another Theranos investor who expressed

uncertainty about making a certain highly exculpatory statement that was reflected in an FBI

memorandum from an interview of the witness jointly conducted by the DOJ and SEC.  Mr.

Balwani again immediately requested *Brady* material related to this incident as well.

Coopersmith Decl. ¶ 17.  The DOJ has not responded to either defense letter requesting the

identified *Brady* material.  *Id.* ¶ 18.[8]  One week later, however, the DOJ announced that it would

bring a motion to stay further discovery.  *Id.* ¶ 23 & Ex. F.

The DOJ has been an active participant and beneficiary of the SEC discovery process, not

a passive observer.  The defense understands that the SEC transmitted the discovery material to

the DOJ, including the documents Mr. Balwani obtained from third-party subpoenas served in

the SEC case and Mr. Balwani's sworn discovery responses.  *Id.* ¶ 19.  As confirmed by one

witness under oath during his deposition, prosecutors on the DOJ's trial team helped prepare at

least one witness jointly with the SEC on March 21, 2019, *just days before* his deposition

conducted by Mr. Balwani's counsel in the SEC case, and less than a month before the DOJ filed

its motion to stay.  *Id.* Ex. E.

## C.     The DOJ Unreasonably Delayed Bringing a Stay Motion.

The DOJ did not seek a stay of the SEC case when it obtained an indictment against Mr.

Balwani in June 2018, when it obtained a superseding indictment on September 6, 2018, when

the Court held that the cases would be proceeding on a parallel track over ten months ago, or at

any of the multiple status conferences held by the Court.  *See* Dkt. 27; *United States v. Holmes*,

No. 5:18-cr-00258-EJD, Dkt. 10.  The DOJ did not seek a stay of the SEC case when Mr.

Balwani began investigating the SEC's attacks on the accuracy of Theranos's testing services by

issuing subpoenas more than seven months ago.  Coopersmith Decl. ¶ 11.  The DOJ's delay

---

[8] The SEC's argument (Dkt. 76 at 2) that it is somehow improper for Mr. Balwani to inquire
about whether a witness testified before the grand jury, or about statements in an FBI
memorandum from a witness interview conducted jointly by SEC and DOJ, is preposterous.
This is fully addressed in the most recent Joint Supplemental Case Management Statement, Dkt.
No. 60.  Neither Mr. Balwani nor any witness is bound by Fed. R. Crim. P. 6(e), and these events
are nothing more than the product of the government's decision to bring two cases.

BALWANI'S OPPOSITION TO MOTION
TO INTERVENE AND STAY
Case No. 5:18-cv-01603 EJD

DAVIS WRIGHT TREMAINE LLP

allowed it to receive, among other things, Mr. Balwani's Answer, document productions and sworn interrogatory responses, and the third-party discovery obtained by Mr. Balwani and provided by him to the SEC pursuant to an agreement of the parties.  *See* Mot. at 5 (admitting that the DOJ has "obtained" documents from the SEC).

At the time of indictment, Mr. Balwani was defending himself in other civil litigation—*Colman v. Theranos, Inc.*, No. CV 16-6822 NC (N.D. Cal. Nov. 28, 2016) and *In re Ariz. Theranos Inc. Litig.*, Case No. CV 16-2138 HRH (D. Ariz. June 29, 2016).  The DOJ also did not move for a stay of these civil cases, and because it did not do so, Mr. Balwani was forced to sit for a deposition in the *Colman* litigation ***less than two weeks after being indicted***.  Coopersmith Decl. ¶ 20.  Mr. Balwani thus asserted his Fifth Amendment rights in that deposition, and the plaintiffs asked questions designed to capitalize on that assertion.  *Id.*  Notably, while *Colman* settled shortly after that testimony, Mr. Balwani is still defending himself in the Arizona litigation, and the DOJ has not moved to stay that action, *id.* ¶¶ 20-21, nor does its Motion indicate any interest in doing so in the near future.  The Arizona plaintiffs are aligned with the government, so the DOJ may benefit from the depositions and other discovery taken by plaintiffs in the Arizona case.  The same is true for the discovery obtained by the investor plaintiff in *Partner Investments, L.P. v. Theranos, Inc.*, C.A. No. 12816-VCL (Del. Ch. Oct. 16, 2016) ("*PFM*").

The government notified Mr. Balwani's counsel on April 17, 2019 that it intended to move for a stay, which was the ***first*** time the DOJ gave any indication it wanted a stay.  Coopersmith Decl. ¶ 23 & Ex. F.  The government filed its motion on April 19, 2019, and represented that the SEC "supports a stay of proceedings."[9]  Mot. at 8.

### III. ARGUMENT

The government's motion should be denied.  ***First***, the DOJ cannot meet the standard for intervention under Federal Rule of Civil Procedure 24 because the motion is untimely and is

---

[9] On April 22, 2019, undersigned counsel sent SEC counsel a letter requesting their position on the DOJ's stay motion.  The SEC did not respond to that letter, Coopersmith Decl. ¶ 28, but instead submitted a statement in support of the stay, Dkt. 76.

DAVIS WRIGHT TREMAINE LLP

highly prejudicial to Mr. Balwani.  **Second**, the DOJ cannot meet its burden to show that a stay is warranted because Mr. Balwani would be severely prejudiced, the government does not need a stay to protect its interests, and the interests of the court, third parties, and the public all support permitting this matter to continue to a prompt and fair conclusion.

