ADAM A. REEVES (NYBN 2363877)
Attorney for the United States,
Acting Under Authority Conferred By 28 U.S.C. § 515

HALLIE HOFFMAN (CABN 210020)
Chief, Criminal Division

JEFF SCHENK (CABN 234355)
JOHN C. BOSTIC (CABN 264367)
ROBERT S. LEACH (CABN 196191)
Assistant United States Attorneys

    150 Almaden Boulevard, Suite 900
    San Jose, California 95113
    Telephone: (408) 535-5061
    Fax: (408) 535-5066
    robert.leach@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>RAMESH "SUNNY" BALWANI,<br><br>Defendant. | CV-18-1603-EJD<br><br>UNITED STATES' REPLY BRIEF IN SUPPORT OF ITS MOTION TO INTERVENE AND STAY ACTION<br><br>Date:  June 10, 2019<br>Time: 10:00 a.m. |

U.S.' REPLY RE MOT. TO INTERVENE & STAY
CV-18-1603 EJD

## I.  INTRODUCTION

Since the filing of the government's motion, the Court has quashed Balwani's subpoena to Fountain Hills Women's Health, finding it was "overly broad, not proportional to the needs of the case, and not compliant with Fed. R. Civ. P. 45(d)(1), as it imposes undue burden and expense on [a] non-party."  ECF No. 73.  Balwani has withdrawn a second subpoena to a medical provider, essentially conceding it too fell outside of the scope of the civil rules.  The undeniable inference from this is that Balwani was using civil discovery to defend against the criminal case, as the government demonstrated in its motion.  Despite this, Balwani continues to attempt to show that the factors identified in *Keating v. Office of Thrift Supervision*, 45 F.3d 322 (9th Cir. 1995), weigh against a stay.  Those efforts do not withstand scrutiny.  Balwani further complains about the timeliness of the motion, but the government promptly sought intervention and a stay after it became apparent that the defendant was targeting patients and doctors that had nothing to do with the civil action.  Because a stay is in the interests of justice, the Court should grant the government's motion.

## II.  THE FACTORS SET FORTH IN *KEATING* SUPPORT A STAY

The defendant claims to see a "trend" against stays in district court decisions involving parallel proceedings.  ECF No. 77 at 1:7, 13-14.  He further argues that any time an independent federal agency like the SEC, with its own litigating authority, decides to bring a civil action to protect investors or otherwise vindicate its mission, the Department of Justice must "live with the consequences."  *Id.* at 13.  The Ninth Circuit has not joined this so-called trend, nor has it held that choices are so binary.  Instead, as the defendant ultimately acknowledges (*id.* at 13:15-23), the Ninth Circuit instructs district courts to carefully weigh the factors set forth in the *Keating* decision.  ECF No. 77 at 13.

### 1.  The Interest of the SEC

The SEC "supports the United States' Motion to Intervene and Stay Action because the SEC agrees that the relevant law weighs in favor of a stay pending the trial in the related criminal case."  ECF No. 76 at 1.  The SEC further explains that "the parties have a fundamental disagreement about the appropriate scope of discovery in this case, which has resulted in wasteful burdens on non-parties and increased time, effort, and costs for the SEC."  *Id.*  Despite this, Balwani persists in asserting that "the SEC does not need a stay of civil discovery."  ECF No. 77 at 15.  Yet he does not dispute that the SEC is

U.S.' REPLY RE MOT. TO INTERVENE & STAY
CV-18-1603 EJD                                                    1

prejudiced in the absence of a stay because it is unable to take discovery of Holmes, who is essentially unavailable as a witness at least until the criminal case is resolved. He also is silent about whether he will sit for deposition.

Instead, Balwani notes that the SEC has resisted stays in other parallel proceedings, specifically a 2010 case before Judge Koh. *See SEC v. Alexander*, 2010 WL 5388000, at *4-5 (N.D. Cal. Dec. 22, 2010). Of course, Judge Koh ultimately rejected the SEC's arguments and granted a stay, subject to case-by-case exceptions where good cause was shown. *Id.* at *8. In doing so, Judge Koh repeatedly cited with approval *SEC v. Nicholas*, 569 F. Supp. 2d 1065 (C.D. Cal. 2008), the case the government cites and Balwani all but relegates to a footnote. More fundamentally, the SEC's support of a stay here reflects careful analysis of the *Keating* factors, not a rote, one-size-fits-all answer in every case.

