October 30, 2019

**Via ECF**
Hon. Nathanael M. Cousins
United States Magistrate Judge
U.S. District Court for the Northern District of California
San Jose Courthouse, Courtroom 5 - 4th Floor
280 South 1st Street
San Jose, CA 95113

Re:   *SEC v. Balwani*, Case No. 5:18-cv-01603-EJD, Joint Letter Regarding Discovery Dispute: Deposition Subpoena to Dr. Jeffrey Shuren

Judge Cousins:

Pursuant to the Court's Civil Standing Order, non-party the U.S. Food and Drug Administration ("FDA"), on behalf of Director Jeffrey Shuren, M.D., J.D., and Defendant present this joint statement regarding an unresolved dispute about the propriety of Defendant Ramesh "Sunny" Balwani's ("Defendant") July 8, 2019 deposition subpoena directed to the Director of the FDA's Center for Devices and Radiological Health ("CDRH"), Dr. Jeffrey Shuren.

## I.   NON-PARTY FDA'S POSITION

For the reasons below, FDA respectfully requests an order protecting Dr. Shuren from providing deposition testimony in this matter.

The SEC's Complaint alleges that, in late 2013 through 2015, Defendant misrepresented to Theranos, Inc.'s ("Theranos") investors and business partners that FDA approval was unnecessary for Theranos' blood analyzers and tests because they were laboratory developed tests ("LDTs") over which FDA historically exercised enforcement discretion, although FDA representatives had told Defendant that clearance or approval of such products would be necessary.  *See* Complaint ¶¶ 73-75 (Dkt. #1).  Defendant has admitted that he told investors and business partners that FDA approval was not necessary and that FDA representatives told him otherwise.  *See* Answer ¶¶ 73-75 (Dkt. #12).

The agency has expended significant resources in connection with document and deposition subpoenas by Defendant in this case. FDA has collected documents from over 65 custodians (with additional custodians forthcoming per Defendant's recent request) and thus far reviewed and produced over 75,000 pages responsive to Defendant's broad subpoena *duces tecum*.  In addition to the document subpoena, Defendant has served deposition subpoenas on five current and three former FDA employees.  For the reasons discussed below, FDA opposes the deposition of current agency employee Dr. Jeffrey Shuren.

**The Court Should Forbid, Limit, or Delay Dr. Shuren's Deposition under Rule 26(c)**

Federal Rule of Civil Procedure 26(c) permits protective orders forbidding or limiting the scope of discovery in order to prevent undue burden. District courts have "ample discretion . . . to quash or modify subpoenas causing 'undue burden.'" *Exxon Shipping Co. v. U.S. Dep't of Interior*, 34 F.3d 774, 779 (9th Cir. 1994) (citing Fed. R. Civ. P. 26(c) and 45(c)(3)). "The deposition of a high-level official or executive, often referred to as an 'apex' deposition, may be precluded by the Court under Rule 26(c) where the discovery sought 'can be obtained from some other source that is more convenient, less burdensome, or less expensive.'" *Estate of Livingston v. Cty. of Kern*, 320 F.R.D. 520, 525 (E.D. Cal. 2017) (*quoting Apple Inc. v. Samsung Electronics Co., Ltd.*, 282 F.R.D. 259, 263 (N.D. Cal. 2012)). Upon a showing that an official "is sufficiently 'high-ranking' to invoke the deposition privilege . . . the Court should then consider: (1) whether the deponent has unique, first-hand, non-repetitive knowledge of the facts at issue in the case and (2) whether the party seeking the deposition has exhausted other less intrusive discovery methods." *Id.* (internal quotations omitted). *See also In re NCAA Student-Athlete Name & Likeness Litigation*, 2012 WL 174834, at *2 (N.D. Cal. Jan. 20, 2012) ("[C]ourts are sometimes willing to protect high level corporate officers from depositions when the officer has no first-hand knowledge of the facts of the case or where the officer's testimony would be repetitive." (internal quotation omitted)).

