November 1, 2019

The Honorable Nathaniel Cousins
United States Magistrate Judge
U.S. District Court for the Northern District of California
280 South 1st Street, Courtroom 7
San Jose, CA 95113

    Re:  *SEC v. Balwani*, Case No. 5:18-cv-01603-EJD (NC) – Discovery Dispute

Dear Judge Cousins:

**Introduction**

    Plaintiff Securities and Exchange Commission ("SEC") and Defendant Sunny Balwani seek the Court's intervention for three issues regarding the production of documents by Defendant. As mandated by the Court's Standing Order, the parties set forth below the issues, the parties' positions, and their proposed compromises on each issue. The parties have met and conferred by telephone and the below are the remaining issues, after several other issues were resolved. The Court set October 25, 2019 as the Discovery Cut-off in this case. ECF No. 75.

    **SEC's Description of Issue and SEC's Position**: On July 19, 2019, the SEC served its Third Request for Production of Documents on Defendant ("SEC Requests"), and on August 19, 2019, Defendant served Objections and Responses ("Defendant's Responses") in which he agreed to produce certain categories, while objecting and inviting a "meet and confer" in response to others. Having met and conferred telephonically, with follow-up, Requests Nos. 4, 5, 11 remain at issue.

    SEC Requests Nos. 4 and 5: The SEC sought in Request No. 4, documents regarding Defendant's net worth, and in Request No. 5, documents reflecting Defendant's investment portfolio for the period 2015 through the present. Defendant objected, claiming the information is not relevant. During the meet and confer, the SEC explained the relevance of Defendant's net worth and investment portfolio decisions to the SEC's claims in this case.

    First, the SEC focused on the relevance of the request to our claim for a civil monetary penalty. In the very recent Second Circuit decision in *SEC v. Rajaratnam*, 918 F.3d 36 (2d Cir. 2019), the defendant appealed a $92.8 million civil penalty, which was the maximum penalty available under the law. The defendant had already been convicted criminally for similar conduct, but the district court nevertheless "concluded that 'this case cries out for the kind of civil penalty that will deprive [Rajaratnam] of a material part of his fortune' given the 'huge and brazen nature of Rajaratnam's insider trading scheme, which, even by his own estimates, netted tens of millions of dollars and continued for years.'" *Id*. at 41. The Second Circuit upheld the consideration of this factor after considering several other circuits that had approved of consideration of wealth in determining civil penalties. "We thus have no hesitation in concluding that, in calculating the size of a penalty necessary to deter misconduct, the extent of a defendant's wealth is a relevant consideration." *Id*. at 45.

    As a consequence of the defendant's invocation of his Fifth Amendment privilege, the SEC also has to anticipate various defenses that Balwani may offer. One of those is a frequently claimed

*inability* to pay a penalty that would otherwise be reasonable, which courts have considered when raised by the defense. *See, e.g., SEC v. Jasper*, 883 F. Supp. 2d 915, 931-32 (N.D. Cal. 2010) (reviewing cases).

Indeed, Defendant's current suggestion to provide the information at some later date, only after his liability has been established, concedes the relevance of the information. That suggestion is neither appropriate nor enforceable, as discovery in this case is not "phased" nor appropriately left open – the fact discovery cut-off was October 25, 2019.  ECF No. 75. *See* Local Rule 37-3 (motions to compel must be filed within one week of cut-off). The suggestion would also preclude use by the SEC of the information in a motion for summary judgment, which the SEC could file now. Defendant's example, cited below, of another case in which he claims there was "phased" discovery is wholly inapt: in that case the parties had agreed to a partial settlement, and judgment as to defendant's liability; the quoted language was used to ensure that discovery, if necessary, could still be pursued despite the judgment.

Second, the information about Defendant's investment portfolio helps reveal the materiality of information, both to him and to investors generally. Materiality of information is an element of the SEC's fraud claims against him, and Defendant's credibility is of course at issue.  *See, e.g., SEC v. Reyes*, 491 F. Supp. 2d 906, 915 (N.D. Cal. 2007) (information that is important to company's own executives is likely to be material). For instance, during discovery in this case, the defense has frequently sought from investor witnesses information about their investments other than in Theranos, suggesting that those same factors reveal how they viewed information about Theranos. The SEC has the right to ask the same questions of Defendant:  does his own investment portfolio reflect extensive investments made without current or reliable information?  Or does he expect that disclosures to him as an investor will be verifiable and reliable?  Defendant's suggestion to produce these concededly relevant materials only at some later point disregards their importance to both liability and remedies.

