<u>Via ECF</u>
Hon. Nathanael M. Cousins, U.S. Magistrate Judge
U.S. District Court for the Northern District of California
280 South 1st Street, Courtroom 7 - 4th Floor
San Jose, CA 95113

Re:   *SEC v. Balwani*, Case No. 18-cv-01603-EJD, <u>Joint Letter Regarding Discovery Dispute</u>

Hon. Judge Cousins:

Pursuant to the Court's Civil Standing Order, the parties present this joint statement regarding Mr. Balwani's outstanding subpoena to Partner Fund Management, L.P. ("PFM").

## I.    MR. BALWANI'S POSITION

This motion addresses PFM's failure to comply with Mr. Balwani's August 26, 2019 subpoena requesting documents relating to the relationship between Theranos and Walgreens ("Pharmacy A") alleged in the SEC's Complaint.  *See e.g.*, Complaint ¶¶ 20-35, 66-71.  PFM's attempt to claim that it should not have to produce responsive material or even engage in the reasonable compromise proposed by Mr. Balwani based on claims that PFM is a "victim" is completely inappropriate.  No finder of fact has ever validated PFM's claims, and if the recipient of a subpoena could avoid compliance simply by assuming allegations to be true, then no such recipient would every have to produce anything.

Rather than produce specific, responsive material relating to PFM's trading in the securities of a single company, Walgreens, PFM instead offered to dump more than 50,000 documents previously assembled in prior litigation on Mr. Balwani with no review by PFM for responsiveness and no recourse to Mr. Balwani in the event responsive material mysteriously evaded their prior search and custodian protocols.  To be clear, PFM's offer to make available this prior production was conditioned upon Mr. Balwani waiving any opportunity to seek intervention by the Court in the event responsive materials were not contained within the documents.  Mr. Balwani even offered to review the documents (which are in his counsel's possession but cannot be accessed under a protective order in the now settled case) at his own burden and expense to determine if any respond to the subpoena, but PFM rejected this as well.

PFM, an SEC registered investment adviser reportedly with approximately $7 billion under its management PFM, was introduced to Theranos in December 2013.  PFM and portfolio manager Brian Grossman ("Grossman") executed "Confidential Disclosure Agreement[s]" ("CDA") on January 10, 2014 that limited disclosure and use of confidential Theranos information shared with PFM while PFM considered investing in Theranos.  Among other confidential matters, Theranos' unannounced strategic partnership with then-publicly traded Safeway, Inc. was disclosed to Grossman and PFM.  Like Safeway, Walgreens, also a publicly traded company, had an agreement with Theranos to develop diagnostics testing service centers.  The Walgreens partnership was publicly announced in September 2013.  Confidential nonpublic information relating to Theranos' business with Walgreens was disclosed to PFM and Grossman under the CDA before PFM closed its $96 million in investments on February 6, 2014.  The SEC identified PFM and its portfolio managers in the SEC's Rule 26(a)(1) initial disclosures.

On May 23, 2019, Mr. Balwani took the deposition of Grosssman.  Grossman testified, among other things, that PFM had to be "very careful of the confidentiality agreements."  He stated that, due to the CDA, Theranos' business relationship with Safeway was not included in analysis of the Theranos investment provided to PFM clients.  Grossman testified that PFM's "internal compliance system actually restricted trading in Safeway [stock]."  When asked about investments in Walgreens stock, Grossman stated "I don't recall if we did at the time."  Grossman further added that "[o]ver the -- over the years, we've been both long and short Walgreens at different times.  So it depends on what period you are referring to.  And I would  -- I -- to answer the question accurately, I would need to review our own portfolio holdings for those dates."  This new information, that PFM instituted a trading blackout on Safeway stock due to the relationship with Theranos and the CDA, but may not have in the case of Walgreens stock, is what necessitated the instant subpoena.

