JEFFREY B. COOPERSMITH (SBN 252819)
WALTER F. BROWN (SBN 130248)
MELINDA HAAG (SBN 132612)
RANDALL S. LUSKEY (SBN 240915)
STEPHEN A. CAZARES (SBN 201864)
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA  94105-2669
Telephone:    (415) 773-5700
Facsimile:    (415) 773-5759
Email:  jcoopersmith@orrick.com; wbrown@orrick.com;
mhaag@orrick.com; rluskey@orrick.com;
scazares@orrick.com

Attorneys for Defendant
RAMESH "SUNNY" BALWANI

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISION,<br><br>Plaintiff,<br><br>v.<br><br>RAMESH "SUNNY" BALWANI,<br><br>Defendant. | Case No. 5:18-cv-01603-EJD<br><br>**MOTION FOR RELIEF FROM NONDISPOSITIVE PRETRIAL ORDER [ECF 117] OF MAGISTRATE JUDGE**<br><br>[L.R. 72-2]<br><br>Honorable Edward J. Davila |

## <u>NOTICE OF MOTION AND MOTION</u>

PLEASE TAKE NOTICE that on a date to be determined by the Court, in Courtroom 4, located at the San Jose Courthouse, 280 South First Street, San Jose, CA 95113, Defendant Ramesh Balwani will move this Court for an order adopting Mr. Balwani's prior compromise offer that narrowed the disputed portions of the subpoena to Partner Fund Management LLP so that Mr. Balwani may obtain documents necessary to the preparation of his defense in this case.

Defendant brings this Motion pursuant to Civil Local Rule 72-2.  This Motion is based on this Notice, Memorandum of Points and Authorities, the Declaration of Steve Cazares, the record in this case, oral argument as permitted by the Court, and any other matters that the Court deems appropriate.

Dated: November 18, 2019

 /s/ Jeffrey B. Coopersmith

Jeffrey B. Coopersmith
Attorney for Petitioner Ramesh "Sunny" Balwani

## MEMORANDUM OF POINTS AND AUTHORITES

### I.   INTRODUCTION

For the reasons set forth below and in the supporting Declaration of Stephen A. Cazares ("Cazares Decl.") and the exhibits thereto, Defendant Ramesh Balwani ("Mr. Balwani") hereby files this Motion for Relief from Pretrial Nondispositive Pretrial Order, pursuant to Civil Local Rule 72-2, regarding the November 4, 2019 Order Denying Mr. Balwani's Request to Compel Production by PFM ("the Order").  ECF 117.  The Order denied Mr. Balwani's motion and offer of compromise and adopted the position of subpoena recipient Partner Fund Management LLP ("PFM") to conduct no search for responsive documents and instead merely make available a tranche of documents previously assembled by PFM in its own prior lawsuit against Mr. Balwani in Delaware Chancery Court (the "Delaware documents").

Mr. Balwani has now searched the "Delaware documents" offered by PFM and determined that, as anticipated, it contains no responsive documents reflecting the reasons for PFM's decision to begin purchasing about $200 million worth of Walgreens stock in February 2014, one week after PFM closed its $96 million investment in Theranos while under a confidentiality agreement.  For this reason, Mr. Balwani respectfully requests that this Court adopt Mr. Balwani's prior compromise offer that narrowed the disputed portions of the subpoena to "all documents, communications, and due diligence relating to investments in Walgreens securities for the [time period January 1, 2013 to December 31, 2015]" so that Mr. Balwani may obtain documents necessary to the preparation of his defense in this case.

### II.   RELEVANT FACTS

#### A.   The Subpoena Requests Documents that are Relevant and Important to Mr. Balwani's Defense

On August 26, 2019, Mr. Balwani issued a subpoena for documents to PFM, Cazares Decl., Ex. A, relating to the relationship between Theranos and Walgreens ("Pharmacy A") alleged in the SEC's Complaint.  *See, e.g.*, ECF 1 ("Complaint") ¶¶ 20-35, 66-71.  The SEC identified PFM and its portfolio managers as witnesses in this case in the SEC's Rule 26(a)(1) initial disclosures.

PFM, an SEC registered investment adviser reportedly with approximately $7 billion under its management, was introduced to Theranos in December 2013. PFM and portfolio manager Brian Grossman ("Grossman") executed "Confidential Disclosure Agreement[s]" ("CDA") on January 10, 2014 that limited disclosure and use of confidential Theranos information shared with PFM while PFM considered investing in Theranos. Under that CDA, confidential nonpublic information relating to Theranos's business with Walgreens was disclosed to PFM and Grossman under the CDA before PFM closed its $96 million in investments on February 6, 2014. Such confidential information went beyond Theranos's partnership with Walgreens that was publicly disclosed in September 2013.

Large institutional investment advisers like PFM must file quarterly reports with the SEC on Form 13F. The reports reflect all publicly traded securities held at the end of each quarter. PFM's Form 13F for the period ending December 31, 2013, after public announcement of the Walgreens relationship with Theranos, reflected that PFM funds held no Walgreens stock at the end of that period. Cazares Decl., Ex. B. PFM's Form 13F for the period ending March 31, 2014—the period during which PFM signed the CDA, completed due diligence, and invested approximately $96 million in Theranos—reports holdings of $187 million in Walgreens stock. *Id.* at Ex. C. Thus, PFM directed the purchase of at least $187 million worth of Walgreens stock between January 1, 2014 and March 31, 2014, and the trading records reveal that PFM did not begin these purchases until after it signed the CDA on January 10, 2014. PFM's purchases raise a serious issue as to whether it violated its duty of confidentiality to Theranos and the insider trading laws. *See, e.g.*, *United States v. Obus*, 693 F.3d 276 (2d Cir. 2012) (defining the misappropriation theory of insider trading).