**A.      The Government's Motion to Intervene Is Untimely and Should be Denied.**

This case was filed on March 14, 2018, but the DOJ did not seek to intervene until April 19, 2019, more than thirteen months later.  Because the government has been fully aware of the issues raised by the SEC's Complaint and Mr. Balwani's defenses to those issues for over a year, its motion is untimely and should be denied.

In the Ninth Circuit, a party must intervene promptly as soon as it "knows or has reason to know that [its] interests might be adversely affected by the outcome of litigation."  *United States v. Alisal Water Corp.*, 370 F.3d 915, 923 (9th Cir. 2004); *see also* Fed. R. Civ. P. 24 (requiring motions to intervene to be "timely").[10]  Here, the government did the opposite:  It sat on its hands for an extraordinary amount of time, and benefited and continues to benefit from civil proceedings.

In *League of United Latin American Citizens*, the Ninth Circuit set forth three factors for courts to consider when determining whether a motion for intervention is timely:  "the stage of

_____

[10] The government seeks to intervene both as of right and permissively.  *See* Mot. at 6; Fed. R. Civ. P. 24(a)-(b).  However, there is no basis in Rule 24 for intervention as of right, and the DOJ makes no effort to explain how its interest in prosecuting Mr. Balwani is a "significant[ly] protectable" interest under Ninth Circuit law.  *See, e.g.*, *Donnelly v. Glickman*, 159 F.3d 405, 409 (9th Cir. 1998) ("[i]t is not enough" for intervention as of right for a proposed intervenor to have similar claims against the same defendant).  In fact, in the majority of the cases the government cites, intervention was only granted permissively.  *See SEC v. Chestman*, 861 F.2d 49, 50 (2d Cir. 1988) ("district court denied intervention as of right under Rule 24(a) but granted permissive intervention under Rule 24(b)"); *SEC v. Nicholas*, 569 F. Supp. 2d 1065, 1068 (C.D. Cal. 2008) (granting permissive intervention); *SEC v. Downe*, 1993 WL 22126, at *11 (S.D.N.Y. Jan. 26, 1993) (same).  *But see SEC v. Offill*, 2008 WL 958072, at *1 (N.D. Tex. Apr. 9, 2008) (granting intervention under Rule 24(a) where no party opposed intervention).  While all forms of intervention require timely applications, when considering a motion for "permissive intervention … we analyze the timeliness element more strictly than we do with intervention as of right." *League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1308 (9th Cir. 1997).

DAVIS WRIGHT TREMAINE LLP

BALWANI'S OPPOSITION TO MOTION
TO INTERVENE AND STAY
Case No. 5:18-cv-01603 EJD

the proceedings, the prejudice to existing parties, and the length of and reason for the delay[.]"
131 F.3d at 1308.  Each of those supports the conclusion that intervention is improper here.

### 1.   Substantial Water Has Flowed Under This Litigation Bridge.

Proceedings in this case have been ongoing for more than a year.  The discovery deadline
is currently set for October 25, 2019.  Proceedings in the other parallel civil cases the
government references, but did not (*Colman* and *PFM*) and does not (*Arizona*) move to stay have
been going on even longer.  Courts around the country routinely find motions to intervene
untimely when filed after even shorter delays.  *See, e.g.*, *Butler, Fitzgerald & Potter v. Sequa
Corp.*, 250 F.3d 171, 182 (2d Cir. 2001) (delay of more than a year weighs in favor of
untimeliness); *R & G Mortg. Corp. v. Fed. Home Loan Mortg. Corp.*, 584 F.3d 1, 8-9 (1st Cir.
2009) ("a delay of two and one-half months … was inexcusable"); *In re Commonwealth Oil Ref.
Co.*, 461 F. Supp. 284, 285 (W.D. Tex. 1978) (SEC's unexplained "delay of over sixty days ….
is itself sufficient to warrant a denial" of motion to intervene); *Kukui Gardens Corp. v. Holco
Capital Grp., Inc.*, 261 F.R.D. 523, 528-29 (D. Haw. 2009) (delay of more than a year supports
finding of untimeliness).

While the parties remain in discovery, "[i]ntervention has been denied even at the pretrial
stages when a lot of water has passed under the litigation bridge."  *Alisal Water*, 370 F.3d at 922
(citation & internal quotation marks omitted).  That is precisely the situation here.  As described
above, Mr. Balwani has answered the SEC's Complaint, answered interrogatories under oath,
produced thousands of pages of documents, served subpoenas on dozens of third parties, and
testified in SEC investigative testimony and in *Colman*.  The defense understands that the DOJ
has received countless documents and deposition transcripts from civil discovery in this case and
the other parallel civil cases.  The parties have appeared before this Court on four occasions.  *See*
Dkts. 33, 47, 53, 70; *Kukui Gardens*, 261 F.R.D. at 529 (denying motion to intervene as untimely
while case is in discovery; fact that "the district court has substantively—and substantially—
engaged the issues in the case weighs heavily against allowing intervention") (citation & internal
quotation marks omitted).  Even prior to filing the Complaint, the SEC's investigation of Mr.