The defendant also repeatedly claims the SEC and DOJ "jointly investigated" Theranos' fraud scheme, and thus the SEC's interest in a stay or standing vis-à-vis a stay is minimized. ECF No. 77 at 1-3, 13-15. In doing so, Balwani both overstates matters and ignores that "Congress has expressly authorized the SEC to share information with the Department of Justice to facilitate the investigation and prosecution of crimes." *See United States v. Stringer*, 535 F.3d 929, 939 (9th Cir. 2008). He notes that the SEC and DOJ interviewed some (not all) witnesses together—ignoring the fact that this approach is most convenient for the witnesses common to the agencies' overlapping but independent investigations. He notes that the SEC shared documents with DOJ, but those can easily be obtained by subpoena, and again it is convenient for witnesses. Notably, the SEC initiated its civil investigation before the DOJ opened its separate matter, the SEC brought separate civil charges months before the Grand Jury returned an indictment, and the criminal charges are broader and involve crimes outside of the civil authority of the SEC. The no-stay-in-SEC/DOJ-parallel-proceedings rule Balwani seeks would chill cooperation Congress has expressly encouraged.

### 2. The Burden on the Defendant

Balwani identifies three forms of alleged prejudice to him if a stay is granted. None withstands scrutiny.

First, Balwani suggests he has had "no . . . opportunity" to investigate events at Theranos. But Balwani had full access to broad civil discovery in the *PFM* litigation (he does not argue otherwise). He

U.S.' REPLY RE MOT. TO INTERVENE & STAY

had the same broad access in *Colman* (he does not argue otherwise).  He has already deposed many he has listed as relevant witnesses in this case.  The idea that Balwani has not had an opportunity to gather evidence is just wrong.

Second, Balwani argues that his "life has been effectively put on hold for more than three years during the government's" investigation.  ECF No. 77 at 18.  To the extent Balwani's life is on hold, it is because of his conduct, not the government's effort to figure out and prove what happened.  More importantly, Balwani previously conceded – and does not dispute in his opposition – that because the criminal case is broader and the consequences are greater, until the criminal case is resolved there is no meaningful prejudice to Balwani's ability to "clear" his name in the SEC case.  As the government has explained, it is likely that a stay of the SEC matter would speed resolution of the criminal case, mitigating the inconvenience that Balwani claims.

Finally, Balwani repeatedly claims he "has undergone enormous effort and expense preparing for depositions."  ECF No. 77 at 17.  He provides no specificity to this.  Whatever expense he incurred in the five depositions that have occurred, he has the benefit of the resulting testimony.  Whatever expenses he has incurred for other witnesses will bear any fruit when they testify in the criminal trial or in the SEC case after.  Balwani goes on to argue that "[h]ad the government promptly sought and obtained a stay, or if the government as a whole had decided not to bring a civil case as well as a criminal case, much of this work would never have been done.  As a result, Mr. Balwani's ability to fight the criminal charges has diminished."  ECF No. 77 at 10.  This argument lacks merit.  If the SEC matter impinged on Balwani's ability to fight against the criminal charges, *Balwani* could have (and would have) sought a stay on day one.  Instead, of the 177 witnesses identified by Balwani and the SEC as relevant to the civil case, he has elected to depose only five, who happen to be referenced in the superseding indictment.  Balwani's argument and actions demonstrate that he enjoys the access civil discovery affords him, not that he will be prejudiced if a stay is granted.

### 3.    The Efficient Use of Judicial Resources

In its motion, the government explained how the criminal trial likely will narrow or resolve certain issues in the SEC civil case, and thereby promote the efficient use of judicial resources.  Balwani grudgingly concedes "this could potentially occur."  ECF No. 77 at 19:19.  He goes on to assert that the

opposite is equally possible, but he fails to identify a single case where an SEC matter failed to resolve expeditiously after a conviction or acquittal in a parallel criminal case.  The government submits such an expeditious resolution is particularly likely here, because the SEC's remedies are limited to an injunction, a penalty, and an officer-and-director bar.

Balwani's citations to non-binding district court decisions are distinguishable.  In *United States v. Private Sanitation Indus. Ass'n of Nassau/Suffolk, Inc.*, 811 F. Supp. 802 (E.D.N.Y 1992), the court denied a pre-indictment stay of a civil RICO case.  The court observed: "Pre-indictment requests for a stay of civil proceedings are generally denied." *Id.* at 805.  That makes sense because neither the Court nor the parties can assess or influence when the stay will end if there is no pending criminal case.  Here, of course, there is a pending criminal case.  *See also Sanrio, Inc. v. Ronnie Home Textile Inc.*, 2015 WL 1062035, at *4 (C.D. Cal. Mar. 10, 2015) (denying request for pre-indictment stay).  *In re CFS-Related Sec. Fraud Litig.*, 256 F. Supp. 2d 1227, 1241-42 (N.D. Okla. 2003) involved a multi-defendant civil securities fraud case where only one defendant had been charged criminally.  Balwani's remaining cases involve civil plaintiffs who opposed a stay.