A deposition of Dr. Shuren in this matter will cause FDA undue burden because, as CDRH's Director, he is one of the highest-level FDA managers and he is responsible for overseeing FDA's entire medical device and radiological health regulatory program. Dr. Shuren is required to make significant, time-sensitive decisions regarding this regulatory program daily. Specifically, Dr. Shuren's work includes matters of significant public health importance including, for example, addressing several medical device recalls, working with congressional staff on legislation to be introduced this year, addressing significant cybersecurity vulnerabilities in select operating systems used in a variety of devices, preparing for and holding two advisory committee meetings on addressing safety concerns pertaining to metals used in medical devices and alternatives to ethylene oxide sterilization over fears of toxic release into local communities, and pursuing additional steps to address the risk of developing a rare cancer from breast implants. It will be an extreme hardship to FDA if Dr. Shuren is required to put aside these critically important duties at FDA to prepare for and provide testimony in this matter.

"[W]hen a high-ranking official is removed from the daily subjects of the litigation, [and] has no unique personal knowledge of the facts at issue, a deposition of the official is improper." *Estate of Livingston*, 320 F.R.D. at 527. As demonstrated by the documents FDA has produced to Defendant, Dr. Shuren's involvement in Theranos-related matters during the relevant time period was minimal.[1] What Dr. Shuren knows about such matters is hearsay. He was made aware of certain information regarding Theranos, as appropriate to his upper management role, until he recused himself from Theranos-related matters in late 2015. The other current and

---

[1] Despite Defendant's suggestion that Dr. Shuren's communications regarding Theranos were voluminous, the majority of his responsive emails were non-substantive. They include 1,254 pages of publicly-available media reports, blast media emails, and emails forwarding media reports to Dr. Shuren with or without comment; 166 pages of internal agency reports; 63 pages relating to the administration of Freedom of Information Act requests for Theranos information; and 4,443 pages of daily situational reports relating to FDA's 2014 Ebola Response Coordination containing a single item regarding Theranos repeated daily over 108 days, typically without change.

former FDA employees on whom Defendant has already served deposition subpoenas were collectively aware of the same information available to Dr. Shuren, were more directly involved than Dr. Shuren, and, in fact, were the sources of nearly all of Dr. Shuren's information regarding Theranos.  Any matter of potential relevance about which Dr. Shuren might testify can therefore be adequately addressed using evidence from other sources available to Defendant, satisfying the final factor in the apex deposition privilege inquiry.  *See Apple*, 282 F.R.D. at 263-264.  Dr. Shuren's testimony would be unreasonably cumulative and would impose undue hardship on FDA and the public interest served by FDA's work.

In addition, the law prohibits FDA employees, including Dr. Shuren, from disclosing third parties' trade secret and confidential commercial information ("TS" and "CCI") absent a waiver from the affected parties or a court order.  *See* 21 U.S.C. §§ 331(j) and 360j(c), 18 U.S.C. § 1905; *see also* 21 C.F.R. § 20.61 (prohibiting public release of TS and CCI) and 20.83(a) (permitting disclosure of records not available for public disclosure under agency regulations if disclosed in compliance with a court order).  Further, FDA has not waived its privilege for deliberative internal communications that are not about Theranos.  *See* Dkt. # 97 at 3; *see also* 21 C.F.R. § 20.62 (protecting communications within the executive branch of the federal government).  Defendant has not identified the areas of inquiry on which it seeks Dr. Shuren's testimony, but Defendant concedes that Dr. Shuren is not a percipient witness and is aware that the other FDA deponents were the ones directly involved in Theranos-related matters.

FDA respectfully requests that this Court either enter a protective order forbidding Dr. Shuren's deposition entirely or requiring Defendant to depose the other FDA employees before deposing Dr. Shuren, and allowing Dr. Shuren's deposition only upon a showing that the other FDA depositions have been unsatisfactory in eliciting relevant information Dr. Shuren is likely to have.  Further, should Dr. Shuren be deposed, FDA respectfully requests a protective order limiting questioning to Dr. Shuren's personal knowledge of facts specific to Theranos' devices and/or interactions with FDA; forbidding inquiry into any of FDA's internal deliberations unrelated to Theranos, including deliberations regarding FDA's regulation of LDTs (sometimes referred to as in vitro clinical tests or IVCTs); and forbidding any inquiry that would require Dr. Shuren to reveal the trade secrets or other confidential research, development, or commercial information of any company other than Theranos.