SEC Request No. 11:  The SEC sought documents reflecting communications between Defendant and his former Theranos associates that occurred after he left Theranos in 2016. Defendant objected, claiming the information was not relevant and the request is too broad. The SEC agreed to limit the Theranos-related persons to those identified in the parties' respective disclosures and interrogatory responses. The SEC further explained that such communications with witnesses, or potential witnesses, were highly relevant and discoverable. Defendant's position remains unclear.

**SEC Proposed Compromise:** The SEC proposes that Defendant identify if he has practical issues are presenting any obstacles in producing the requested information. To date, discovery in this case has been dominated by Defendant's very broad subpoenas served on numerous third parties, as well as his aggressive deposition schedule, pushed to the end of the discovery period. The SEC has been asked repeatedly to accommodate extensions of the schedule, and has even recently agreed to the latest, limited extension of certain deposition outside of the cut-off. Accordingly, we would agree to permit defendant up to 30 days to gather and produce the requested documents in response to Requests Nos. 4 and 5 (net worth and portfolio). Further, if Defendant identifies any obstacles to producing the documents requested by No. 11 (Theranos-related witness communications), the SEC will work to further define the request to ameliorate the burden, if any.

**Mr. Balwani's Response:**  Mr. Balwani objects to the SEC's requests for the following reasons and proposes the following compromise resolutions.

SEC Request No. 4:  The SEC seeks documents related to Mr. Balwani's present net worth. Such documents are irrelevant to the SEC's claims and Mr. Balwani's defenses.  Fed. R. Civ. P.

26(b)(1). The SEC does not argue otherwise. Instead, the SEC concedes that information about Mr. Balwani's net worth will become relevant only in the event of an adverse jury verdict or summary judgment order against Mr. Balwani, when the Court would consider a civil monetary penalty.[1] Despite the conditional relevance of this information, the SEC claims that it must obtain this material now because, it argues, discovery cannot be "phased nor appropriately left open" until the monetary penalty phase of the case.

This is incorrect. The SEC has stipulated to precisely this type of "phased" discovery process when it suits its interest, and the Court has incorporated such stipulations into its final consent judgments as to liability. *See, e.g., SEC v. Cope, et al.*, 14 cv 7575 (DLC) (S.D.N.Y. Oct. 13, 2015), Docket Item 177 (Consent as to I. de Maison, ¶ 4) (SEC stipulates that, following entry of the consent and judgment against the defendant, "in connection with the Commission's motion for disgorgement and/or civil penalties, the parties may take discovery, including discovery from appropriate non-parties."), Docket Item 176 (Final Judgment as to I. de Maison, § VIII) (Court orders that it will "determine the amounts of the disgorgement and civil penalty upon motion of the Commission" and that "[i]n connection with the Commission's motion [], the parties may take discovery, including discovery from appropriate non-parties.").[2] There is no reason that the SEC cannot make such an agreement here. Accordingly, Request No. 4 regarding Mr. Balwani's net worth properly should be deferred to a later stage, in the event the case proceeds to that point.

Moreover, if the case were to proceed to the point where the Court considers imposition of a civil monetary penalty, the Court would need to review information about Mr. Balwani's net worth *at the time of that future proceeding*, *not his net worth at the present moment*. And finally, in light of Mr. Balwani's willingness to provide net worth information in the event the case reaches a civil monetary penalties phase when there may be some relevance, it is fundamentally unfair to require a defendant who is also a defendant in a criminal case to advise his governmental adversaries about his resources and financial tolerance for litigation. This is particularly prejudicial because the SEC's practice is to send all information they obtain in discovery to the DOJ. Mr. Balwani's proposed compromise for Request No. 4 is fair to both sides.

SEC Request No. 5: The SEC seeks documents reflecting Mr. Balwani's investment portfolio for the period 2015 through the present. It claims that such information is relevant because (1) it bears on Mr. Balwani's ability to pay a monetary penalty, and (2) it "helps reveal the materiality of information to him that is also material to [Theranos] investors generally." On April 26, 2019, in response to SEC Second Set of Requests for Production of Documents, Request No. 4, Mr. Balwani produced documents covering 10 years reflecting investments in private companies. Accordingly, the only documents at issue in Request No. 5 pertain to any investments Mr. Balwani may have in publicly traded companies.

---

[1] The potential monetary remedies in this case do not include a claim for disgorgement. Mr. Balwani invested and lost millions of dollars of his own money in Theranos and took only a modest salary.