Large institutional investment advisers like PFM must file quarterly reports with the SEC on Form 13F.  The reports reflect all publicly traded securities held at the end of each quarter.  PFM's Form 13F for the period ending December 31, 2013, after public announcement of the Walgreens relationship with Theranos, reflects that PFM funds held no Walgreens stock.  PFM's Form 13F for the period ending March 31, 2014 -- the period during which PFM signed the CDA, completed due diligence, and caused approximately $96 million in investments in Theranos -- reports $187 million in Walgreens stock held at PFM.  Thus, PFM's own SEC filing reflects that PFM directed the purchase of at least $187 million worth of Walgreens stock between January 1, 2014 and March 31, 2014.  Any purchases of Walgreens stock on or after execution of the January 10, 2014 CDAs, and PFM's receipt of confidential information regarding Theranos' business relationship and prospects with Walgreens, may have violated Grossman's and PFM's duty of confidentiality to Theranos and laws prohibiting the use of material nonpublic information in the purchase or sale of securities in breach of a duty of confidentiality owed to the source of the information.  *See United States v. Obus*, 693 F.3d 276 (2d Cir. 2012) (defining the misappropriation theory of insider trading).

PFM's filings with the SEC demonstrate that the records of PFM trading in Walgreens securities sought by the subpoena exist.  This is no fishing expedition.  In addition, registered investment advisers are required to maintain books and records of their trading activity and decision making.  PFM's cries of burden ring hollow in light of these requirements.  Moreover, producing trading records for a single issuer like Walgreens would likely involve no more burden than a simple inquiry of trading databases that PFM surely has.

Evidence that PFM may have used confidential information provided by Theranos about its business prospects with Walgreens in PFM's decision to purchase Walgreens stock is relevant, discoverable, and important to the preparation of Mr. Balwani's defense in this case because this information would tend to demonstrate PFM's (1) belief and confidence in the future prospects of Theranos' business relationship with Walgreens, including the timing and prospects for success of  the relationship, (2) interest in signing a CDA with Theranos and going through an extensive due diligence process to gain an advantage in connection with its contemporaneous and larger investment in Walgreens, and/or (3) willingness to utilize the confidential Theranos information about the positive future prospects of Theranos' business with Walgreens in breach of the terms of the Theranos CDA, all for financial gain.

A subpoenaed non-party is subject to the same scope of discovery as a party. *See Gonzales v. Google, Inc.*, 234 F.R.D. 674, 679-80 (N.D. Cal. 2006). A party may obtain discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). The burden of showing that a subpoena is unreasonable and oppressive is on the party to whom it is directed. *Am. Broad. Companies, Inc. v. Aereo, Inc.*, 2013 WL 1508894, at *4 (N.D. Cal. Apr. 10, 2013). In evaluating any such claims, "the court must be careful not to deprive a party of discovery that is reasonably necessary to afford a fair opportunity to defend and prepare the case." *See Gonzales*, 234 F.R.D. at 680.

Here, Mr. Balwani offered to substantially narrow his request for records relating to trading in Walgreens. In response, PFM made its "take it or leave it" offer of documents previously produced by PFM in PFM's own prior lawsuit against Mr. Balwani ("the Delaware documents"), with no review or assurance by PFM that the Delaware documents contain responsive information. Remarkably, over a month ago, Mr. Balwani offered to review the materials at his own burden and expense, but PFM refused. Likely the reason is that the Delaware documents would not respond to the subpoena. In any event, PFM's portfolio managers know exactly how and in what form they discussed and documented their almost $200 million investment in Walgreens in early 2014, and the Court should order production.

For all of the above reasons, Mr. Balwani respectfully requests that the Court issue an order requiring PFM to produce documents consistent with Mr. Balwani's offer of compromise as follows: (1) documents sufficient to identify all trading in Walgreens securities (WAG and WBA), including price and volume, for the period January 1, 2013 to December 31, 2015 [Items 1 & 2]; and (2) all documents, communications, and due diligence relating to investments in Walgreens securities for the same time period [Items 3, 4, and 5]. Mr. Balwani withdraws his request for documents under Item 6 in the subpoena.