Registered investment advisers like PFM are required to maintain books and records of their trading activity and decision making. Evidence that PFM and its portfolio managers, who have been identified by the SEC as witnesses in this case, may have used or been in possession of confidential information from Theranos relating to Walgreens is relevant, discoverable, and important to the preparation of Mr. Balwani's defense in this case. This information tends to demonstrate PFM's: (1) strategy to hedge its investment in Theranos through purchases of

Walgreens stock, tending to show its awareness of risk, (2) interest in signing a CDA with Theranos and going through an extensive due diligence process to assist with its contemporaneous, larger investment in Walgreens, and (3) breach of the terms of the Theranos CDA for financial gain.

### B.     The Parties' Proposals Offered to the Court

In an effort to avoid unnecessary litigation and minimize any burden from production on PFM, Mr. Balwani proposed an offer of compromise limiting the scope of the requests as follows: (1) documents sufficient to identify all trading in Walgreens securities (WAG and WBA), including price and volume, for the period January 1, 2013 to December 31, 2015 [Items 1 & 2]; and (2) all documents, communications, and due diligence relating to investments in Walgreens securities for the same time period [Items 3, 4, and 5].  Mr. Balwani also withdrew his request for documents under Item 6 in the subpoena.

PFM agreed to produce the trading records as proposed by Mr. Balwani, but declined to perform any search for documents, communications, and due diligence relating to investments in Walgreens securities.  PFM instead offered to make available a prior production of approximately 52,000 documents PFM produced in the Delaware litigation.  PFM claimed that the burden of doing anything to search for responsive documents outweighed Mr. Balwani's need for the information, but it refused to allow Mr. Balwani to examine the Delaware documents at Mr. Balwani's own time and expense to determine if they contained the responsive material about PFM's decision to engage in the trading activity.  As discussed in the next section, now we know why PFM refused to allow this review at no burden to itself—the Delaware set does not contain the most important material.

### C.     Mr. Balwani's Review of the Delaware Documents

During the week of November 11, 2019, based on Magistrate Judge Cousins's order counsel for Mr. Balwani conducted a thorough review of the Delaware documents, spending hours searching for responsive information.  This review determined that the Delaware documents do not appear to contain *any* document or communications reflecting when and why PFM decided to purchase the over $187 million worth of Walgreens securities beginning on

February 12, 2014 through the end of March 2014.[1]  Cazares Decl. ¶ 5.  It is inconceivable that PFM would not have engaged in internal communications and analysis regarding a decision to make an investment of this magnitude in Walgreens.  It is this narrow category of documents that PFM should be ordered to produce.

## III.   ARGUMENT

### A.   Legal Standard

A subpoenaed non-party is subject to the same scope of discovery as a party.  *See Gonzales v. Google, Inc.*, 234 F.R.D. 674, 679-80 (N.D. Cal. 2006).  A party may obtain discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(1).  The burden of showing that a subpoena is unreasonable and oppressive is on the party to whom it is directed.  *Am. Broad. Companies, Inc. v. Aereo, Inc.*, 2013 WL 1508894, at *4 (N.D. Cal. Apr. 10, 2013).  In evaluating any such claims, "the court must be careful not to deprive a party of discovery that is reasonably necessary to afford a fair opportunity to defend and prepare the case."  *See Gonzales*, 234 F.R.D. at 680.

### B.   The Delaware Documents are Deficient and Deprive Mr. Balwani of Information Necessary to Prepare his Defense

Mr. Balwani offered to substantially narrow his request for records relating to trading in Walgreens.  In response, PFM made its "take it or leave it" offer of the Delaware documents previously produced by PFM in PFM's own prior lawsuit against Mr. Balwani, with no review or assurance by PFM that the Delaware documents contain responsive information.  Mr. Balwani even offered to review the materials for responsiveness at his own burden and expense, but PFM refused.  In his original motion to compel PFM, Mr. Balwani surmised that PFM declined Mr. Balwani's request to preview the responsiveness of the Delaware documents because PFM knew the key documents Mr. Balwani sought regarding PFM's investment decision to buy Walgreens

---

[1] The Delaware production does contain some less relevant material regarding third-party research about Walgreens, some internal PFM discussion about Walgreens, and some communications between PFM and market professionals relating to Walgreens.

securities in February and March 2014 were not contained in the Delaware production. Now, having spent considerable time and money reviewing the document dump by PFM, Mr. Balwani has been proven correct.  The Delaware documents appear to contain no communications or documents in the highly relevant area relating to PFM's decision to invest almost $200 million in Walgreens securities in the first quarter of 2014 and beyond.  As a registered investment advisor with extensive record-keeping obligations, it is very likely that PFM has dedicated files containing responsive information about its decision to purchase Walgreens stock right after it signed the Theranos CDA, but in any event this is a narrow category that PFM should be ordered to produce.

## IV.      CONCLUSION

For all of the above reasons, Mr. Balwani respectfully requests that the Court issue an order requiring PFM to produce documents consistent with Mr. Balwani's offer of compromise as follows:  all documents, communications, and due diligence relating to investments in Walgreens securities for the same time period [January 1, 2013 through December 31, 2015], which necessarily includes documents and communications reflecting when and why PFM decided to purchase almost $200 million worth of Walgreens securities in the first quarter of 2014.

Dated: November 18, 2019                   Respectfully Submitted,

By: /s/ Jeffrey B. Coopersmith

Jeffrey B. Coopersmith
The Orrick Building
405 Howard Street
San Francisco, CA 94105
Telephone: (415) 773-5700
jcoopersmith@orrick.com

*Attorneys for Petitioner Ramesh "Sunny" Balwani*