9

DAVIS WRIGHT TREMAINE LLP

Balwani lasted for two-and-a-half years, during which time Mr. Balwani produced thousands of additional pages of documents and sat for three days of testimony, all of which the DOJ obtained.  This complex matter is well underway.

### 2.   The Government's Delay Has Prejudiced Mr. Balwani.

Permitting the government to intervene at this stage would cause substantial prejudice to Mr. Balwani.  First, Mr. Balwani has provided substantial information to the government as a result of the SEC matter which he would not have been obligated to give in the criminal context. He has answered the Complaint, answered interrogatories, and answered questions in deposition testimony.  Moreover, as a private individual, Mr. Balwani has limited resources.  He has spent significant amounts of time—both his own and his counsels'—and resources defending against the SEC suit.[11]  Had the government promptly sought and obtained a stay, or if the government as a whole had decided not to bring a civil case as well as a criminal case, much of this work would never have been done.  As a result, Mr. Balwani's ability to fight the criminal charges has diminished.  What is more, these efforts have benefited the government, which the defense understands has received copies of Mr. Balwani's discovery responses, the documents collected from third parties, and transcripts of the depositions taken in this matter.

The same is true with respect to the other civil matters the DOJ did not (and has not) sought to stay.  In the *Colman* case, Mr. Balwani was forced to sit for a deposition ***just eleven days after being indicted***.  Mr. Balwani thus had to assert his Fifth Amendment rights in that deposition.  In *Arizona*, Mr. Balwani has spent substantial resources on issues specific to that suit, which are no longer available to fight his indictment, and all the while the DOJ reaps the benefit of the plaintiff's ongoing civil discovery.  The same is true for the discovery taken by the investor plaintiff in the *PFM* litigation.  The vast majority of the discovery taken in *Colman*, *Arizona*, and *PFM* was taken by plaintiffs, whose positions are aligned with the government, not by Mr. Balwani.

---

[11] Mr. Balwani also had to spend considerable resources in the SEC case on routine civil litigation tasks, such as numerous meet and confer sessions with the SEC, negotiations over protective orders, and compilation of status reports.

DAVIS WRIGHT TREMAINE LLP

On the other hand, denial of the motion would cause no prejudice to the government. The DOJ may not like civil discovery, including the defense's ability to obtain exculpatory information from persons and entities common to both cases, but the government "assumed this risk" by failing to intervene "at the outset."  *U.S. Bank Nat. Ass'n v. State Farm Fire & Cas. Co.*, 765 F.3d 867, 870 (8th Cir. 2014).  To the extent that its concern is that discovery in this matter may stray into areas that it believes are solely the province of the criminal litigation, which it has not, the SEC as a government agency, and this Court, are obviously fully capable of objecting to and controlling the scope of discovery.  Indeed, although Mr. Balwani respectfully disagrees with the ruling, that is precisely what happened in the recent instance where the SEC and a third party objected to a subpoena and the matter came before the Court.  *See* Dkt. 73.  Such issues arise routinely in civil litigation and are not a basis for intervention.

**3.      The Government Has No Justifiable Reason for Delay.**

Finally, the government has no justifiable reason for its delay.  It suggests that certain subpoenas prompted its need to intervene.  That is neither factually accurate nor legally sufficient.  Two of the subpoenas referenced—to LabCorp and Quest—were served over six months ago, and subpoenas seeking similar information from various government agencies in the laboratory regulatory space were served beginning more than seven months ago.  Coopersmith Decl. ¶¶ 9, 11.  Labcorp and Quest produced no documents.  *Id.* ¶ 10.  Moreover, it was the SEC that put the accuracy of Theranos's laboratory tests at issue in this case, and, as noted above in footnote 2, has refused to accept or even respond to Mr. Balwani's proposal to stipulate such accuracy issues out of the case.  The SEC has raised issues concerning accuracy of Theranos's testing not only in its Complaint, *see* Dkt. 1 ¶¶ 3, 4, 34, but also in its discovery responses.  For example, on June 5, 2018, more than ten months ago, the SEC identified "medical patients, demonstration and test subjects, medical professionals, and others in the medical field" as being among the "victims" of the financial fraud it alleges in its Complaint.  Coopersmith Decl. Ex. G.  The SEC further explained to this Court in a filing in July of 2018 that it believes the alleged fraud on investors was based in part on Mr. Balwani's actions in "deceiving … consumers."

11

DAVIS WRIGHT TREMAINE LLP

1   Dkt. 31 at 1.  The government has thus known since the outset of this litigation—if not longer—

2   that the information sought by Mr. Balwani's subpoenas could be at issue in this case.