### 4.    The Interest of Non-Parties

The defendant claims "third parties have no interest in a stay."  ECF No. 77 at 20.  This claim too does not withstand scrutiny.

The defendant notes that neither LabCorp nor Quest produced documents in response to the subpoenas to them, but that appears to be because "Balwani has not taken further action to enforce the subpoenas." ECF Nos. 77 at 11, 78 ¶ 10.  Balwani's decision not to enforce the subpoenas supports the government's point that those subpoenas sought irrelevant or marginally relevant information under FRCP 26, would unnecessarily burden third parties, and/or were tailored to gather information for the criminal case.

With respect to doctors and patients of Theranos, this Court has quashed Balwani's subpoena to Fountain Hills Women's Health and found that it was "overly broad, not proportional to the needs of the case, and not compliant with Fed. R. Civ. P. 45(d)(1), as it imposes undue burden and expense on [a] non-party." ECF No. 73.  The fact that Balwani has withdrawn a second subpoena to Southwest Contemporary Women's Care, P.C. suggests he recognizes that subpoena was similarly objectionable.

Balwani argues:  "There are multitudes of health care providers who used Theranos's laboratory services, but Mr. Balwani only issued subpoenas to two who claimed to have conducted comparative studies to assess the accuracy of Theranos's testing."  ECF No. 77 at 5.  This is difficult to accept because those two health care providers share another similarity:  they both were interviewed by the criminal authorities in the criminal investigation (not by the SEC).  It also raises the specter that Balwani will claim those multitudes are also fair game in the SEC case.

Balwani also argues "these witnesses . . . are fully capable of defending their own interests."  ECF No. 77 at 20.   This claim ignores the reality that many of these witnesses would likely find moving to quash a federal subpoena prohibitively expensive.  Indeed, one such witness has already resorted to contacting the Court directly, and without the benefit of counsel, to complain about an objectionable subpoena from Balwani.  More importantly, *Keating* directs the Court to look at what the interests of third parties are, not the resources and sophistication of those third parties.  And, if motions to quash were good replacements for stay motions, there would be no need for stay motions.  It cannot be the case that the system must rely on subpoena recipients (particularly unrepresented ones) to complain and file motions in order to prevent the type of civil discovery overreach that Balwani is engaging in here.  The better solution (and the one that explains the timing of government's filing) is to grant a stay to vindicate the interests of third parties.

There are many third parties with an interest in this case.  Some of have been deposed and/or interviewed on multiple occasions already.  Their interest weighs strongly in favor of having one, definitive proceeding to determine what happened.

### 5.      The Interest of the Public

With respect to the public interest in prompt resolution, Balwani selectively quotes from *Hymes v. Bliss*, 2018 WL 6079443, at \*5 (N.D. Cal. Nov. 21, 2018), a Section 1983 excessive use of force case where the Court stated in full:  "the public and the State of California have an interest in fair, open, and expeditious *civil* legal proceedings *involving public officers* as well. Indeed, because only two of the five defendants in this case are party to the state criminal proceedings, allowing both cases to proceed will best serve the interest of ensuring the accountability of all public officers involved." *Id.* (second emphasis added).  More importantly, accepting the obvious importance in fair and expeditious resolution

of civil cases, Balwani has conceded that the trial in the SEC case "will be scheduled after the criminal trial." ECF 67 at 9. In other words, there will be no resolution of the SEC case until the criminal case is resolved.

### 6.      Balwani's Fifth Amendment Rights

Finally, Balwani's claim that his Fifth Amendment rights cut against a stay is unavailing. Instead of looking forward at whether his right against self-incrimination will be implicated, he looks backward and blames DOJ for decisions he made. But the question is not whether Balwani has made statements in the past, it is whether his Fifth Amendment rights will be compromised if no stay is granted. *Keating*, 45 F.3d at 324-25.