## II.     DEFENDANT BALWANI'S POSITION

FDA's motion for a protective order to preclude or limit the scope of the deposition of an FDA official should be denied because (1) there are no "special protections" for senior officials of organizations and (2) FDA's generalized assertions of burden are misplaced in the context of this case.  Moreover, discovery recently produced by FDA after a more than one-year delay shows that Dr. Shuren was personally and substantially involved in issues at the heart of this case.[2]  Dr. Shuren had hands-on involvement and engaged in daily decision-making in relation to this case.   FDA's motion should be denied.

---

[2] FDA's effort to characterize Dr. Shuren's involvement as insignificant based on its own incomplete document production misses the point.  Mr. Balwani identified numerous email communications within the FDA's late

October 30, 2019
Page 4


The FDA has a very heavy burden here under Rule 26(c)(1). *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975) (quoting 4 J. Moore, Federal Practice ¶ 26.69 at pp. 26-494—26-495 (2d ed. 1974). This "heavy burden" will only be satisfied by a showing that "harm or prejudice *will* result from the discovery." *Apple Inc. v. Samsung Elec. Co., Ltd*, 282 F.R.D. 259, 262-63 (N.D. Cal. April 4, 2012) (quotation and citation omitted) (emphasis added).

Rule 26(c) provides no special protections for high-level corporate officials. *See* Fed. R. Civ. P. 26(c). Under the "apex doctrine," relied upon by FDA to attempt to preclude the deposition of Dr. Shuren, courts consider two factors when considering whether a high-level corporate official may be deposed, that is (1) whether the witness has first-hand knowledge of facts at issue and (2) whether the proponent of the deposition has exhausted other less intrusive methods. *See Apple*, 282 F.R.D. at 263. In the Ninth Circuit, the proponent of the protective order must make the required showing. *See Phillips v. GMC*, 307 F.3d 1206, 1210–1211 (9th Cir. 2002) ("the party seeking protection bears the burden of showing specific prejudice or harm will result if no protective order is granted."); *Blankenship*, 519 F.2d at 429. It is "very unusual 'for a court to prohibit the taking of a deposition altogether absent extraordinary circumstances.'" *Apple*, 282 F.R.D. at 263 (citation omitted). It is reversible error to rely on the "apex doctrine to grant [a] protective order" without considering what Rule 26(c) requires: a showing of "annoyance, embarrassment, oppression, or undue burden or expense." *Salter v. Upjohn Co.*, 593 F.2d 649, 651 (5th Cir.1979) ("It is very unusual for a court to prohibit the taking of a deposition altogether and absent extraordinary circumstances, such an order would likely be in error.")

Apparently desperate to avoid a deposition, the FDA initially claimed in a July 15, 2019 email from its counsel at DOJ that "Mr. Shuren was and is recused from any matters relating to Theranos. Accordingly, he has had no involvement in any FDA activity relating to Theranos."[3] This was false; as the FDA had to admit after Mr. Balwani raised questions that Dr. Shuren was ***not recused*** from matters relating to Theranos for almost all of the relevant time period. The FDA now claims instead that Dr. Shuren is too busy and important.

FDA's assertion that Dr. Shuren is redundant is also inaccurate and misleading. Dr. Shuren was the direct supervisor of Alberto Gutierrez, then Director of FDA's Office of In Vitro Diagnostics and Radiological Health, who is at the center of all issues relating to the SEC's allegations in the complaint regarding representations about FDA's regulation of Theranos. Dr. Shuren made high-level decisions relating to the FDA's decision to inspect Theranos, and the FDA's decision to grant 510(k) clearance and a CLIA waiver for the Theranos's HSV test. Gutierrez and Dr. Shuren also oversaw the August-September 2015 surprise inspection that led to adverse action by FDA against Theranos. In fact, Gutierrez recounted to investigators various requests by Dr. Shuren relating to Theranos, including requests characterized by Gutierrez as "unusual." Dr. Shuren's communications with Gutierrez regarding Theranos are ripe for

---

production demonstrating Dr. Shuren's involvement in decisions regarding Theranos, including the decision and planning for the August 2015 inspection by FDA, which example was shared with FDA in relation to this motion.