[2] In the cited matter, the SEC agreed to separate remedies-phase discovery in connection with consents entered into with eleven defendants, and the Court so-ordered such discovery in each of its final judgments. *See id.,* Docket Items 172 and Ex. 1 (Consent and Final Judgment as to defendant T. Malone), Docket Items 178 and Ex. 1 (W. Wilshinsky), Docket Items 183 and 184 (J. Tagliaferro), Docket Items 187 and 188 (G. Goldstein), Docket Items 195 and 196 (J. Cope and Worldbridge Partners), Docket Items 200 and 201 (K. Kuhn and Small Cap Resource Group), Docket Items 205 and 206 (A. de Maison), Docket Items 209 and 210 (L. Mastromatteo and Traverse Intl.), Docket Items 214 and 215 (K. Jones Barbera), and Docket Items 214 and 215 (W. Scholander).

Mr. Balwani's public company investment decisions do not even arguably reveal anything about the materiality of certain information to Theranos investors. Mr. Balwani's decisions to buy or sell shares of public company stock or corporate bonds, for example, have no bearing on the issues or data points that Theranos investors may have relied on in deciding to invest in Theranos. There is no logical connection between these wholly disparate issues, and the SEC does not even seek to establish one. Moreover, the SEC's stated "materiality" reason for Request No. 5 cannot be correct, because Request No. 5 seeks investment portfolio information only for the period 2015 to present. Nearly all of the Theranos investors invested prior to 2015, so Mr. Balwani's investment portfolio from 2015 to the present would show nothing about his knowledge prior to 2015. As a result, the SEC fails to meet its burden to show relevance of this specific category of documents – Mr. Balwani's investments in public companies during 2015 and after – to the claims or defenses in this litigation.

Further, to the extent that these documents bear on Mr. Balwani's ability to pay a civil monetary penalty, the SEC's demand for information related to Mr. Balwani's public company investments is premature. As with the materials sought by Request No. 4, documents regarding Mr. Balwani's public company investments, along with any other assets, will not be pertinent to the litigation until the Court considers imposition of a civil monetary penalty, provided that the litigation proceeds to that point. As with Request No. 4, the SEC's protestations that discovery of these materials cannot be postponed to a later phase, if it arises, are unavailing and contrary to its position in other cases. As noted above, counsel for Mr. Balwani agreed that they would not assert the October 25, 2019 discovery deadline as a reason to withhold net worth information in connection with any future monetary penalty phase of this case.

SEC Request No. 11: The SEC seeks documents reflecting communications between Mr. Balwani and his former Theranos associates (those identified in the parties' respective disclosures and interrogatory responses) that occurred after he left Theranos in 2016. The documents sought by the SEC contain at least two categories of communications – (1) communications referencing Theranos; and (2) communications that are wholly personal and have no relevance to Theranos. The SEC has made no showing, nor could it, that the second category of communications (purely personal) are relevant to the claims or defenses in this litigation. Accordingly, that category is beyond the scope of a proper document request under Fed. R. Civ. P. 26(b)(1).

**Mr. Balwani's Proposed Compromises:**

SEC Request No. 4: Mr. Balwani will stipulate that, if and when the case against him proceeds to a stage where the Court is considering a civil monetary penalty, he will produce information responsive to Request No. 4.

SEC Request No. 5: Mr. Balwani has already produced documents covering 10 years related to his private company investments. Mr. Balwani will stipulate that, if and when the case against him proceeds to a stage where the Court is considering a civil monetary penalty, he will produce information related to his public company investments in response to Request No. 5.

SEC Request No. 11: Mr. Balwani will produce communications between himself and his former Theranos associates that occurred after he left Theranos in 2016 (limited to the Theranos-related persons identified in the parties' respective disclosures and interrogatory responses), but will redact or withhold communications of a purely personal nature that have no relation to Theranos.

Respectfully submitted,

| | |
|---|---|
| /s/ Jeffrey B. Coopersmith | /s/ Susan F. LaMarca |
| Jeffrey B. Coopersmith | Marc D. Katz, katzma@sec.gov |
| Orrick, Herrington & Sutcliffe, LLP | Susan F. LaMarca, lamarcas@sec.gov |
| 701 Fifth Avenue, Suite 5600 | Andrew J. Hefty, heftya@sec.gov |
| Seattle, WA 98104 | Securities and Exchange Commission |
| (206) 839-4339 | 44 Montgomery Street, Suite 2800 |
| jcoopersmith@orrick.com | San Francisco, CA 94104 |
| | (415) 705-2500 |