## II.    PFM'S POSITION

At the outset, third-party PFM notes that it does not understand the dispute or why Mr. Balwani has sought to involve the Court. PFM has not refused to produce responsive documents. In fact, PFM fully complied with Mr. Balwani's initial November 2018 subpoena, and in satisfaction of this successive subpoena, PFM has offered to make available an even broader set of documents than Mr. Balwani requests in this motion. Worse still, Mr. Balwani's submission raises inflammatory allegations against PFM—without any factual basis.

PFM is an investment fund whose investors were criminally victimized by Mr. Balwani after he, together with Ms. Holmes, fraudulently induced PFM to invest approximately $96.1 million in Theranos in February 2014. In October 2016, PFM brought suit against Mr. Balwani, Ms. Holmes and Theranos in Delaware Chancery Court, alleging *inter alia* that the defendants fraudulently misrepresented the number and proportion of tests Theranos was able to perform using its finger stick technology; the extent to which Theranos tested blood samples using its own proprietary analyzers; and the nature of Theranos's relationships with pharmaceutical companies, the U.S. military, hospitals and physicians' offices. The parties settled in April 2017, after conducting and completing extensive document and deposition discovery.

3

In his submission, Mr. Balwani now seeks to compel production of: (A) documents sufficient to identify trading in Walgreens securities from January 1, 2013 to December 31, 2015; and (B) documents relating to investments in Walgreens securities for the same time period. But PFM already agreed to provide the requested trading records, and proposed to satisfy the second part of Mr. Balwani's request by making available PFM's entire production in the Delaware case, totaling approximately 52,000 documents and covering the wider period of January 1, 2013 to October 10, 2016. PFM's only condition was that the documents be subject to the protective order in this case, as appropriately designated.

Approximately 19,500 of those 52,000 documents are documents that were produced in the Delaware case as a result of merely hitting on the agreed-upon search terms "Walgreens" or "WAG" alone. The only exceptions were if the document was personal (e.g., an individual's Walgreens prescription), or if the hit was merely because the document was a ministerial spreadsheet or other recurring listing of all investments. In addition, nearly all of the remaining 32,500 documents that were produced in the Delaware case are documents that hit on one of the agreed-upon search terms designed to identify PFM's Theranos-related documents (e.g., "Theranos", "Balwani", "Holmes"). A substantial portion of those 32,500 documents hit on both a Theranos-related search term plus "Walgreens" or "WAG," though the precise number cannot be obtained until the production is un-archived.

PFM's proposal has the result, therefore, of providing Mr. Balwani not just with his requested documents relating to investments in Walgreens, but rather with the far broader category of documents relating to Walgreens in any way (which by definition subsumes Mr. Balwani's request, if such documents exist). PFM's proposal further provides Mr. Balwani with documents not relating to Walgreens at all but still related to PFM's investment in Theranos, and all for a longer time period. The Delaware production is not otherwise available to Mr. Balwani for use in the SEC litigation, absent PFM's consent, due to the operative Delaware protective order entered by that court. Despite all this, Mr. Balwani rejected PFM's proposal, without ever providing an alternative approach, notwithstanding repeated requests by PFM. Even in this submission, Mr. Balwani fails to offer the Court or PFM another plan to conduct a reasonable search-term based review to identify documents relating to investments in Walgreens that would not at a minimum include use of the terms "Walgreens" or "WAG," as PFM's proposal does.

Instead, Mr. Balwani misleadingly describes PFM's proposal as a document "dump," even though these documents have long already been in his possession, by virtue of his own prior discovery requests in the Delaware litigation. This motion is nothing more than an attempt by Mr. Balwani to force PFM, a third party, to shoulder the burden of trial preparation that Mr. Balwani and his counsel should do themselves. Nor is Mr. Balwani's complaint that he is unable to "preview" the proposed production availing, since no discovery rule affords such a right. And to the contrary, Mr. Balwani has in fact "previewed" the production, having already requested, received and reviewed all of it during the Delaware litigation. PFM's rejection of Mr. Balwani's insistence on a "preview" was not, as Mr. Balwani wrongly characterizes, a demand for a waiver of judicial intervention, but rather PFM's reasonable refusal to engage in serial negotiations over its compliance with the subpoena, subject to the whims of Mr. Balwani's "preview."