3          The government's argument also fails as a matter of law.  "Delay is measured from the

4   date the proposed intervenor should have been aware that its interests would no longer be

5   protected adequately by the parties … [;] any substantial lapse of time weighs heavily against

6   intervention." *United States v. Washington*, 86 F.3d 1499, 1503 (9th Cir. 1996).  Thus, "[a] party

7   seeking to intervene must act as soon as he knows or has reason to know that his interests might

8   be adversely affected by the outcome of the litigation."  *United States v. Oregon*, 913 F.2d 576,

9   589 (9th Cir. 1990) (citation & internal quotation marks omitted) (intervention untimely where a

10  party was "at least aware" that its interest "might" be at issue, even where some parties have

11  made "statements to the contrary").  Because the SEC's Complaint and the parties' discovery

12  efforts in this litigation have been known to the DOJ from the outset, it cannot now assert that its

13  intervention is warranted.  This is particularly true given the joint nature of the government's

14  investigation which led to both the civil Complaint and the criminal indictment.  *See, e.g.*, *Fahmy*

15  *v. Jay-Z*, 261 F.R.D. 180, 184 (C.D. Cal. 2009) (intervention untimely where intervenor had

16  "attended a hearing in this action" more than a year prior).  "[I]ntervention law require[s] [the

17  government] to move at the first instance that there was some doubt" that their interests might

18  not be protected by the existing parties in this litigation.  *Floyd v. City of New York*, 302 F.R.D.

19  69, 87 (S.D.N.Y. 2014), *aff'd in relevant part*, 770 F.3d 1051 (2d Cir. 2014).  Here, the DOJ

20  took the approach to "stay silent until things start going badly" from its perspective, which courts

21  around the country routinely reject.  *See SEC v. Callahan*, 193 F. Supp. 3d 177, 203 (E.D.N.Y.

22  2016) (citation & internal quotation marks omitted).  Mr. Balwani is obviously taking discovery

23  in the SEC case with an eye towards obtaining helpful information to defend that case, and

24  because of the similarity of the two cases, that information may be helpful in the criminal case as

25  well.  The recent investor depositions at the end of March and early April 2019 are good

26  examples.  However, that is a natural consequence of the government's decision to bring two

27  cases, and the government has no justifiable reason for their delay.

28

12

DAVIS WRIGHT TREMAINE LLP

In sum, the circumstances here are a marked departure from the scenarios in which courts have permitted intervention.  For example, in the government's primary authority, the DOJ moved to intervene "less than one week after the initial status conference in the criminal case" and less than two months after the civil case was filed.  *Nicholas*, 569 F. Supp. 2d at 1068 (cited in Mot. *passim*).  Here, the government took the opposite tack.  Having made the strategic choice to allow the SEC litigation, and other parallel civil litigation, to go forward—and having benefited from that choice for over a year—the DOJ cannot now step in.  Its motion to intervene should be denied.

**B.      The Government Has Not Met Its Burden to Show a Stay Is Justified.**

The DOJ carries a heavy burden of proving a stay is warranted and why "discovery should be denied."  *Skellerup Indus. Ltd. v. City of Los Angeles*, 163 F.R.D. 598, 600 (C.D. Cal. 1995) (citation & internal quotation marks omitted).  Indeed, absent "substantial prejudice to the rights of the parties involved," parallel proceedings are unobjectionable.  *Keating v. Office of Thrift Supervision*, 45 F.3d 322, 324-25 (9th Cir. 1995) (citation & internal quotation marks omitted).  To meet its burden, the government must demonstrate substantial prejudice in light of several considerations, including (1) "the extent to which [a] defendant's [F]ifth [A]mendment rights are implicated," (2) "the interest of the plaintiffs in proceeding expeditiously with this litigation or any particular aspect of it, and the potential prejudice to plaintiffs of a delay," (3) "the burden which any particular aspect of the proceedings may impose on defendants," (4) "the convenience of the court in the management of its cases, and the efficient use of judicial resources," (5) "the interests of persons not parties to the civil litigation," and (6) "the interest of the public in the pending civil and criminal litigation."  *Id.* (citation & internal quotation marks omitted).  Application of the *Keating* factors to the circumstances of this case, including its provenance from a joint civil and criminal investigation, cut strongly against a stay.

**1.      The Government Chose to Bring Parallel Proceedings and Must Now Live with the Consequences.**

The mere fact that the government has elected to proceed with parallel proceedings, and desires to maintain a "tactical advantage" leading up to a criminal trial is insufficient to warrant a

13

DAVIS WRIGHT TREMAINE LLP

stay. *SEC v. Fraser*, 2009 WL 1531854, at *3 (D. Ariz. Jun. 1, 2009).  Courts frequently deny

DOJ requests to stay parallel civil proceedings "when civil regulators have worked directly in

concert with the criminal prosecutors during the investigation and the Government has used

parallel proceedings to its advantage." *SEC v. Sandifur*, 2006 WL 3692611, at *2 (W.D. Wash.

Dec. 11, 2006); *see also O'Neill*, 98 F. Supp. 3d at 224 ("The SEC and the government cannot

pursue a strategy that allows them to take advantage of the benefits of dual prosecutions, but then

complain when the defendants, too, find ways to benefit from the otherwise very burdensome

task of having to defend on two fronts at the same time."); *SEC v. Saad*, 229 F.R.D. 90,

91 (S.D.N.Y. 2005) ("[I]t is strange[] ... that the U.S. Attorney's Office, having closely

coordinated with the SEC in bringing simultaneous civil and criminal actions against some

hapless defendant, should then wish to be relieved of the consequences that will flow if the two

actions proceed simultaneously."); *SEC v. Mazzo*, 2013 WL 812503, at *2 (C.D. Cal. Feb. 25,

2013) (denying DOJ's stay motion and finding that a "broad stay of all depositions for a period

of at least a year cannot be justified").