Balwani notes that he gave sworn investigative testimony to the SEC *before* the SEC filed its complaint and *before* the Grand Jury returned an indictment. At the time, Balwani was represented by experienced criminal defense counsel who understood fully Balwani's ability to invoke the Fifth Amendment. Balwani points to no authority suggesting an individual's decision to provide sworn testimony in an investigation has any bearing on whether a court should stay a subsequent civil suit.

Balwani suggests further that the government should have moved for stay on day 12 following the indictment to stop his deposition in the *Colman* case from going forward. But he fails to explain how he suffered the slightest prejudice. There was none: Balwani invoked his Fifth Amendment rights during that deposition, the *Colman* case resolved, and no fact finder ever drew an adverse inference from the invocation.

Finally, Balwani emphasizes that he has provided (unsworn) initial disclosures, answered (a mere six) contention interrogatories, and produced approximately 12,000 documents, virtually all of which originally came from third-parties in the *Colman* case.[1] Balwani is tellingly silent about his

---

[1]      The government understands the six interrogatories were: (1) "Identify each expert, advisor, and consultant on whom you assert you relied in 'good faith'"; (2) "Identify each investor, potential investor, and each business partner who you allege had 'independent knowledge of facts relating to the topics alleged in the Complaint'"; (3) "Identify each investor or potential investor . . . [who was] 'invited' by you 'to assist Theranos with developing the financial modeling tool'"; (4) "Identify each investor, potential investor or business partner who you contend you provided, either directly or indirectly, with 'a financial modeling tool'"; (5) "Identify by name, job title, and area of management, each person who you contend was a senior managing executive employed by Theranos at any point from 2009 when you joined Theranos until your departure from Theranos in May 2016"; and (6) "[i]dentify all . . . persons" who knew "'that Theranos would process some samples on non-Theranos technology, such as a commercial analyzers.'" Balwani makes no effort to explain how his answers will prejudice him. With

U.S.' REPLY RE MOT. TO INTERVENE & STAY

intentions regarding his own deposition testimony.  It is reasonable to conclude that Balwani will attempt to defer his deposition until as long as possible only to invoke in the end, leaving the SEC without admissible testimony from either Holmes or Balwani.

For these reasons, this factor weighs in favor of a stay.

## III.   THE GOVERNMENT'S MOTION IS TIMELY

Unable to demonstrate that the *Keating* factors weigh against a stay, Balwani attacks the timeliness of the government's motion and its ability to even be heard.  ECF No. 77 at 1, 6-13.  He cites *no* cases where the government was denied intervention to seek a stay, instead relying on a hodgepodge of civil cases where parties sought intervention for much broader purposes.  *See, e.g.*, *Butler, Fitzgerald & Potter v. Sequa Corp.*, 250 F.3d 171, 182 (2d Cir. 2001) (denying intervention to a discharged law firm that had represented a plaintiff in a breach of contract action); *R & G Mortg. Corp. v. Fed. Home Loan Mortg. Corp.*, 584 F.3d 1, 8-9 (1st Cir. 2009) (denying intervention by bank performing loan servicing after settlement of the underlying action); *In re Commonwealth Oil Ref. Co.*, 461 F. Supp. 284, 285 (W.D. Tex. 1978) (denying motion by SEC to intervene in a bankruptcy); *Kukui Gardens Corp. v. Holco Cap. Group, Inc.*, 261 F.R.D. 523, 528-29 (D. Haw. 2009) (denying intervention by purported assignee of beneficial interest in loan certificate).

"Timeliness is a flexible concept; its determination is left to the district court's discretion." *United States v. Alisal Water Corp.*, 370 F.3d 915, 921 (9th Cir. 2004) (denying intervention to a judgment creditor who feared harm from the judicially ordered sale of property).  Here the government moved for intervention promptly after learning the defendant was targeting patients and physicians outside the scope of civil discovery.  Intervention is entirely appropriate.

respect to Balwani's document production, the government understands that, of the 12,000 pages approximately 11,872 are transcripts and exhibits in *Colman*.

U.S.' REPLY RE MOT. TO INTERVENE & STAY
CV-18-1603 EJD                                                   7

## IV.    CONCLUSION

For these reasons, the Court should grant the government's motion to intervene and stay these proceedings.

DATED:  May 10, 2019                                    Respectfully submitted,

ADAM A. REEVES
Attorney for the United States,
Acting Under Authority Conferred By
28 U.S.C. § 515

/s/

JEFF SCHENK
JOHN C. BOSTIC
ROBERT S. LEACH
Assistant United States Attorneys

U.S.' REPLY RE MOT. TO INTERVENE & STAY
CV-18-1603 EJD                                    8