[3] July 15, 2015 email from AUSA C. Cormier.

October 30, 2019
Page 5

discovery given the centrality of FDA's regulatory efforts to this case.  *See* SEC Complaint ¶¶ 3, 26, 73-76.

Further, the still incomplete document production by FDA in this case, reflects Dr. Shuren's regular communications about Theranos.[4]  The documents show that Dr. Shuren communicated directly with Theranos's outside counsel in July 2015 about Theranos's regulatory issues, edited work product created by FDA relating to public statements made by Theranos, strategized with his team about FDA's response to Theranos's objections to the improper FDA inspection, communicated with his team about the FDA's decision to approve the HSV test, and in 2016 Dr. Shuren discussed FDA's coordination with CMS regarding actions taken against Theranos.  Dr. Shuren was also closely involved in pushing FDA's political agenda relating to Theranos and regulation of Laboratory Developed Tests ("LDTs").  For instance, Dr. Shuren instructed FDA employees to share specific articles about Theranos and regulatory policy with Congress and strategized with the FDA's Office of Legislation regarding a response to congressional questions relating to Theranos and LDT regulation.

FDA's assertion that other witnesses were "aware" of the same information relating to Theranos as Dr. Shuren is misplaced in a case as large and complex as this.  Dr. Shuren was clearly a driver and decision-maker for regulatory issues relating to Theranos, including the crucial issue of regulation of LDTs.  The reasoning behind these decisions is not available from subordinates at FDA.[5]  Dr. Shuren's knowledge of FDA policies relating to LDTs, their applicability to Theranos' technology, and his communications with Gutierrez about FDA's decisions relating to Theranos are not just relevant and permissible areas of inquiry under the discovery rules, but critical to the preparation of Mr. Balwani's defense.  *See In re NCAA Student-Athlete Name & Likeness Litigation*, 2012 WL 174834, at *2 (N.D. Cal. Jan. 20, 2012) (granting motion to compel the deposition of the NCAA's President because the witness had knowledge of NCAA policies relevant to the case).

Lastly, FDA's effort to limit the scope of any questioning based upon FDA employee's obligations relating to third party trade secret and confidential commercial information, or certain privileges of FDA that have not been waived, is premature.  Such issues are not unique and are typically addressed through objections and instructions from counsel during the inquiry.  FDA presents no compelling reason to deviate from these established procedures.

For all of these reasons, FDA's motion for a protective order to preclude or narrow the scope of the deposition of Dr. Shuren should be denied.

---

[4] Pursuant to the Court's Standing Order, Mr. Balwani has not attached exhibits but will make documents relevant to this Motion available to the Court upon request.

[5] The "apex" deposition authorities relied upon by FDA are inapposite.  The Sheriff in *Estate of Livingston* had no contemporaneous awareness of, or involvement in, the actions and decisions that led to the death of the arrested citizen at issue and only became aware of the incident upon plaintiff's submission of a tort claim. 320 F.R.D. at 528.

October 30, 2019
Page 6

| | |
|---|---|
| ORRICK HERRINGTON & SUTCLIFFE, LLP | DAVID L. ANDERSON<br>United States Attorney |
| */s/ Stephen A. Cazares*<br>STEPHEN A. CAZARES<br>Attorneys for Defendant | */s/ Alison E. Daw*[6]<br>ALISON E. DAW<br>Assistant United States Attorney<br>Attorneys for the U.S. Food & Drug Administration on behalf of non-party witness Dr. Jeffrey Shuren |

---

[6] I, Alison E. Daw, hereby attest that I have been authorized to submit the electronic signatures indicated by a "conformed" signature (/s/) within this e-filed document.