In any event, to the extent Mr. Balwani seeks to compel PFM to go beyond its proposal in some unarticulated way, the Court should decline to do so. Courts consider three factors in

evaluating third-party subpoenas: (1) relevance, (2) proportionality, and (3) undue burden. *See* Fed. R. Civ. P. 26(b)(1), 45(d)(1).

First, PFM's trading in Walgreens securities is irrelevant to this case, which was brought by the SEC against Mr. Balwani for <u>his</u> securities fraud violations, including against PFM and its investors. Although Mr. Balwani argues that his successive subpoena to PFM was necessitated by Mr. Grossman's inability to recall during his deposition whether PFM had restricted its trading in Walgreens in addition to Safeway at the time of PFM's investment in Theranos more than 5 years ago, it is undisputed that the Theranos-Walgreens partnership already was publicly announced at that time whereas the Theranos-Safeway partnership was not. By virtue of his discovery requests in the Delaware case, Mr. Balwani has long been aware of PFM's investments in Walgreens at the time of the Theranos investment. More fundamentally, given that Mr. Balwani was a primary source of PFM's pre-investment diligence into Theranos, and given that the crux of the SEC and federal criminal allegations against Mr. Balwani are that his representations to PFM and other investors were replete with fraud and lies—including Mr. Balwani's provision of doctored Theranos financial documents to PFM—Mr. Balwani's baseless speculation as to trading upon the false and untrue "confidential" facts he disseminated is nonsensical and a red herring.

Second, in light of the above complete lack of relevance of his successive subpoena requests, requiring PFM to go beyond its proposal would be highly disproportionate and impose an undue burden. In response to Mr. Balwani's initial subpoena in this matter, PFM already has produced 75,000 pages of documents. In May, Mr. Balwani took a full-day deposition of Mr. Grossman, during which Mr. Balwani had a lengthy opportunity to inquire into PFM's relationship with and activities as to Walgreens. Additionally, PFM has agreed to produce the trading records requested by Mr. Balwani in this successive subpoena. PFM, a third-party and victim of Mr. Balwani's crimes, already has expended substantial money and resources in responding to Mr. Balwani's discovery fishing expeditions, and the Court has the discretion to "limit discovery on a finding that 'the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive.'" *Gonzales v. Google*, 234 F.R.D. 674, 686 (N.D. Cal. 2006), *citing* Fed. R. Civ. P. 26(b)(2)(i) (cited by Mr. Balwani). Here, the successive discovery Mr. Balwani seeks is obtainable from a source that is more convenient, less burdensome, less expensive, and more comprehensive—the Delaware production in its entirety, which goes far beyond satisfying Mr. Balwani's requests and which Mr. Balwani <u>still</u> has in his possession.

For all these reasons, PFM respectfully requests that the Court deny Mr. Balwani's motion to compel, to the extent it seeks relief beyond the proposal previously offered by PFM. PFM further requests that the Court shift PFM's costs in complying with the subpoena to Mr. Balwani, including legal fees. *See Legal Voice v. Stormans Inc.,* 738 F.3d 1178, 1184 (9th Cir. 2013) ("Rule 45(d)(2)(B)(ii) requires the district court to shift a non-party's costs of compliance with a subpoena, if those costs are significant.").

ORRICK HERRINGTON & SUTCLIFFE, LLP     GIBSON DUNN & CRUTCHER


_/s/ Stephen A. Cazares_
STEPHEN A. CAZARES
Attorneys for Mr. Balwani

_/s/ Winston Chan[1]_
WINSTON CHAN
JESSICA WRIGHT
Attorneys for PFM

---

[1] CIVIL L.R. 5-1 ATTESTATION
Pursuant to Civil L.R. 5-1(i)(3), I, Stephen A. Cazares, am the ECF user whose ID and password are being used to file this Joint Letter Regarding Discovery Dispute.  In compliance with General Order 45, X.B., I hereby attest that Winston Chan has concurred in this filing.