     For instance, in *Fraser*, the district court denied the DOJ's motion to stay discovery in a

related SEC civil case, concluding that it was unfair for the government to make public

accusations of wrongdoing while simultaneously preventing the accused from availing

themselves of the courts in their defense.  2009 WL 1531854, at *3.  As the court explained:

> [W]hile the Government might experience some hardship in having civil and
> criminal actions proceed simultaneously, such a generalized concern does not, in
> and of itself, outweigh the very real hardship that will be visited upon Defendants
> if the civil case is stayed completely.... If the Court stays the civil case and they
> later prevail, Defendants will not only have needlessly suffered additional years of
> living under suspicion of these allegations, but they will also have lost valuable
> working years in which they could have supported themselves and their families.

*Id.* (citation omitted).

     Similarly, in *United States v. Reyes*, No. CR-06-0556 CRB (N.D. Cal. Oct. 4, 2006),

Judge Breyer of this Court denied the DOJ's stay request pending the resolution of a parallel

criminal case.  Judge Breyer criticized the logic and fairness of these government tactics:

BALWANI'S OPPOSITION TO MOTION
TO INTERVENE AND STAY
Case No. 5:18-cv-01603 EJD

DAVIS WRIGHT TREMAINE LLP

[W]hen the SEC decides they want to charge people with a violation of securities laws, which they are entitled to do and have a right to do and duty to do, they invite, of course, the defense to respond; and the defendant has the right to respond in civil litigation, and so I don't understand the logic if the SEC is filing charges against people and then saying, "oh, by the way, don't do any discovery, we'll wait a year or so."  When I say I don't understand the logic, what I am saying is I don't really appreciate the fundamental fairness of that approach or the fairness of that approach.

Coopersmith Decl. Ex. H at 5.

### 2.     Mr. Balwani's Fifth Amendment Rights Cut Against a Stay.

Importantly, the *Keating* factor that generally weighs most strongly in favor of a stay—protecting a criminal defendant—does not do so here.  In *SEC v. Dresser Industries, Inc.*, 628 F.2d 1368 (D.C. Cir. 1980), the court held that "the strongest case for deferring civil proceedings until after completion of criminal proceedings" is where there is a serious risk of "undermin[ing] the [defendant's] Fifth Amendment privilege" by forcing the defendant to choose between fully defending himself in the civil case or invoking the Fifth Amendment.  *Id*. at 1375-76.

In fact, this factor cuts against a stay because the government brought this motion, not Mr. Balwani.  The government did not take this factor into account when it failed to move for a stay upon indictment, resulting in Mr. Balwani being required to testify in the *Colman* deposition and provide initial disclosures and answer the SEC's interrogatories and document requests in this suit.  Nor did it do so during the joint investigation, forcing Mr. Balwani to give three days of testimony to the SEC, which the SEC then gave the DOJ to assist with its prosecution.  This factor cuts strongly against a stay.

### 3.     The SEC Does Not Need a Stay of Civil Discovery.

The SEC has up to this point demonstrated a strong interest in proceeding expeditiously in this matter.  It has served interrogatories and document requests on Mr. Balwani—all of which he has answered.  The SEC's pursuit of discovery from Mr. Balwani continued even ***after*** the DOJ said it would move for a stay, renewing discovery requests to Mr. Balwani (which he has answered) on April 18, 2019.  Coopersmith Decl. ¶ 6.  On April 15, 2019, the SEC agreed that an ***extension of discovery*** was warranted in its case, with no mention of the DOJ's impending stay

15

DAVIS WRIGHT TREMAINE LLP

DAVIS WRIGHT TREMAINE LLP

motion.  Dkt. 60 at 8.  As courts around the country have recognized, "the SEC has an interest in proceeding expeditiously with the civil litigation" it has brought.  *SEC v. K2 Unlimited*, 15 F. Supp. 3d 158, 160 (D. Mass. 2014) (citation & internal quotation marks omitted) (resolution of civil case "will serve the public interest that the SEC is constituted to represent" and prevent "risk of losing evidence through the death of witnesses or fading memories").

In fact, the SEC has taken precisely the opposite position in recent years.  In *SEC v. Alexander*, No. 10-cv-4535-LHK (N.D. Cal. Nov. 30, 2010), attorneys from the same SEC office opposed a motion to stay brought by a defendant facing parallel criminal and civil proceedings in this very court, making arguments directly contrary to the DOJ's claims here.  Coopersmith Decl. Ex. I.  In *Alexander*, before Judge Koh, the SEC declared that a stay was not appropriate because "where, as here, the civil action is brought by a government agency charged with enforcing federal law, courts recognize that the strong public interest in prompt resolution of enforcement actions weighs heavily against a stay."  *Id.* at 2; *compare infra* at Part. III.B.6.  The SEC then warned that a stay would cause "discovery [to] be delayed indefinitely, substantially increasing the odds that the memories of key third-party witnesses might fade, or that they might otherwise become unavailable, and that documents in their possession may be lost."  *Id.* at 4; *compare infra* at Part III.B.3.  The SEC further cautioned Judge Koh that "should [the defendant] be acquitted of the criminal charges against him, the Commission's case will remain.  Rather than delay discovery pending resolution of the criminal case, the Court's interest in managing its docket favors allowing the parties to proceed with discovery now, to ensure that this case can be promptly brought to trial."  *Id.* at 5, *compare infra* at Part III.B.4.  In view of the position that the SEC actually took in *Alexander*, as described above, it is ironic to say the least that it now cites *Alexander* in support of its stay motion.  *See* Dkt. 76 at 3.  Perhaps the principle at work here is that the SEC supports stays when the DOJ wants them but opposes stays when the defendant wants them.

The SEC has repeatedly made similar arguments against stay motions in courts around the country.  In *SEC v. Kelly*, No. 3:04-CV-2098-M (N.D. Tex. Mar. 9, 2006), for example, the

SEC opposed a stay motion brought by defendants seeking to avoid simultaneously litigating criminal and civil parallel proceedings.  There, they wrote that the untimely request—coming nearly a year after criminal indictments were threatened, and after obtaining discovery from the SEC—merited denial of the motion:  "[T]he Court may refuse to grant a stay if it determines that Defendants' acceptance of the benefits of this civil proceeding also requires them, in good conscience, to accept the burdens of discovery and trial."  Coopersmith Decl. Ex. J at 5, *compare supra* at Part III.A.  Moreover, they claimed, the importance of the SEC's enforcement mission was of such stature that, as a general rule, "civil enforcement actions by regulators should not be stayed."  *Id.* at 6 (capitalization removed).  All of the SEC's arguments in *Alexander* and *Kelly* apply with equal force in this matter.

### 4.    Mr. Balwani Would Be Prejudiced by a Stay.

Mr. Balwani would be severely prejudiced by a stay of civil discovery, especially considering that the SEC has obtained extensive discovery from Mr. Balwani and has given all of that discovery material to the DOJ.  Mr. Balwani has invested an enormous amount of time and resources seeking discovery to mount his defense, but his efforts are not yet complete.  Discovery in the SEC case is at a critical juncture, considering Mr. Balwani has only had the opportunity to depose five investors until now and has notified the SEC of his plans to depose additional key witnesses in the coming months.  Mr. Balwani has undergone enormous effort and expense preparing for depositions.  This burden on Mr. Balwani would become even more extreme if he was forced to restart discovery after an acquittal in the criminal case instead of proceeding directly to an SEC trial.  As in *Fraser*, the SEC's case alleges "serious violations of the securities law," and Mr. Balwani has a "strong interest in being able to defend [himself] against the SEC's allegations as quickly as possible."  2009 WL 1531854, at *3. As the SEC commented in *Alexander*, upon an acquittal the SEC case will remain and discovery should proceed so that it can promptly be brought to trial.  Coopersmith Decl. Ex. I at 5.

Mr. Balwani's interests in obtaining exculpatory evidence and testimony for the SEC case will also be prejudiced by any stay of discovery.  The relevant facts in this case occurred

BALWANI'S OPPOSITION TO MOTION
TO INTERVENE AND STAY
Case No. 5:18-cv-01603 EJD

DAVIS WRIGHT TREMAINE LLP

DAVIS WRIGHT TREMAINE LLP

many years ago.  The indefinite delay proposed by the government increases the likelihood that witnesses will not recall critical information, that witnesses will be unavailable, and that documents may be lost or destroyed.  The SEC made precisely this point in its opposition to a stay in *Alexander*.  *Id*. at 3.  The SEC has had the benefit of a resource intensive investigation during the pre-filing stage of this case, and worked in tandem with the DOJ during its joint investigation.  Mr. Balwani had no such opportunity.  Now it is his turn to depose witnesses and obtain information to defend against the SEC charges.  Having begun to do so, he should be entitled to finish what he has started.  That some discovery in the SEC case may also be relevant to the criminal case is hardly surprising (and was explicitly acknowledged by the DOJ in June 2018, *see United States v. Holmes*, No. 5:18-cr-00258-EJD, Dkt. 10) and has no legal bearing on the DOJ's right to a stay, and in any event is a situation of the government's own making by deciding to proceed with two cases.[12]

Mr. Balwani spent about seven years of his life working tirelessly at Theranos, and his life has been effectively put on hold for more than three years during the government's joint investigation and court cases.  It would be grossly unfair to delay the SEC case indefinitely and force Mr. Balwani to restart civil discovery at great expense only after an acquittal in the criminal case.  Mr. Balwani should be allowed to complete his civil discovery now so that after an acquittal he will be in a position to move forward with the SEC case expeditiously.

### 5.   A Stay Would Impose Additional Burdens on the Court.

"Courts have recognized that this *Keating* factor normally does not favor granting a stay, because 'the court has an interest in clearing its docket.'"  *ESG Capital Partners LP v. Stratos*, 22 F. Supp. 3d 1042, 1047 (C.D. Cal. 2014) (quoting *Fed. Sav. & Loan Ins. Corp. v. Molinaro*, 889 F.2d 899, 903 (9th Cir. 1989)).  This is because "convenience of the courts is best served when motions to stay proceedings are discouraged.  The courts must be mindful that a policy of

---

[12] Although unmentioned in the government's motion, as noted above the government decided for the first time to seek a stay just days after investor depositions in the SEC case uncovered the likely existence of *Brady* material.  *See* Coopersmith Decl. ¶¶ 16-17 & Ex. D.  The fact that this was uncovered in civil depositions, instead of by the government reviewing and producing the material on its own, is obviously not a reason to stay SEC discovery.

18

issuing stays solely because a litigant is defending simultaneous lawsuits would threaten to become a constant source of delay and an interference with judicial administration." *United States v. Private Sanitation Indus. Ass'n of Nassau/Suffolk, Inc.*, 811 F. Supp. 802, 808 (E.D.N.Y. 1992) (citation & internal quotation marks omitted).

Judicial efficiency concerns are particularly acute here. First, the government has requested a stay of indefinite duration. *ESG*, 22 F. Supp. 3d at 1047 (where "there is no date set for the criminal trial," length of delay imposes a hardship on courts that weighs against stay); *Sanrio, Inc. v. Ronnie Home Textile Inc.*, 2015 WL 1062035, at *4 (C.D. Cal. Mar. 10, 2015) (denying request for "indefinite" stay as "inconvenient for the court") (citation & internal quotation marks omitted). Second, this matter is particularly complex, and the Court's "strong interest in keeping litigation moving to conclusion without unnecessary delay.… is enhanced in complex litigation." *In re CFS-Related Sec. Fraud Litig.*, 256 F. Supp. 2d 1227, 1241-42 (N.D. Okla. 2003). Where (as here) the parties have invested months in setting up deposition schedules and coordinating witnesses, "delay or disruption … would severely hamper the progress made to this date." *Id.* With the DOJ's consent, this Court has set hearings in this matter and the criminal prosecution in parallel to effectively manage each case, and undersigned counsel are aware of nothing to suggest that this has been ineffective. *See* Dkt. 27.

The government suggests that the criminal trial may narrow or resolve certain issues in this case. Mot. at 11. While this could potentially occur, the opposite is equally possible: a year-plus delay resulting in a criminal acquittal or mistrial in the event a jury cannot reach a verdict, followed by a complete re-start of civil discovery. Permitting civil discovery to proceed prior to the criminal trial, on the other hand, would permit all parties to expeditiously schedule a civil trial promptly once the criminal matter ends. The government's proposed stay could, therefore, add years to the resolution of this matter. It is "unrealistic to rely upon fortuitous events to manage [the court's] docket." *Digital Equip. Corp. v. Currie Enters.*, 142 F.R.D. 8, 14 (D. Mass. 1991).

BALWANI'S OPPOSITION TO MOTION
TO INTERVENE AND STAY
Case No. 5:18-cv-01603 EJD

DAVIS WRIGHT TREMAINE LLP

**6.      Third Parties Have No Interest in a Stay.**

The government argues that two sets of third parties have interests implicated by its request for a stay:  witnesses and the DOJ itself.  Neither claim is compelling.

**a.      Civil Discovery Does Not Impose Any Undue Burden on Witnesses.**

First, the DOJ suggests that "the interests of witnesses and third parties weigh strongly in favor of a stay" because they should not be asked to "prepare for and sit for deposition testimony in the SEC civil case" and then "prepare further to testify in the criminal trial."  Mot. at 11. Courts, however, have held that the government should not seek a stay of parallel civil proceedings in order to "insulate its witnesses from discovery or questioning in anticipation of criminal trial."  *SEC v. Kanodia*, 153 F. Supp. 3d 478, 481 (D. Mass. 2015).  Yet that is exactly what the government is trying to do here.

Moreover, these witnesses (and the SEC) are fully capable of defending their own interests.  As evidenced by the recent proceedings involving a medical clinic subpoena, "[t]o the extent that the defendants' discovery demands go beyond what would ordinarily be permitted in a civil case involving the same underlying circumstances, such demands are subject to being quashed."  *SEC v. Oakford Corp.*, 181 F.R.D. 269, 272 (S.D.N.Y. 1998).  The motion to quash filed by that one medical clinic, the ruling on which Mr. Balwani respectfully disagrees with and in any event was accompanied by Judge Cousins' comment that a narrower subpoena "might be appropriate" in the future, Dkt. 74, was the only instance of such a motion to date in the SEC litigation.  This hardly supports the DOJ's breathless "scorch the earth" claim.

The government also argues that "LabCorp, Quest, the medical providers, and state regulatory agencies … are forced to scour their records for information …."  Mot. at 11.  This is not the case.  LabCorp and Quest, two companies who were competitors with Theranos, did not have to search their records and did not produce documents to Mr. Balwani; the subpoena to Fountain Hills Medical Clinic was quashed; Mr. Balwani has withdrawn his subpoena to the only other medical provider from which he has requested documents; and Mr. Balwani has worked with state agencies to develop narrow and targeted searches.  Coopersmith Decl. ¶¶ 10, 12, 14 &

20

Ex. B; Dkt. 73.  Contrary to the government's allegations that he is "scorching the earth," Mr. Balwani is seeking civil discovery that is necessary to mount his defense.  The government has had the benefit of investigating this case for many years, interviewing over 100 witnesses, and receiving over 11 million pages of documents from third parties.  *Id.* ¶ 29.  Granting the government's request for a stay would deprive Mr. Balwani of his right to prepare his defense to the allegations.

**b.**      **The DOJ's Desire for Tactical Advantage in the Criminal Trial Cannot Justify a Stay.**

Similarly, the DOJ has not supported its contention that civil discovery would somehow "substantially prejudice" its criminal prosecution.  "Courts are justifiably skeptical of blanket claims of prejudice by the government where … the government is responsible for the simultaneous proceedings in the first place."  *SEC v. Cioffi*, 2008 WL 4693320, at *1-2 (E.D.N.Y. Oct. 23, 2008).  Even if it could be true that Mr. Balwani's recent subpoenas threaten to interfere with the criminal prosecution because they are "directly relevant" to the indictment, that says nothing about why those subpoenas should be treated any differently than the entire SEC litigation.  It is undisputed that the SEC's primary contention—that Mr. Balwani defrauded investors in Theranos—is also at issue in the criminal case.  Thus, the government's interest in avoiding civil discovery which may overlap with its prosecution arises not because of Mr. Balwani's subpoenas, but because the government chose to pursue parallel proceedings with overlapping claims and issues.

More fundamentally, however, even though civil discovery might reveal information relevant to the government's criminal case, or potentially result in inconsistent witness statements, these are "risks that the government and the SEC run when they elect to pursue parallel investigations and prosecutions."  *Kanodia*, 153 F. Supp. 3d at 482.  The government made the decision to bring two cases against Mr. Balwani, and if the discovery Mr. Balwani is obtaining in the SEC case results in the "happenstance" that he also obtains evidence that is helpful for his criminal case, that is the product of the government's decision to bring two cases against Mr. Balwani.  *Oakford Corp.*, 181 F.R.D. at 272-73 ("mere tactical advantage, whether to

21

DAVIS WRIGHT TREMAINE LLP

one side or another, is not a proper basis on which a Court should determine a" stay motion).

The SEC and DOJ made their decisions regarding resource allocations when they chose to bring

both of these cases in the same time frame. *See SEC v. Chakrapani*, 2010 WL 2605819, at *7

(S.D.N.Y. June 29, 2010) ("Surely, the government was well aware of the discrepancy between

the civil and criminal discovery rules when it, along with the SEC, chose to initiate parallel

proceedings …. Before doing so, the government and SEC could have engaged in a cost-benefit

analysis that weighed the benefits of simultaneously initiating civil and criminal proceedings

against the cost of possibly losing the government's tactical discovery advantage in the criminal

case.").

**7.     The Public Interest Favors Prompt and Fair Resolution of the SEC Case.**

The DOJ asserts that the public interest supports the "expeditious resolution" of the

criminal matter.  Mot. at 12.  But nothing about its motion implicates the timing of the criminal

trial.  *See EEOC v. Glob. Horizons, Inc.*, 2011 WL 5325747, at *7 (D. Haw. Nov. 2, 2011)

(despite interest in prompt resolution of criminal case, a stay is inappropriate where there is no

evidence that "interest would be compromised if a stay were denied").  Mr. Balwani simply

seeks to play by the rules that the government imposed on him by filing both criminal and civil

actions against him at the same time.

Moreover, "[i]t is equally true, however, that the public … have an interest in fair, open,

and expeditious *civil* legal proceedings ...."  *Hymes v. Bliss*, 2018 WL 6079443, at *5 (N.D. Cal.

Nov. 21, 2018) (emphasis in original).  This is particularly powerful where, as here, the plaintiff

is a federal law enforcement agency.  *Keating*, 45 F.3d at 326 (stay of civil case "would have

been detrimental to public confidence in the enforcement scheme for thrift institutions"); *Dresser

Indus., Inc.*, 628 F.2d at 1380 (citing public importance of timely "[f]ulfillment of the SEC's

civil enforcement responsibilities" in denying motion to stay pending parallel criminal case);

*SEC v. Kelly*, 2006 WL 8437214, at *4 (N.D. Tex. Mar. 9, 2006) ("The public at large has a

strong interest in a speedy resolution of enforcement actions brought by federal regulatory

agencies.") (collecting cases).  The SEC has certainly been a strong proponent of the public

22

DAVIS WRIGHT TREMAINE LLP

1  interest in proceeding with civil enforcement cases it files, as it expressed in other cases such as

2  *Alexander* and *Kelly*.  Coopersmith Dec. Ex. I at 2 & Ex. J at 6.

3     The SEC filed this suit more than a year ago, asserting publicly that Mr. Balwani had

4  perpetrated a massive fraud.  The SEC's media strategy contributed to massive public coverage

5  of this litigation, which should be resolved as soon and as fairly as possible.  *See Keating*, 45

6  F.3d at 326 (recognizing public interest in resolution of civil case is magnified where it is the

7  subject of "inordinate amount of media attention").  The public has an interest in the government

8  playing by the same rules as every other litigant:  When it chooses to file two suits, it must

9  follow the rules applicable to both suits.

10           **IV.  CONCLUSION**

11     For all of the reasons set forth above, the government's motion should be denied as its

12  request to intervene is untimely and its request for a stay fails under the factors routinely applied

13  by the federal courts.

14

15  DATED:  May 3, 2019          Respectfully submitted,

16                 DAVIS WRIGHT TREMAINE LLP

17

18               By:  */s/ Jeffrey B. Coopersmith*
               Jeffrey B. Coopersmith

19               Attorney for Defendant

20               RAMESH BALWANI

21

22

23

24

25

26

27

28

DAVIS WRIGHT TREMAINE LLP

23